UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
IN RE APPLICATION OF                  :
                                      :
MAJED AMIR AL-ATTABI,                 :
                                      :
For an Order Pursuant to 28 U.S.C. § 1782 to : 21-MC-207 (VSB)
Take Discovery for Use in Foreign Proceedings :
Pending in the Republic of Lebanon.   :
                                      :
                                      :
------------------------------------- x

## DECLARATION OF CHAKIB CORTBAOUI

CHAKIB CORTBAOUI hereby declares as follows pursuant to 28 U.S.C. § 1746:

1.  I am a Lebanese law qualified lawyer and founding partner of Cortbaoui & Kanaan, a leading law firm based in Beirut, Lebanon. I previously served as Minister of Justice, the Lebanese-equivalent of attorney general, and as president of the Beirut Bar Association. I have been practicing law for over 50 years. I submit this declaration under penalty of perjury.

2.  I am counsel to Bank Audi S.A.L ("Bank Audi") in the court proceedings in Lebanon brought by Majed Amir Al-Attabi ("Mr. Al-Attabi" or the "Petitioner") against Bank Audi, in which Mr. Al-Attabi seeks to use the evidence sought from Bank Audi's correspondent banks.

### The Lebanese Action

3.  On September 4, 2020, Mr. Al-Attabi filed a complaint (dated as of September 3, 2020) against Bank Audi in the Court of First Instance in Beirut, Lebanon (the "Lebanese Action"), which seeks an order requiring Bank Audi to transfer USD 4,302,697 he holds with Bank Audi (the "Account Balance") to an account he maintains at Mashreq Bank in Dubai, United Arab Emirates. True and correct copies of Mr. Attabi's complaint and its English-

language translation are attached as **Exhibit 1**.  Mr. Al-Attabi has asserted two causes of action in the Lebanese Action.  The first claim asserts that Bank Audi is required to transfer Mr. Al-Attabi's funds to his account in the U.A.E. pursuant to the Lebanese law.  Exhibit 1 at page 3.  The second claim asserts that the transfer is required by the terms of two treaties between Lebanon and the Kingdom of Saudi Arabia concluded in 1967 and in 1971.  Mr. Al-Attabi is claiming that Article 11 of Law No. 43 of June 3, 1967 (authorizing the conclusion of a Trade and Residency Agreement between Lebanon and the Kingdom of Saudi Arabia) and Article 13 of Law No. 67 of December 20, 1971 (The Commercial and Economic Agreement between Lebanon and Saudi Arabia) prohibit any measures that impede the free transfers between Lebanon and the Kingdom of Saudi Arabia of funds of nationals of those two countries.  *Id.* at pages 3 and 4.  Mr. Al-Attabi's Lebanese pleading does not allege that Bank Audi has made overseas transfers of U.S. dollars to other Bank Audi customers.

4.          On April 22, 2021, Bank Audi filed its response in the Lebanese Action.  True and correct copies of Bank Audi's response and its English-language translation are attached as **Exhibit 2**.  In this response, Bank Audi has asserted three defenses.  *First*, Bank Audi is asserting that Lebanese law does not require Bank Audi to make an overseas transfer of funds at Mr. Al-Attabi's request; since according to the jurisprudence and case law, an overseas transfer is a banking service that the bank may or may not provide, at its discretion, unless the account documents expressly refer to such service.  Exhibit 2 at pages 7 and 8.  Accordingly, Bank Audi complied with its legal obligations when it offered Mr. Al-Attabi a check for the Account Balance, to be drawn against Bank Audi funds deposited with the Lebanese Central Bank.  *Second*, for the sake of arguing (and we are to assume that Bank Audi is required to make overseas transfers), Bank Audi is asserting that the ongoing financial and economic crisis in

Lebanon that began on October 17, 2019, constitutes a "*force majeure*" as defined in applicable laws and under the account documents, which relieves Bank Audi of any obligation to make an overseas transfer. *Id.* at pages 9 and 10. *Third*, Bank Audi is asserting that the 1967 and 1971 treaties between Lebanon and the Kingdom of Saudi Arabia create a public right of action (as opposed to a private right of action) that is enforceable only by the signatory States, not by their citizens, and that such treaties do not apply to bank deposits, but only to investments made by citizens of one country to the other. *Id.* at pages 3 to 6. Even if we were to consider that Mr. Al-Attabi has the capacity to invoke the provisions of the two said treaties, he did not prove that they are still in force. *Id.*

5. The defense of *force majeure* has been codified in Lebanon under Articles 341 et al. of the Code of Obligations and Contracts of 1932.[1] The *force majeure* defense asserted in the Lebanese Action is based upon the ongoing financial and economic crisis in Lebanon. As a result of this crisis, all banks in Lebanon (including Bank Audi) are not to our knowledge making overseas transfers of U.S. dollars, except for certain purposes of national importance, such as the import of food, fuel, or medical supplies, or to pay urgent personal expenses on an exceptional basis. Bank Audi has not asserted that it lacks sufficient liquidity in U.S. dollars to make an overseas transfer. Instead, it has argued that it is not obligated to carry out this transfer in light of the *force majeure* that led to the unavailability of U.S. dollars banknotes. Exhibit 2 at pages 12 to 13.

