**Translation**

**Legal Opinion**

<u>The Party seeking the opinion:</u> **Bank Audi SAL, represented by its attorney at law, the ex-President of the Bar Association Chakib Cortbaoui**

<u>Subject:</u> **Admissibility of the Discovery process before the Lebanese courts**

<u>Preamble</u>

**A- The party seeking the opinion asked me the following questions:**

<u>Question 1:</u>   Is the Discovery process known in Lebanon? Will the Lebanese courts accept it if it is issued by a foreign court?

<u>Question 2:</u>   Has the author of this legal opinion ever used Discovery in any of the files submitted to him?

<u>Question 3:</u>   Do Articles 139 and 140 of the Lebanese Code of Civil Procedure imply that Discovery can be used in Lebanon?

What are the full detailed provisions of these Articles?

<u>Question 4:</u>   If the Discovery includes information or orders covering Bank Audi's assets and transfers made by the latter in US dollars to New York, will this lead to the admissibility of the Discovery by the Lebanese court that is currently hearing the conflict between the Bank and one of its customers?

**B-** The party seeking the opinion has produced to me[1] a set of documents, a category of which relates to the lawsuit pending before the Court of First Instance of Beirut between Mr. Majed bin Ameer Al Attabi (the Plaintiff) and Bank Audi SAL (the Defendant). Another category relates to the Discovery request obtained by the Plaintiff from the US judge and to the Declaration submitted by the Plaintiff's Lebanese lawyer before the US judge who issued the Discovery.

---

[1] An English copy of my curriculum vitae is attached to this opinion.

1

The party seeking the opinion also produced to me the Opinion and Order (i.e. the Discovery) granted by the US Judge to the Plaintiff Mr. Al Attabi.

In light of this, the author of the present legal opinion will address the four raised questions and will conclude with an explanatory general conclusion.

*** 

**Question 1:** **Is the Discovery process known in Lebanon? Will the Lebanese courts accept it if it is issued by a foreign court?**

    1- Discovery cannot be used before civil courts in Lebanon, mainly for the following reasons:

        1) **There is no provision in the Lebanese legislation that permits resorting to Discovery. Such a provision does not exist, in particular, in the Lebanese Code of Civil Procedure, which belongs to the category of written laws. It is known that the laws of this category are drafted to cover the smallest details, and they refrain from admitting incompatible rules of procedures.**

        The request for obtaining the Discovery for the purpose of submitting the same before the Lebanese courts constitutes per se a flagrant violation of the Lebanese law, especially as it aims to obtain evidence that is foreign to the proofs and other means of evidence adopted in the Lebanese law.

        2) In accordance with Article 373 of the Code of Civil Procedure, Lebanese judges are very keen to apply the adversarial principle (*Principe du contradictoire*).

        Although the Code of Civil Procedure allows the issuance of non-contentious decisions (*Décisions gracieuses*) or orders on petitions (*Ordonnances sur requête*) without summoning and hearing the opponent, the said Code has

2

however surrounded this process mentioned in Article 594 and seq. and Article 631 and seq. with guarantees that preserve the right of the absent party (objection, guarantee...).

Furthermore, the majority of these measures concerns material facts that are feared to disappear or legal facts/situations that cannot be postponed.

It is to be noted in this respect that the judge often invites the other party to express its position before issuing a decision, in order to ensure that the adversarial principle is well implemented.

We must point out in this regard that the Discovery was issued without the Bank being notified of the request and without the presence of any representative on its behalf.

3) **The Lebanese judge who is hearing the dispute may mandate a foreign court to carry out evidentiary procedures needed for considering the case. If the Lebanese court, before which the dispute is pending, had found that such mandate was necessary and legal, it would have resorted to it. It is highly unusual that a Lebanese lawyer resorts to submitting an illegal request before the US Judge for the purpose of circumventing the role of the Lebanese court in determining the measures that it deems appropriate regarding the subject matter of this opinion.**

4) The rule on the stability of transactions is among the prevailing rules in the field of private international law.

In the event that this rule is applied to movable property (including money), it is necessary to resort to the law of their place at the time of the valid acquisition of the right, and the law may not be changed by changing the place

of the movable property (See in this respect: Sami Mansour, Al Wassit in International Private Law, Dar Al Ilm Al Arabiya, 1994, No. 213, p. 294).

It is undisputed that the law of the place of the movable properties upon their acquisition - or upon their deposit - is the Lebanese law.

5) **In the field of banking operations under the international private law, the law of the bank (i.e. the applicable law in the country where the bank is located) is applied to the exception of any other law, in order to prevent confusion and perplexity in the banking field, which has a significant impact on the financial and economic conditions in the country in which the bank was established.**

> *"It is undoubtedly accepted that in the absence of an explicit or tacit will of the parties, the banking law will govern any banking operation of international nature. However, such law will be determined through a connecting rule that is most often bilateral and is based on objective economic and legal grounds, which makes the said law the most relevant to these banking operations.*
>
> *There are two important grounds in favor of the jurisdiction of the banking law: (i) this law is the one which causes the least disturbance to the parties to a banking operation; (ii) It is the law of the place where the most characteristic service is performed."*
>
> (Khalil Sfeir, Comparative International Private Law; Volume I, Bruyant - Sader Legal publications, 2005, No.757, p.882)

6) With respect to the order issued by the US judge (i.e. the Discovery) and the Declaration of the Lebanese lawyer before him (Mr. Al Attabi's attorney at law), it is found that the latter misinterpreted Articles 139 and 140 of the Lebanese Code of Civil Procedure to support his client's request.

4

It appears that the US judge issuing the order took the said Declaration into consideration for such issuance.

In any case, upon addressing the third question, we will discuss the provisions of Articles 139 and 140 of the Code of Civil Procedure and the error committed by Mr. Al Attabi's attorney at law when interpreting the two mentioned articles.

Finally, it should be noted that under Lebanese law, the judge is the only authority who has the ability to request the production of evidence (for example, witness testimony, documents) from a third party. A judge may do so *sua sponte* (*d'office*) or at the request of one of the parties to the dispute. In other words, no party may independently from the judge overseeing the dispute seek evidence from a third party. Any evidence obtained in a manner that does not conform with these procedures is inadmissible.

2- **Based on all of the foregoing, the Lebanese court hearing the lawsuit between Bank Audi SAL and its customer, Mr. Al Attabi, will not accept Discovery: given the absence of a provision that admits it in the Lebanese law, given that it is not one of the means of evidence adopted in Lebanon, given that it is incompatible with the rules of the international private law that is applicable on all transactions including banking transactions, and given that Mr. Al Attabi's lawyer made a false declaration regarding the interpretation of Articles 139 and 140 of the Code of Civil Procedure in order to obtain Discovery.**

## Question 2:   Has the author of this legal opinion ever used Discovery in any of the files submitted to him?

3- Discovery has never been used in any of the thousands of files submitted before me throughout my long judicial life (38 years), during my tenure as president of some courts of first instance or courts of appeal, or during my tenure as president of the Plenary Assembly of the Court of Cassation, and particularly when I was the

5

president of the Chamber of the Court of First Instance of Beirut ruling on commercial and banking matters.

I am not aware that this process was used by the Lebanese judiciary in any of the cases.

In any case, this process is incompatible with the rules of evidence and the use of proofs provided for in the Lebanese law, which grants the judge wide authority in the management of the lawsuit, especially with respect to the management of the rules of evidence and procedures, and their needed measures that the judge automatically resorts to, as provided for in Article 135* of the Code of Civil Procedure. This process is also incompatible with the nature of the Lebanese legal system in terms of the rules of procedures and with the spirit of this system as we mentioned earlier.

Furthermore, there is no point in obtaining the Discovery as long as it is not accepted as evidence before the Lebanese courts.

**Question 3:**   **Do Articles 139 and 140 of the Lebanese Code of Civil Procedure imply that Discovery can be used in Lebanon?**
**What are the full detailed provisions of these Articles?**

4- First, it is necessary to mention what was stated in the Discovery in the matter raised under this question.