6. The Lebanese Action is still pending and to date, Mr. Al-Attabi has not requested the Lebanese State court to seek the assistance of a U.S. court to produce the relevant evidence

---

[1] Lebanese jurisprudence has defined *force majeure* as "the event that has been unforeseeable, irresistible and unavoidable to the party asserting *force majeure*." *See* Mustapha El Augi, Civil Law, First Part, The Contract, p. 685.

pursuant to Article 140 *in fine* of the Lebanese Code of Civil Procedure. In all my years as a practicing lawyer in Lebanon, and excluding the cases where a foreign judgment in final form is recognized and enforced (*exequatur*) in Lebanon, I have never seen an instance where a Lebanese State court permitted the use of evidence obtained in a foreign court, unless the Lebanese State court requested the assistance of that foreign court for the delivery of the evidence.

7. Similarly, in all my years as a practicing lawyer in Lebanon, I have never seen an instance where a Lebanese State court authorized the use of foreign discovery proceedings to obtain evidence about customer accounts that could not legally be disclosed by a Lebanese bank under Lebanon's Bank Secrecy Law. If such evidence were to be obtained by Petitioner, and if the Lebanese State court were to admit that evidence, which I think is unlikely, Bank Audi would be at a disadvantage in the Lebanese Action, since that evidence may include information that Bank Audi cannot discuss, given that the latter is bound by Lebanon's Bank Secrecy Law, which would prevent it from defending itself on an equal footing with the Petitioner. Bank Audi would be unable to explain the permissible reasons for any given overseas customer transfer without violating Lebanon's Bank Secrecy Law. Such a violation carries criminal penalties of imprisonment ranging from three months to one year of the bank's representative.

8. The Lebanese Action is still at an early stage. We have not been notified yet that Mr. Al-Attabi has asked the Lebanese State court to schedule a hearing on the merits and to set a date for the court to issue a final judgment.

**The Lebanese Attachment Proceeding**

9. On September 8, 2020, Mr. Al-Attabi also filed an *ex parte* pre-judgement attachment proceeding (dated as of September 3, 2020) against Bank Audi in Beirut, Lebanon seeking the attachment of shares owned by Bank Audi in some companies, as a guarantee for the payment of the Account Balance.

10. On October 13, 2020, the judge overseeing the pre-judgment attachment proceeding (the "Attachment Judge") issued a conservative seizure order against shares owned by Bank Audi in ten Lebanese companies, as a guarantee for the payment of the "debt" of Mr. Al-Attabi in the amount of USD 4,302,697, plus judicial fees which were estimated to be around USD 430,269.70 (file docket number 731/2020).

11. On December 22, 2020, Bank Audi submitted to the Attachment Judge a request aiming to lift the attachment on the movable assets against the deposit by Bank Audi with the Attachment Judge of a bank check drawn on the Lebanese Central Bank in the amount of USD 4,732,966.70, being the aggregate amount of the "debt" secured by the attachment and the judicial fees. In parallel, on December 23, 2020, Bank Audi submitted to the Attachment Judge an opposition against the conservative seizure order, for a breach of Articles 866 and 870 of the Code of Civil Procedure; such opposition is still pending.

12. On March 4, 2021, in reliance upon Bank Audi's deposit of the bank check, the Attachment Judge granted Bank Audi's request and ordered the lifting of the attachment on the movable assets of Bank Audi, which attachment was subsequently lifted. Mr. Al-Attabi benefits now from an attachment on the amount of the bank check.

13. On September 8, 2021, Mr. Al-Attabi filed a motion seeking to re-instate the October 13, 2020 pre-judgment attachment order. Mr. Al-Attabi's basis for making the request was that the March 4, 2021 order allegedly violated Article 857 of the Lebanese Code of Civil

Procedure, Article 11 of Law No. 43 of June 3, 1967 (authorizing the conclusion of a Trade and Residency Agreement between Lebanon and the Kingdom of Saudi Arabia) and Article 13 of Law No. 67 of December 20, 1971 (The Commercial and Economic Agreement between Lebanon and Saudi Arabia), because the bank check deposited by Bank Audi cannot be paid outside Lebanon, which means, according to Mr. Al-Attabi, that it cannot constitute a guarantee for his alleged rights and because any measures that impede the free transfer of funds between the two countries are not allowed, according to his claims.

14. On September 27, 2021, Bank Audi filed its response in opposition. The parties may make additional submissions before the Attachment Judge, noting that the latter scheduled a hearing on October 26, 2021.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. Executed this 11th day of October, 2021 at Beirut, Lebanon.

_____
Chakib Cortbaoui