We read in page 5 the following:

*"Second, there is no indication that a Lebanese court would be unreceptive to federal-court judicial assistance. Cf. Intel, 542 U.S. at 264-65. To the contrary,*

---

* **Article 135: "The Court may, *ex officio,* order the conduct of any investigation to complete the evidence invoked by the litigants."**

*petitioner submits a declaration from a Lebanese litigator stating that articles 139 and 140 of the Lebanese Code of Civil Procedure provide for the admissibility of evidence obtained in accordance with the law of other jurisdictions."*

What was mentioned in this respect is part of the reasoning adopted by the issuer of the order to justify its issuance. This means that the order (Discovery) relied on the Declaration of the lawyer of the Plaintiff (Mr. Al Attabi), considering its content to be correct, while this content is wrong, as it will be explained later.

**The Declaration per se, as well as the absence of the other party to the dispute (the Bank) prompted the issuer of the order (the US federal court) to say that there was no indication that the Lebanese court hearing dispute would be unreceptive to the support of the competent federal court in the United States.**

**If support is possible in principle between the judiciary of one country and the judiciary of another, it does not however take place unless it was consistent with the law of the country that is the subject of the support (Lebanon in the present case). It should not take place if it would be detrimental to one of the parties to the dispute due to the other party's attempt to mislead the judiciary.**

5- The opinion we are expressing concerns Articles 139 and 140 of the Lebanese Code of Civil Procedure cumulatively, since the provisions of these two articles are closely related to the extent of admissibility before the Lebanese court hearing the dispute of the Discovery issued abroad.

6- Article 139 provides:

"Evidence of legal acts may be established in accordance with the law of the State that governs the effects of such acts, or in accordance with the law of the State where they were established.

The admissibility of evidence of material acts is subject to the law of the judge hearing the dispute.

7

The probative force of deeds is subject to the law of the place where they were established."

The legal act is a willful act that aims at creating obligations. Legal acts include inter alia: contracts (such as the contract between the Bank and the customer), wills, power of attorney… As for the material act, it is a non-willful act that includes inter alia: the occurrence of damage caused by an accident or the presence of goods in some place…

Article 140 provides:
"The evidentiary procedures are subject to the law of the judge with whom such procedures are carried out. However, the evidentiary procedures completed in a foreign country are taken into consideration if they are in compliance with the Lebanese law, even if they violate the foreign law.
It is permissible to mandate a foreign court to carry out the evidentiary procedures needed to rule on the case."

7- It is worth noting that Articles 139 and 140 are included under the section on evidence in the Lebanese Code of Civil Procedure.

They are related to what was stated in the same Code on the international jurisdiction of the Lebanese courts, as mentioned in Article 74 of the same Code, which states as follows:

"The international jurisdiction of the Lebanese courts is, in principle, subject to the provisions relating to the internal jurisdiction, without distinction between a Lebanese and a foreigner."

**The link with the international jurisdiction is established by the substance of these two articles themselves, which address the conflict of laws in space that**

8

arises between the judiciary of the Lebanese State and the judiciary of any foreign country.

It is to be noted in this respect that it is up to the Lebanese State - and every State - to determine the rules of the international jurisdiction of its courts (See on this matter: Jacqueline Baz, Private Judicial Law, 1993 p. 95; - Nasri Diab, Theory and Application of the Code of Civil Procedure, Sader Legal Publications, 2009, p. 197).

8- **Articles 139 and 140 provide the evidence that the Lebanese legislator determined the international jurisdiction of the Lebanese courts in the field of evidence (the rule), and determined as well the jurisdiction of foreign courts in the same field (the exception).**

The Discovery process in not included in this exception, noting that such exception must be restrictively interpreted.

9- According to a legal author's opinion related to the raised question, the judge hearing the dispute is competent to determine the acceptable evidence and the procedures for submitting such evidence:

- Accordingly, it is the law of the judge hearing the dispute that determines the procedures for submitting the means of evidence before the court (in this sense: Batifoll, paragraph 709, Bartin, paragraph 177...) and it is the law that characterizes the issues raised to see whether they relate to the admissibility, the strength or the procedures for submitting the evidence..." (Edward Eid, Encyclopedia of Procedures, Volume 13, Evidence 1, p. 493).

- "The law of the judge hearing the dispute or the law of the forum, is the law that determines the procedure to be followed in disputes involving one or more extraneous elements..."

9

(Khalil Sfeir, Comparative Private International Law, Volume I, 2005, No. 757, p. 882).

10- It is impossible for the Lebanese judiciary to accept the foreign evidence or the procedures that were carried out in a foreign country, except in the following exceptional and limitative cases:

- A mandate issued by the Lebanese court assigning the foreign court to carry out one of the evidentiary procedures (Article 140).
- Or: In case the evidentiary procedures that were carried out in a foreign country were in compliance with the Lebanese law (Article 140).

**Conformity requires that the procedure followed by a foreign judge be similar to the procedure provided in the Lebanese law.**

- Or: If the deed was drawn up in a foreign country (Article 139).
- Or: If the evidence of legal acts is established in accordance with the law of the State that governs the effects of such legal acts (Article 139).

It is to be noted however, that the subject matter of the order (discovery) is not related to establishing evidence of the legal act (as is the case for the contract concluded between the Bank and the customer) that took place in Lebanon, but rather to information relating to the Bank's assets and the customers' transactions.

11- **All of the aforementioned about the role of the foreign court pursuant to Articles 139 and 140 of the Lebanese Code of Civil Procedure does not apply to the Discovery issued by the US judge.**

**There is no mandate by the Lebanese court. The Discovery is a process foreign to the Lebanese Code of Civil Procedure, it is illegal under the said Code and is not in compliance with the evidentiary procedures adopted in Lebanon. The issue at hand is not related to a deed drawn up abroad. The requested evidence is not related to the legal act.**

10

12- **Consequently, the Declaration issued by the lawyer of the other party regarding Articles 139 and 140 of the Code of Civil Procedure may not be relied on, because this Declaration is inaccurate and is not compliant with the rules set forth in the two articles object of the opinion.**

13- For further clarification, and since the detailed content of Articles 139 and 140 of the Code of Civil Procedure asserts the error in the Declaration of Mr. Al Attabi's lawyer before the US judge and negates any possibility of accepting Discovery by the Lebanese court, the author of this legal opinion exposes in detail the provisions of Articles 139 and 140.

**Details of the provisions of Article 139:**

14- The first paragraph of this article concerns establishing evidence of legal acts. The requested Discovery has nothing to do with the legal act, which is the contract concluded between Bank Audi and the customer, Mr. Al Attabi, as previously stated.

The second paragraph concerns establishing evidence of material acts, and these acts are subject to the law of the judge hearing the dispute, i.e. the Lebanese court, as explicitly indicated in the said article.

It is undisputed in Lebanon that the admission of evidence of material acts is subject to the law of the judge hearing the dispute. This rule is deducted from the explicitness of Article 139 of the Code of Civil Procedure.

What the law provides in this regard is unanimously agreed by legal authors (See for example: Afif Chamseddine, Civil Procedures between Text and Case Law, Beirut 2006, p. 213, Helmi El-Hajjar, Private Judicial Law, Volume One, No. 132, p. 116).

In this regard, we note that the disclosure of the Bank's funds deposited abroad is considered as a material act governed by the Lebanese law.

11



The third paragraph concerns the probative force of deeds, which is irrelevant to the subject of the current dispute.

**Therefore, Article 139 of the Code of Civil Procedure cannot be invoked to justify obtaining Discovery issued by a foreign judge.**

### Details of the provisions of Article 140

15- The first part of this article submits the evidentiary procedures to the judge before whom such procedures are carried out, who is the Lebanese judge in the matter at hand.

The second part permits the acceptance of the evidentiary procedures that were carried out in a foreign country if they were in compliance with the provisions of the Lebanese law. It is to be noted that the Discovery is not in conformity with the applicable procedure in the Lebanese law, as previously stated.

The third part concerns the mandate, which does not exist in the current dispute because the Lebanese court did not mandate the US Judge to carry out any procedure.

It is clear that the Discovery does not apply to any of these three cases.

**Therefore, Article 140 of the Code of Civil Procedure cannot be invoked to justify obtaining Discovery issued by a foreign judge.**

16- Moreover, Lebanese legal authors consider that the probative force of the means of evidence that are not prepared in advance is determined by the law of the judge hearing the dispute:

"As for other means of evidence that are not prepared in advance, such as the expertise, the testimony and the judicial presumption, their probative force can only be determined by the law of the judge hearing the dispute, regardless of the existence

12

of another law governing the admissibility of this evidence (Edward Eid, Encyclopedia of Procedures, Volume 13, Evidence 1, No. 140, p. 489).

**The Lebanese legal authors also consider that the concept of management of the rules of evidence covers the form in which evidence is obtained:**

"The following matters fall under the concept of managing evidence in particular: the forms of submission of evidence…"
(Emile Tyan, Summary of International Private Law- *Précis de droit international privé*, 1966, No. 258, p.278).

**It is to be noted however that the management of the rules of evidence belongs to the court hearing the dispute, i.e. to the Lebanese court.**

17- **Based on all of the foregoing regarding Articles 139 and 140 of the Code of Civil Procedure, it is clear that the Lebanese court hearing the dispute will refuse the Discovery procedure that the Bank's customer invokes and will not give it any importance, because this process is incompatible with the rules of evidence and the role of the Lebanese judge in their management.**

**Question 4:   If the Discovery includes information or orders covering Bank Audi's assets and transfers in US dollars to New York, will this lead to its admissibility by the Lebanese court hearing the lawsuit between the Bank and one of its customers?**

18- It was stated on page 8 of the Declaration of the lawyer Aref Al Aref (Mr. Al Attabi's attorney at law) that:

**"Evidence of Bank Audi's assets and U.S. dollars transfer in New York obtained in accordance with New York and United States law (specifically 28 U.S. 1782) will be accepted by the Lebanese Court."**

13

The lawyer reached this wrong conclusion that is contrary to the Lebanese law in general and to the Lebanese Code of Civil Procedure in particular, after establishing that he cannot, based on the Lebanese law, obtain the information that he is requesting regarding the transfers in US dollars abroad.

He considered that the Lebanese courts would accept the information obtained in the Discovery because it is not possible to obtain the requested information in Lebanon.

19- **What was stated in the Declaration of the lawyer Al Aref in this respect aims to circumvent the law, and more particularly to disregard the rules of evidence provided for in the Lebanese Code of Civil Procedure.**

Indeed, before addressing the content of the Discovery and the conclusion it seeks, it is necessary to consider whether it is acceptable as a means of evidence. The content and the result are only accepted if the Discovery itself is accepted.

Assuming that the Discovery included information related to the customers, their accounts and their privacy, the Bank cannot discuss such information since it is bound by banking secrecy under the Lebanese Law issued on 03/09/1956, and whoever violates the said Law is punished by imprisonment. This means that the Bank will be deprived of the right of defense in relation to the matter at hand, which is incompatible with the right of defense in a balanced manner and with the principles of a fair lawsuit, and this is an additional reason that will lead the Lebanese court to refuse to admit the requested Discovery.

Based on the foregoing:

**The Lebanese court will not take into consideration the conclusion obtained in the Discovery, since it rejects it as evidence.**

14

What was mentioned in the statement of the lawyer Al Aref in this respect is a circumvention of the law, and not a clarification of the provisions of the law to facilitate the task of the judge issuing the Discovery or the task of the Lebanese court hearing the case.

## General Conclusion

In conclusion, we reiterate the most important points included in this legal opinion, which confirms in all its parts that the Lebanese court will not accept the Discovery as one of the available means of evidence under the Lebanese law.

## On Question 1:

- There is no provision in the Lebanese legislation that permits resorting to Discovery. Such a provision does not exist, in particular, in the Lebanese Code of Civil Procedure, and the request for obtaining the Discovery constitutes a flagrant violation of the Lebanese law, especially as the Lebanese legislation belongs to the category of written laws that are drafted to cover the smallest details in the rules of procedures.

- The Lebanese judge hearing the dispute may mandate a foreign court to carry out evidentiary procedures needed for considering the case. If the Lebanese court, before which the dispute is pending, had found that such mandate was necessary and legal, it would have resorted to it.

- In the field of banking operations under the international private law, the law of the bank (i.e. the applicable law in the country where the bank is located) is applied to the exception of any other law, in order to prevent confusion and perplexity in the banking field, which has a significant impact on the financial and economic conditions in the State where the bank was established.

- The Lebanese court hearing the lawsuit between Bank Audi SAL and its customer, Mr. Al Attabi, will not accept Discovery: given the absence of a provision that permits it in the Lebanese law, given that it is not one of the means of evidence

15



adopted in Lebanon, given that it is incompatible with the rules of the international private law as it is applied to all transactions including banking transactions, and given that Mr. Al Attabi's lawyer made a false declaration regarding the interpretation of Articles 139 and 140 of the Code of Civil Procedure in order to obtain Discovery.

## On Question 2:

- Discovery has never been used in any of the thousands of files submitted before me throughout my judicial life, during my tenure as president of some courts of first instance or courts of appeal, or during my tenure as president of the Plenary Assembly of the Court of Cassation, and particularly when I was the president of the Chamber of the Court of First Instance of Beirut ruling on commercial and banking matters

    I am not aware that this process was used by the Lebanese judiciary in any of the cases.

## On Question 3:

- The process of Discovery is incompatible with the rules of evidence and the use of proofs provided for in the Lebanese law, which grants the judge wide authority in the management of the lawsuit.

- If support is possible in principle between the judiciary of one State and the judiciary of another, it does not however take place unless it was consistent with the law of the State that is the subject of the support (Lebanon in the present case). It should not take place if it would be detrimental to one of the parties to the dispute due to the other party's attempt to mislead the judiciary.

- Articles 139 and 140 provide the evidence that the Lebanese legislator determined the international jurisdiction of the Lebanese courts in the field of evidence (the



16

rule), and determined as well the jurisdiction of foreign courts in the same field (the exception).

The Discovery process is not included in this exception that must be restrictively interpreted.

- The Declaration issued by the lawyer of the other party regarding Articles 139 and 140 of the Code of Civil Procedure may not be relied on, because this Declaration is inaccurate and is not compliant with the rules set forth in the two articles that are the subject of this opinion.

- Articles 139 and 140 of the Code of Civil Procedure cannot be invoked to justify obtaining Discovery issued by a foreign judge, especially that the Discovery is not in compliance with any of the measures set forth in these two articles.

- The Lebanese court hearing the dispute will refuse the Discovery procedure that the Bank's customer invokes, because this process is incompatible with the rules of evidence and the role of the Lebanese judge in their management.

**On Question 4:**
- Contrary to what was stated in the Declaration of Mr. Al Attabi's lawyer before the judge issuing the Discovery, the Lebanese court will not take into consideration the conclusion sought by the Discovery (getting access to Bank Audi's assets in the United States of America and to its transfers in US dollars to its banks) because the content of the Declaration in this respect aims to circumvent the law and because Discovery itself is not accepted in Lebanon in principle and in form.

I declare under penalty of perjury of the laws of the United States of America that the foregoing expresses my total conviction in light of the applicable Lebanese laws..

Executed on this 11th day of October, 2021, at Beirut, Lebanon.

17

[*signature*]

**Honorable Doctor Ghaleb Ghanem**

**Honorary First President of the Court of Cassation**

Translator's note: True translation of the enclosed document in Arabic

# Curriculum Vitae

**Dr Ghaleb Ghanem**
**Honorary President of the Cassation Court of Lebanon**
**Former President of the Association of Francophone Supreme Courts (AHJUCAF)**

**Nationality: Lebanese**
**Date & place of birth: 1943 Baskinta (Republic of Lebanon)**
**Awards of honor: -High Officer of the National order of Lebanese Merits (National Cedar rank)**
                     **-Award of Honor of the Republic of Mexico**

**Address: Road N:1- Bldg 913- Bayada-Kornet Chehwan-Metn-Lebanon**
 **Email :**          **gbghanem@hotmail.com**

| | | |
|---|---|---|
| Fax | : 961   4 | 925830 |
| Home | : 961   4 | 928628 |
| Mobile | : 961   3 | 105105 |

# 1-Work Experience

## A-Judiciary:

**2008-2010: First President of the Supreme Court of Lebanon,**
              **President of the Supreme Council of Magistrates:**

- President of the State Criminal Court of Justice
- President of the Lebanese Highest Court to trial Presidents and Ministers
- President of the board of trustees of the Institute of Judicial Training
- President of the High Disciplinary Council of the Magistrates

**2009 – Present: President of the Association of Francophone Supreme Courts (AHJUCAF)**

**Duties at the Ministry of Justice of Lebanon (MOJ):**

- 2000-2008: President of the Council of State
- 1999-2000: Prosecutor General of Mount Lebanon
- 1992-1999: Member of the High Judicial Council
- 1997-1999: Chairman of the Department of Legislation and Consultation (MOJ-Duties: Legal Advisor of the Government and drafting of conventions and law drafts)
- 1995-1997: President of the Beirut Court of Appeal
- 1994-1995: President of the Mount Lebanon Court of Appeal
- 1990-1994: President of the Beirut First Instance Tribunal (Grande Instance) dealing with commercial matters, arbitration & exequatur
- 1981-1990: President of the First instance Court of Kesrouane - Jounieh

- 1977-1981: Judge at the Contentious matters department with the MOJ
- 1976-1977: Collaboration to different legal activities in Switzerland
- 1975-1976: Judicial training in France (Fellowship of the French Government)
- 1975: Appointed to the Bench as Magistrate with the grade of honor of the Institute of the Judiciary
- 1973-1975: Trainee Judge at the Institute of the Judiciary of Lebanon
- Lawyer registered at the Beirut Bar Association (1966-1972)

## B- Teaching experience:

- Professor of Law and Islamic Institutions at the Lebanese University, Saint Joseph University, The Holy Spirit University of Kaslik, La Sagesse University and the Institute of Judiciary Studies of Lebanon
- Director of PhD theses and member of Jury in Islamic studies and Constitutional Law
- Coordinator of the training Session on legal drafting specialized for High rank civil servants of the Lebanese, Iraqi and Dubai Parliaments
- Chairman of the Department of Legislation and Consultation (MOJ) (1997-1999)
- Speaker in constitutional Law, administrative law, arbitration law, ethics, philosophy of the law, interpretation of the laws, Independence of the judiciary, judicial reform, fundamental rights, in Lebanon and abroad (Abu Dhabi, Austria, Belgium, Canada, Egypt, Spain, France, Italy, Jordan, Morroco, UK, Senegal, Slovenia, Syria and Turkey)
- Expert at the Arab Center for the development of the rule of law and integrity (ACLRI)

## 2-DIPLOMAS:

- 1979: PhD in Arabic Literature, University of the Sorbonne Nouvelle (Paris 3) and the Saint Joseph University-Beirut-Lebanon
- 1976: Master in Specialized studies in Arabic literature, University of the Sorbonne Nouvelle (Paris 3) and the Saint Joseph University-Beirut-Lebanon
- 1976: Master in High studies in private law, Paris 10 (France) and certificate of comparative law (Institute of Judicial studies of Lebanon)
- 1975: Diploma of the Institute of Judicial studies of Lebanon (*Major de promotion*)
- 1971: Master in high studies in Arabic literature and Islamic studies, Lebanese University (*Major de promotion*)
- 1966: Juris-doctor in Law, Lebanese University
- 1965: BA in Arabic literature, Lebanese University

## 3-COMMISSIONS AND COLLABORATION:

- 2010: Author of the draft law related to the Independence of the Judicial Branch in Lebanon presented to the President of the republic of Lebanon on behalf of the High Judicial Council
- 2008: Author of the Arab Principles for a good justice, Arab Center for the development of the rule of law and integrity (ACLRI)
- Since 1975: Member of the commission for the development and modernization of laws at the Lebanese parliament
- 1990: Member of the Commission of control of the works in order to protect the Judiciary Heritage at the ministry of Justice
- 1987: Member of the commission of control of the center for new technologies at the ministry of justice.
- Listed among the International experts of the Chicago convention for aviation.

## 4-PUBLICATIONS:

- 2010: Guide of the High Judicial Council, of the Cassation Court, and the Judiciary Ethics (in collaboration)
- 2000-2009: Monitoring and Mentoring of the Legal Gazette "Revue de la Juridiction administrative au Liban"
- 2008: The Rule of Law, Arab Center for the Development of the Rule of Law and Integrity (ACLRI) & UNDP
- 2006: In the Horizon of the Law (Legal Conferences), Sader Publishers
- 2003: The legal, Financial, Fiscal and Accounting Basis of the VAT (co-author) and the reference of precedents of urgent matters (Referes), Sader publishers
- 2000-2003: The Enforcement Laws in Lebanon (four volumes-in collaboration), Sader Publishers
- 2001: Reference of Precedents in Commercial Law, Sader Publishers
- 1991: Laws and Institutions Through History

## 5- LANGUAGES:

- Arabic: Read, written and spoken
- French: Read, written and spoken
- English: Read, written and spoken (fair)

القاضي الدكتور غالِبٌ غانِم

الرئيس الأول لمحكمة التمييز شرفاً
رئيس مجـلس القـضاء الأعـلى سابقاً
رئيس مجلس شورى الدولة سابقاً

تحكيم – استشارات قانونية

رأي قانوني

<u>طالب الرأي:</u> بنك عوده ش.م.ل.، وكيله المحامي النقيب شكيب قرطباوي.

<u>الموضوع:</u> مدى قبول الآليّة المعروفة بالـ Discovery أمام المحاكم اللبنانية.

تمهيد

a– طرحت عليّ الجهة طالبة الرأي الأسئلة الآتية:

<u>السؤال الأوّل:</u> هل أنّ آليّة الـ Discovery معروفة في لبنان؟ وهل تقبلها المحاكم اللبنانية إذا كانت صادرةً عن القضاء الأجنبي؟

<u>السؤال الثاني:</u> هل سبق لمنظّم هذا الرأي القانوني أن استخدم آليّة الـ Discovery في أيّ من الملفّات المعروضة أمامه؟

<u>السؤال الثالث:</u> هل أنّ المادتين ١٣٩ و ١٤٠ من قانون أصول المحاكمات المدنية اللبناني تتضمّنان ما يدلّ على إمكان استخدام الـ Discovery في لبنان؟

وما هو المضمون التفصيلي الكامل لهاتين المادتين؟



1

**السؤال الرابع:** فيما لو تضمَّن الـ Discovery معلومات أو أوامر تتناول أصول بنك عوده وتحاويله بالدولار الأميركي إلى نيويورك فهل يؤدّي ذلك إلى قبوله من المحكمة اللبنانية الناظرة في الدعوى الناشئة بين البنك وأحد زبائنه؟

b– وضعت الجهة طالبة الرأي بين يديّ مجموعة من المستندات، تتعلّق فئة منها بالدعوى العالقة أمام محكمة الدرجة الأولى في بيروت ما بين السيد ماجد بن أمير العتابي (المدّعي) وبنك عوده ش.م.ل. (المدّعى عليه). وتتعلّق فئة أخرى بالـ Discovery الذي حصل عليه المدّعي من القضاء الأميركي ، وبالتصريح المقدَّم من المحامي اللبناني وكيل المدّعي أمام القاضي مُصدر الـDiscovery.

كما وضعت بين يديّ الـ Opinion and Order (أي الـ Discovery) الصادر عن القضاء الأميركي لمصلحة المدّعي السيد العتابي.

في ضوء ذلك، سيعمد موقّع هذا الرأي القانوني إلى معالجة الأسئلة الأربعة المطروحة، ويلي ذلك خلاصة عامة توضيحيّة.

* * *

**في السؤال الأوّل: هل أنَّ الـ Discovery معروف في لبنان؟ وهل تقبله المحاكم اللبنانية إذا كان صادرًا عن القضاء الأجنبي؟**

١–لا يمكن استخدام آليّة الـ Discovery أمام المحاكم المدنية في لبنان للأسباب الآتية:

‫أ‬ ١–لا يوجد نصّ في التشريع اللبناني يجيز اللجوء إلى آلية الـ Discovery. ولا يوجد هذا النصّ، على الأخصّ، في قانون أصول المحاكمات المدنية اللبناني الذي ينتمي إلى أسرة القوانين المكتوبة. ومن المعروف أنَّ قوانين هذه الأسرة تهتم بأدقّ التفاصيل ولا تستسيغ تطبيق قواعد متعلّقة بأصول المحاكمات إذا كانت لا تتلاءم مع القواعد الموجودة في قوانينها.



2

وإنّ طلب الحصول على ال Discovery لتقديمه أمام المحاكم اللبنانية هو بحدّ ذاته مخالف للقانون اللبناني مخالفة صارخة خصوصًا وأنّه يرمي إلى الحصول على دليل غريب عن الأدلّة وسائر وسائل الإثبات المعتمدة في القانون اللبناني.

٢-يحرص القاضي اللبناني حرصًا شديدًا، وفقًا للمادة ٣٧٣ من قانون أصول المحاكمات المدنية، على تطبيق مبدأ وجاهية المحاكمة (Principe du contradictoire).

وبالرغم من أنّ قانون أصول المحاكمات المدنية أجاز إصدار قرارات رجائية ( Décisions gracieuses) أو أوامر على العرائض (Ordonnances sur requête) بدون دعوة الخصم وسماعه، فإنّه أحاط هذه الآلية المنصوص عليها في المواد ٥٩٤ وما بعدها و ٦٣١ وما بعدها بضمانات تحفظ حق الطرف الآخر الغائب (الإعتراض، الكفالة...).

ثم إنّ غالبيّة هذه التدابير تتعلّق بأوضاع ماديّة يُخشى زوالها أو بأوضاع قانونية لا تحتمل التأجيل.

هذا مع العلم بأنّ القاضي غالباً ما يدعو الطرف الآخر لبيان موقفه قبل اتخاذ القرار حرصًا على تطبيق مبدأ الوجاهيّة تطبيقاً حسناً.

تجدر الإشارة، في هذا السياق إلى أنّ ال Discovery صدر دون أن يكون البنك قد تبلَّغ الطلب ودون حضور ممثِّل عنه.

**٣- يستطيع القاضي اللبناني الناظر في النزاع إنابة محكمة أجنبيّة لاتخاذ إجراءات إثبات يقتضيها النظر في الدعوى. ولو رأت المحكمة اللبنانية العالق أمامها النزاع أنّ الإنابة ضرورية وقانونية لكانت لجأت إليها. ومن المستهجن أن يلجأ محام لبناني إلى تقديم طلب غير قانوني أمام القضاء الأميركي للإلتفاف على دور المحكمة اللبنانية في تقرير ما تراه مناسبًا من تدابير بشأن المسألة موضوع هذا الرأي.**

٤-من القواعد السّائدة في ميدان القانون الدولي الخاص قاعدة متعلّقة باستقرار المعاملات.

وفي حال تطبيق هذه القاعدة على الأموال المنقولة (وفي عدادها النقود) يقتضي أن يتمّ اللجوء إلى قانون موقعها وقت اكتساب الحقّ بوجه صحيح دون إمكان تغيير القانون بتغيير مكان

3



الأموال(يراجع بهذا الصدد: سامي منصور، الوسيط في القانون الدولي الخاص، دار العلم العربية، ١٩٩٤، رقم ٢١٣، ص٢٩٤).

وما من جدال حول أنّ قانون موقع الأموال لدى اكتسابها ـأو لدى إيداعهاـهو القانون اللبناني.

" ٥ـفي مجال العمليّات المصرفية ذات الارتباط بالقانون الدولي الخاص يُطبّق قانون المصرف (أي القانون السائد في الدولة حيث المصرف) دون أيّ قانون آخر، منعاً للبلبلة والإضطراب في الميدان المصرفي ذي التأثير الكبير على الأوضاع المالية والإقتصادية في الدولة التي نشأ فيها المصرف.

"Il est incontestablement admis, qu'à défaut d'une volonté expresse ou tacite des parties, la loi de la banque régira toute opération bancaire à caractère international. Mais la détermination de cette loi se fera par l'entremise d'une règle de rattachement, le plus souvent bilatérale, qui se base sur des considérations objectives, économiques et juridiques, rendant cette loi la plus en rapport avec ces opérations bancaires.

Deux considérations importantes militent en faveur de la compétence de la loi de la banque : (i) cette loi est celle qui cause la moindre perturbation aux parties à une opération bancaire ; (ii) Elle est la loi du milieu où s'exécute la prestation la plus caractéristique. »

(Khalil Sfeir, Droit international privé Comparé ; Tome I, Bruyant‑éditions juridique Sader, 2005, N.757, P.882)

ٔ٦‑ بالعودة إلى الأمر الصادر عن القاضي الأميركي (أي الDiscovery) وإلى تصريح المحامي اللبناني أمامه (وكيل السيد العتابي) يتبيّن أنّ هذا الأخير فسّر المادتين ١٣٩ و ١٤٠ من قانون أصول المحاكمات المدنية اللبناني تفسيرًا خاطئًا لدعم طلب موكّله.

ويبدو أنّ القاضي الأميركي مُصدر الأمر أخذ هذا التصريح بعين الاعتبار في طريقه إلى إصداره.

4



على أيّ حال، سنتطرّق لدى معالجة السؤال الثالث مضمون المادتين ١٣٩ و ١٤٠ أصول محاكمات مدنية، وإلى الدلالة على الخطأ الذي وقع فيه وكيل السيد العتابي، لدى تفسير المادتين المذكورتين.

**بالنتيجةْ تجدر الإشارة إلى أنّه، وفق القانون اللبناني، فإنّ القاضي هو المرجع الوحيد صاحب الصلاحية لتقرير الحصول على الدليل (على سبيل المثال: شهادة الشهود، المستندات) من قبل الأشخاص الثالثين، ويمكن أن يقوم القاضي بذلك عفوًا أو بناء على طلب أحد أطراف النزاع. بمعنى آخر، لا يستطيع أيّ طرف الحصول على الدليل من طرف ثالث بمعزل عن القاضي الناظر في النزاع. وإنّ أيّ دليل يستحصل عليه خلافًا لهذه الأصول يكون غير مقبول.**

**٢-يُبنى على كلّ ما تقدّم أن المحكمة اللبنانية الناظرة في الدعوى الناشئة فيما بين بنك عوده ش.م.ل. وعميله السيد العتابي لن تقبل بال Discovery: لغياب النصّ الذي يجيزه في القانون اللبناني، ولأنّه ليس من أدلّة الإثبات المعتمدة في لبنان، ولأنّه لا يتآلف مع قواعد القانون الدولي الخاص المطبّق على جميع المعاملات بما فيها المعاملات المصرفيّة، ولأنّ محامي السيد العتابي قدّم تصريحًا خاطئًا يتعلّق بتفسير المادتين ١٣٩ و ١٤٠ أصول محاكمات مدنية تمهيدًا للحصول عليه.**

<u>في السؤال الثاني: هل سبق لمنظّم هذا الرأي القانوني أن استخدم آليّة الـ Discovery في أيّ من الملفّات المعروضة أمامه؟</u>

٣-طوال حياتي القضائية المديدة (٣٨ سنة)، وفي إطار رئاستي لبعض محاكم الدرجة الأولى، أو محاكم الإستئناف، أو خلال رئاستي للهيئة العامة لمحكمة التمييز، وخصوصاً عندما توليت رئاسة الغرفة الإبتدائية في بيروت الناظرة في القضايا التجارية وفي قضايا المصارف، لم يتمّ استخدام آليّة الـ Discovery في أيّ ملف من الملفات المعروضة أمامي، وهي تُعدّ بالآلاف.

ولم يصل إلى علمي أنّ هذه الآلية استُخدمت لدى القضاء اللبناني في أيّ قضيّة من القضايا.



5

على أيّ حال، إنَّها آليّة غير متآلفة مع قواعد الإثبات ومع استخدام الأدلّة المنصوص عليها في القانون اللبناني الذي يمنح القاضي سلطة واسعة في إدارة الدعوى، وخصوصنا في إدارة قواعد الإثبات والإجراءات وما تستلزمه من اتخاذ تدابير يلجأ إليها القاضي تلقائيًّا كما تنصّ على ذلك المادة ١٣٥* من قانون أصول المحاكمات المدنية. وهي غير متآلفة أيضاً مع طبيعة النظام القانوني اللبناني المتعلّق بأصول المحاكمات، ومع روح هذا النظام، كما ذكرنا سابقاً.

يُضاف إلى ذلك أنَّه لا جدوى من الحصول على الـ Discovery طالما أنَّه غير مقبول كدليل من أدلّة الإثبات أمام المحاكم اللبنانية.

في السؤال الثالث: هل أنَّ المادتين ١٣٩ و ١٤٠ من قانون أصول المحاكمات المدنية اللبناني تتضمَّنان ما يدلّ على إمكان استخدام الـ Discovery في لبنان؟

وما هو المضمون التفصيلي الكامل لهاتين المادتين؟

٤–لا بدّ من الإشارة، في البدء، إلى ما ورد في الـDiscoveryحول الموضوع المطروح في هذا السؤال.

فقد جاء في الصفحة ٥ منه:

"Second, there is no indication that a Lebanese court would be unreceptive to federal-court judicial assistance. Cf.Intel, 542 U.S. at 264–65. To the contrary, petitioner submits a declaration from a Lebanese litigator stating that articles 139 and 140 of the Lebanese Code of Civil Procedure provide for the admissibility of evidence obtained in accordance with the law of other jurisdictions."

---

المادة ١٣٥: "للمحكمة أن تأمر من تلقاء نفسها بإجراء أيّ تحقيق استكمالًا لما تذرع به الخصوم من الأدلّة."

6



إنّ ما ورد لهذه الجهة يُعدّ جزءاً من التعليل المعتمد من قبل مُصدر الأمر لتبرير إصداره. وهو يعني أنّ الأمر (Discovery) استند إلى تصريح محامي المستدعي (السيد العتابي) معتبرًا مضمونه صحيحاً في حين أنّ هذا المضمون خاطئ كما سيظهر لاحقاً.

**والتصريح ذاته، فضلاً عن غياب الطرف الآخر في النزاع (المصرف)، دفع مُصدر الأمر (المحكمة الفدراليّة الأميركيّة) إلى القول إنّه ليس هناك أيّ مؤشّر يدلّ على أنّ المحكمة اللبنانية الناظرة في النزاع لن تقبل معاضدة المحكمة الفدرالية المختصّة في الولايات المتحدة.**

**وإذا كانت المعاضدة ممكنة في المبدأ ما بين قضاء بلد وقضاء بلد آخر، فإنّها لا تتمّ إلّا إذا كانت منسجمة مع قانون البلد موضوع المعاضدة (لبنان في المسألة الراهنة). ولا ينبغي أن تتمّ إذا كانت تسيئ إلى فريق من فرقاء النزاع بفعل محاولة تضليل القضاء من قبل الفريق الآخر.**

٥–إنّ الرأي الذي نبديه يشمل المادتين ١٣٩ و ١٤٠ من قانون أصول المحاكمات المدنية في لبنان معاً، لأنّ مضمون هاتين المادتين يرتبط ارتباطًا وثيقًا بمدى قبول ال  discovery الصادر في الخارج أمام المحكمة اللبنانية الناظرة في النزاع.

٦–إنّ المادة ١٣٩ نصّت على ما يلي:

"تجوز إقامة الدليل على الأعمال القانونية وفقًا لقانون الدولة الذي يطبّق على آثار هذه الأعمال أو وفقًا لقانون الدولة التي أنشئت فيها.

يخضع قبول الدليل على الأعمال المادية لقانون القاضي الذي ينظر بالنزاع.

تخضع القوة الثبوتية للأسناد لقانون المحلّ الذي أنشئت فيه."

العمل القانوني هو عمل إرادي يرمي إلى إنشاء الموجبات. ومن الأمثلة عليه: العقود (كالعقد بين المصرف والعميل)، والوصايا، والوكالة... أمّا العمل المادي فهو مجرّد عن الإرادة، ومن الأمثلة عليه: وقوع ضرر من جرّاء حادث، أو وجود بضاعة في مكان ما...

ونصّت المادة ١٤٠ على ما يلي:



7

"تخضع إجراءات الإثبات لقانون القاضي الذي تتمّ أمامه، ومع ذلك يُعتدّ بإجراءات الإثبات التي تمّت في دولة أجنبية إذا كانت مطابقة لأحكام القانون اللبناني، وإن كانت مخالفة للقانون الأجنبي. ومن الجائز إنابة محكمة أجنبية لاتخاذ إجراءات إثبات يقتضيها نظر الدعوى."

٧-الجدير ذكرُه أنّ المادتين ١٣٩ و ١٤٠ وردتا تحت الباب المختصّ بالإثبات في قانون أصول المحاكمات المدنية اللبناني.

وهما مرتبطتان بما جاء في القانون ذاته حول الإختصاص الدولي للمحاكم اللبنانية وفق ما نصّت عليه المادة ٧٤ من القانون ذاته، وهي تنصّ على ما يأتي:

"يخضع الإختصاص الدولي للمحاكم اللبنانية مبدئياً للأحكام المتعلّقة بالاختصاص الداخلي دون تمييز بين لبناني وأجنبي."

**ووجه الإرتباط بالاختصاص الدولي يتمثّل في كون المادتين ذاتهما تعالجان ناحية من نواحي تنازع القوانين في المكان بين قضاء الدولة اللبنانية وقضاء أيّ دولة أجنبيّة.**

هذا مع العلم بأنّه يعود للدولة اللبنانية-ولكلّ دولة- أن تحدّد قواعد الإختصاص الدولي لمحاكمها (يراجع حول هذا الموضوع: جاكلين باز، القانون القضائي الخاص، ١٩٩٣ ص ٤٩٥؛ -نصري دياب، نظرية وتطبيق أصول المحاكمات المدنية، المنشورات الحقوقية-صادر، ٢٠٠٩، ص١٩٧).

**٨-إنّ المادتين ١٣٩ و ١٤٠ تقدّمان البرهان على أنّ المشترع اللبناني حدّد الإختصاص الدولي للمحاكم اللبنانية في ميدان الإثبات (القاعدة)، كما حدّد اختصاص المحاكم الأجنبيّة في الميدان ذاته (الإستثناء).**

وإنّ آليّة الـ Discovery غير مشمولة بهذا الإستثناء الذي يقتضي تفسيره بشكل حصري.

٩- من الآراء الفقهيّة المتّصلة بالسؤال المطروح أنّه يعود للقاضي الناظر في النزاع تحديد الأدلّة المقبولة وتحديد كيفيّة تقديمها:



8

-وعلى ذلك فإنّ قانون القاضي الناظر في النزاع هو الذي يحدد كيفيّة تقديم وسائل الإثبات أمام المحكمة (بهذا المعنى: باتيفول فقرة ٧٠٩، بارتن فقرة ١٧٧...) وهو الذي يصف المسائل التي تثار لمعرفة ما إذا كانت تتعلّق بقبول الدليل أو بقوّته الثبوتيّة أو بإجراءات تقديمه..." (ادوار عيد، موسوعة أصول المحاكمات، الجزء ١٣، الإثبات ١، ص٤٩٣).

- "La loi du juge saisi, ou du for, est celle qui détermine la procédure à suivre dans les litiges comportant un ou plusieurs éléments d'extranéité… »

(Khalil Sfeir, Droit international privé Comparé, Tome I, 2005, N.757, P.882)

١٠-من غير الممكن قبول القضاء اللبناني الأدلّة أو الإجراءات التي تمّت في دولة أجنبيّة إلّا في الحالات الآتية، الإستثنائية والحصريّة:

- إنابة تصدر عن المحكمة اللبنانية لتكليف المحكمة الأجنبية باتخاذ إجراء من إجراءات الإثبات (المادة ١٤٠).
- أو: مطابقة إجراءات الإثبات التي تمّت في دولة أجنبيّة لقواعد القانون اللبناني (المادة ١٤٠). **والمطابقة تفرض أن يكون التدبير المتخذ من قاضٍ أجنبي مماثلًا للتدبير المنصوص عليه في القانون اللبناني.**
- أو: نشوء السّند في دولة أجنبية (المادة ١٣٩).
- أو: إقامة الدليل على الأعمال القانونية وفقًا لقانون الدولة المطبّق على آثار العمل القانوني (المادة ١٣٩)

هذا مع الإشارة، إلى أنّ موضوع الأمر (discovery) لا يتعلّق بإقامة الدليل على العمل القانوني (كما هي الحال بالنسبة للعقد الناشئ بين المصرف والعميل) الذي تمّ في لبنان بل يتعلّق بمعلومات عن أصول البنك ومعاملات الزبائن.

١١- إنّ كلّ ما ذكر آنفاً حول دور **المحكمة الاجنبية وفق المادتين ١٣٩ و ١٤٠ من قانون أصول المحاكمات المدنية اللبناني لا ينطبق على ال discovery الصادر عن القاضي الأميركي.**

9



فلا وجود للإنابة من قبل المحكمة اللبنانية. وإن Discovery هو آلية غريبة عن قانون أصول المحاكمات المدنية اللبناني، وغير قانونية بمنظار هذا القانون وهو غير مطابق لإجراءات الإثبات المعتمدة في لبنان. والموضوع المطروح لا يتعلّق بسند ناشئ في الخارج. والدليل المطلوب لا يتعلّق بالعمل القانوني.

١٢–يستنتج ممّا سبق أنّه لا يمكن الركون إلى التصريح الصادر عن محامي الطرف الآخر بشأن المادتين ١٣٩ و١٤٠ من قانون أصول المحاكمات المدنية، لأنّ هذا التصريح خالٍ من الدقّة، ولأنّه غير مطابق للقواعد المبيّنة في المادتين موضوع الرأي.

١٣–لمزيد من الإيضاح، ولأنّ المضمون التفصيلي الكامل للمادتين ١٣٩ و ١٤٠ من قانون أصول المحاكمات المدنية يؤكّد على خطأ التصريح الذي قدّمه وكيل السيد العتابي أمام القاضي الأميركي وينفي أيّ احتمال لقبول الـ Discovery أمام المحكمة اللبنانية، فإنّ موقّع هذا الرأي القانوني يعرض تباعًا تفاصيل مضمون المادتين ١٣٩ و ١٤٠.

<u>في تفاصيل ما تضمّنته المادة ١٣٩:</u>

١٤–الفقرة الأولى من هذه المادة تتعلّق بإقامة الدليل على الأعمال القانونية. ولا علاقة لـ Discovery المطلوب بالعمل القانوني، أي بالعقد الناشئ بين بنك عوده والعميل السيّد العتابي، كما سبق البيان.

والفقرة الثانية تتعلّق بإقامة الدليل على الأعمال المادية، وهذه الأعمال تخضع لقانون القاضي الناظر في النزاع، أي للمحكمة اللبنانية، بصراحة النصّ.

ولا جدال في لبنان حول خضوع قبول الدليل على الأعمال المادية لقانون القاضي الذي ينظر في النزاع، يستدلّ على هذه القاعدة من صراحة نصّ المادة ١٣٩ من قانون أصول المحاكمات المدنية.



10

وما نصّ عليه القانون بهذا الخصوص أجمع عليه الفقه (يراجع، على سبيل المثال: عفيف شمس الدين، المحاكمات المدنية بين النصّ والإجتهاد، بيروت ٢٠٠٦، ص ٢١٣، حلمي الحجّار، القانون القضائي الخاص، الجزء الأوّل، رقم ١٣٢، ص١١٦).

نشير في هذا الصدد إلى أنّ الكشف على أموال المصرف المودعة في الخارج يعتبر من قبيل الأعمال المادية التي يطبق عليها القانون اللبناني.

والفقرة الثالثة تتعلّق بالقوة الثبوتية للأسناد، وهي خارجة عن موضوع النزاع الرّاهن.

**لأجل ذلك، لا يمكن اللجوء إلى المادة ١٣٩ أصول محاكمات مدنية لتبرير الحصول على Discovery صادر عن قاضٍ أجنبي.**

في تفصيل ما تضمّنته المادة ١٤٠:

١٥–الجزء الأوّل من هذه المادة يُخضع إجراءات الإثبات للقاضي الذي تتمّ أمامه، أي للقاضي اللبناني في الحالة الراهنة.

الجزء الثاني يسمح بقبول إجراءات الإثبات التي تمّت في دولة أجنبية إذا كانت مطابقة لأحكام القانون اللبناني. علماً بأنّ ال Discovery ليس مطابقًا للأصول المرعية في القانون اللبناني، كما سبق البيان.

الجزء الثالث يختصّ بالإنابة التي لا وجود لها في النزاع الراهن لأنّ المحكمة اللبنانية لم تُثبّ المحكمة الأميركية لاتخاذ أيّ إجراء.

ويبدو جليًا أنّ ال Discovery لا ينطبق على أيّ حالة من هذه الحالات الثلاث.

**لأجل ذلك، لا يمكن اللجوء إلى المادة ١٤٠ أصول محاكمات مدنية لتبرير الحصول على Discovery صادر عن قاضٍ أجنبي.**



11

١٦-أكثر من ذلك، إنّ الفقه اللبناني يعتبر أنّ القوّة الثبوتية لطرق الإثبات التي لا تكون جاهزة مسبقاً يحدّدها قانون القاضي الناظر في النزاع:

"وبالنسبة إلى طرق الإثبات الأخرى التي لا تُهيّأ مسبقاً كالخبرة والشهادة والقرائن القضائية، فإنّ قوتها الثبوتية لا يمكن أن تحدد إلّا بمقتضى قانون القاضي الناظر في النزاع، وذلك بصرف النظر عن وجود قانون آخر يحكم أمر قبول هذه الأدلة (ادوار عيد، موسوعة أصول المحاكمات، الجزء ١٣، الإثبات ١، رقم ١٤٠، ص ٤٨٩).

**ويرى الفقه اللبناني أيضًا أنّ مفهوم إدارة قواعد الإثبات يشمل الشكل الذي يتمّ فيه الحصول على الأدلّة:**

"Rentrent, notamment, dans le concept d'administration des preuves les matières suivantes : les formes de production des preuves... »

(Emile Tyan, Précis de droit international privé, 1966, N.258, P.278)

**هذا مع العلم بأنّ إدارة قواعد الإثبات تعود إلى المحكمة الناظرة في النزاع، أي إلى المحكمة اللبنانية.**

**١٧-تأسيساً على كل ما تقدّم بشأن المادتين ١٣٩ و ١٤٠ من قانون أصول المحاكمات المدنية يتضح أنّ المحكمة اللبنانية الناظرة في النزاع سوف ترفض ال Discovery التي يتمسّك بها عميل المصرف ولن تعلّق عليها أيّ أهميّة لأنّ هذه الآلية تصطدم بقواعد الإثبات ويدور القاضي اللبناني في إدارتها.**

<u>**في السؤال الرابع: فيما لو تضمّن ال Discovery معلومات أو أوامر تتناول أصول بنك عوده وتحاويله بالدولار الأميركي إلى نيويورك فهل يؤدّي ذلك إلى قبوله من المحكمة اللبنانية الناظرة في الدعوى الناشئة بين بنك عوده وأحد زبائنه؟**</u>

١٨-جاء في الصفحة ٨ من تصريح المحامي عارف العارف (وكيل السيد العتابي) ما يلي:

12



"Evidence of Bank Audi's assets and U.S. dollars transfer in New York obtained in accordance with New York and United States law (specifically 28 U.S. 1782) will be accepted by the Lebanese Court."

وقد وصل المحامي إلى هذه النتيجة الخاطئة والمتعارضة مع القانون اللبناني بشكل عام، ومع قانون أصول المحاكمات المدنية اللبناني بشكل خاص، بعد أن بيّن أنّه لا يستطيع بالاستناد الى القانون اللبناني الحصول على المعلومات التي يطلبها بشأن التحاويل بالدولار الأميركي الى الخارج.

وقد اعتبر أنّ المحاكم اللبنانية ستقبل بالنتيجة التي يرمي إليها ال Discovery لأنّ الحصول على المعلومات المطلوبة غير ممكن في لبنان.

**١٩- إنّ ما جاء في تصريح المحامي العارف لهذه الجهة يرمي إلى الإلتفاف على القانون، وتحديداً إلى تجاوز قواعد الإثبات المنصوص عليها في قانون أصول المحاكمات المدنية اللبناني.**

ذلك أنّه، قبل التطرّق إلى مضمون ال Discovery، وإلى النتيجة التي يرمي إليها، يقتضي النظر فيما إذا كان مقبولاً كوسيلة من وسائل الإثبات. والمضمون والنتيجة لا يقبلان إلّا إذا تمّ قبول ال Discovery بحدّ ذاته.

وعلى افتراض أنّ ال Discovery تضمّن معلومات تتعلّق بالعملاء وحساباتهم وخصوصياتهم فإن البنك لا يستطيع مناقشتها لأنّه ملزم بالسريّة المصرفيّة بموجب القانون اللبناني الصادر في ١٩٥٦/٩/٣، وإن من يخالف هذا القانون يُعاقب بالحبس. وذلك يعني أنّ البنك سيحرم من حق الدفاع فيما يتعلّق بالموضوع المطروح الأمر الذي ينافي الحق في الدفاع بشكل متوازن ومبادئ الدعوى العادلة. وهو يشكّل سبباً إضافياً يدفع المحكمة اللبنانية إلى رفض قبول ال Discovery.



13

–يبنى على ذلك ما يأتي:

إنّ المحكمة اللبنانية لن تأخذ بالنتيجة التي يرمي إليها ال Discovery طالما أنّها ترفضه كدليل من أدلّة الإثبات.

وإنّ ما جاء في تصريح المحامي العارف لهذه الجهة هو من قبيل الإلتفاف على القانون لا من قبيل توضيح أحكام هذا القانون لتسهيل مهمّة القاضي مُصدر ال Discovery أو مهمّة المحكمة اللبنانية الناظرة في الموضوع.

<u>خلاصة عامة</u>

نشير في النهاية إلى أبرز ما تضمّنه هذا الرأي القانوني الذي يؤكّد بكل أجزائه على أنّ المحكمة اللبنانية لن تقبل ال Discovery كوسيلة من وسائل الإثبات المتاحة في ظلّ القانون اللبناني.

<u>بشأن السؤال الأوّل:</u>

– لا يوجد نصّ في التشريع اللبناني يجيز اللجوء إلى آلية ال Discovery. ولا يوجد هذا النصّ، على الأخصّ، في قانون أصول المحاكمات المدنية اللبناني، وإنّ طلب الحصول على ال Discovery يخالف القانون اللبناني مخالفة صارخة خصوصًا وأنّ التشريع اللبناني ينتمي إلى أسرة القوانين المكتوبة التي تهتم بأدقّ التفاصيل في قواعد أصول المحاكمات.

– يستطيع القاضي اللبناني الناظر في النزاع إنابة محكمة أجنبيّة لاتخاذ إجراءات إثبات يقتضيها النظر في الدعوى. ولو رأت المحكمة اللبنانية العالق أمامها النزاع أنّ الإنابة ضرورية وقانونية لكانت لجأت إليها.

– في مجال العمليّات المصرفية ذات الارتباط بالقانون الدولي الخاص يُطبّق قانون المصرف (أي القانون السائد في الدولة حيث المصرف) دون أيّ قانون آخر، منعاً للبلبلة والإضطراب في الميدان المصرفي ذي التأثير الكبير على الأوضاع المالية والإقتصادية في الدولة التي نشأ فيها المصرف.



14

– إنّ المحكمة اللبنانية الناظرة في الدعوى الناشئة فيما بين بنك عوده ش.م.ل. وعميله السيد العتابي لن تقبل بالـ Discovery: لغياب النصّ الذي يجيزه في القانون اللبناني، ولأنّه ليس من أدلّة الإثبات المعتمدة في لبنان، ولأنّه لا يتآلف مع قواعد القانون الدولي الخاص كما يتمّ تطبيقه على جميع المعاملات بما فيها المعاملات المصرفية، ولأنّ محامي السيد العتابي قدّم تصريحًا خاطئًا يتعلّق بتفسير المادتين ١٣٩ و ١٤٠ أصول محاكمات مدنية تمهيدًا للحصول عليه.

بشأن السؤال الثاني:

– طوال حياتي القضائية، وفي إطار رئاستي لبعض محاكم الدرجة الأولى، أو محاكم الإستئناف، أو خلال رئاستي للهيئة العامة لمحكمة التمييز، وخصوصاً عندما توليت رئاسة الغرفة الإبتدائية في بيروت الناظرة في القضايا التجارية وفي قضايا المصارف، لم يتمّ استخدام آلية الـ Discovery في أيّ ملف من الملفات المعروضة أمامي، وهي تُعدّ بالآلاف.

ولم يصل إلى علمي أنّ هذه الآليّة استخدمت لدى القضاء اللبناني في أي قضيّة من القضايا.

بشأن السؤال الثالث:

– إنّ آليّة الـ Discovery لا تتآلف مع قواعد الإثبات واستخدام الأدلّة المنصوص عليها في القانون اللبناني الذي يمنح القاضي سلطة واسعة في إدارة الدعوى.

– إذا كانت المعاضدة ممكنة في المبدأ ما بين قضاء بلد وقضاء بلد آخر، فإنّها لا تتمّ إلّا إذا كانت منسجمة مع قانون البلد موضوع المعاضدة (لبنان في المسألة الراهنة). ولا ينبغي أن تتمّ إذا كانت تسيئ إلى فريق من فرقاء النزاع بفعل محاولة تضليل القضاء من قبل الفريق الآخر.

– إنّ المادتين ١٣٩ و ١٤٠ تقدّمان البرهان على أنّ المشترع اللبناني حدّد الإختصاص الدولي للمحاكم اللبنانية في ميدان الإثبات (القاعدة)، كما حدّد اختصاص المحاكم الأجنبيّة في الميدان ذاته (الإستثناء).

وإنّ آليّة الـ Discovery غير مشمولة بهذا الإستثناء الذي يقتضي تفسيره بشكلٍ حصري.



15

–إنّه لا يمكن الركون إلى التصريح الصادر عن محامي الطرف الآخر بشأن المادتين ١٣٩ و ١٤٠ من قانون أصول المحاكمات المدنية، لأنّ هذا التصريح خالٍ من الدقّة، ولأنّه غير مطابق للقواعد المبيّنة في المادتين موضوع الرأي.

– إنّ اللجوء إلى المادتين ١٣٩ و ١٤٠ من قانون أصول المحاكمات المدنية لتبرير الحصول على ال Discovery الصادر عن قاضٍ أجنبي هو لجوء غير ممكن خصوصًا وأنّ ال Discovery لا يطابق أي تدبير من التدابير التفصيليّة الملحوظة في هاتين المادتين.

– إنّ المحكمة اللبنانية الناظرة في النزاع لن تقبل بتنفيذ آليّة ال Discovery التي يتمسّك بها عميل المصرف لأنّ هذه الآلية تصطدم بقواعد الإثبات وبدور القاضي اللبناني في إدارتها.

بشأن السؤال الرابع:

–خلافًا لما جاء في تصريح محامي السيّد العتابي المقدّم أمام القاضي مصدر ال Discovery، إنّ المحكمة اللبنانية لن تأخذ بالنتيجة التي يرمي إليها ال Discovery (الإطلاع على أصول بنك عوده في الولايات المتحدة الأميركيّة وعلى تحويلاته بالدولار الأميركي إلى بنوكها) لأنّ ما جاء في التصريح لهذه الجهة هو من قبيل الإلتفاف على القانون، ولأنّ ال Discovery بحدّ ذاته غير مقبول في لبنان من حيث المبدأ والشكل.

وإنّي أصرّح، تحت طائلة العقوبة المتعلّقة بالتصريح الكاذب وفق قوانين الولايات المتحدة الأميركية أنّ مضمون هذا الرأي القانوني يُعبّر عن قناعتي التامة في ضوء القوانين اللبنانية المرعيّة الإجراء.

وقّع في بيروت، لبنان بتاريخ ١١ أكتوبر ٢٠٢٠

القاضي الدكتور غالب غانم
الرئيس الأوّل لمحكمة التمييز شرفاً

16