November 12, 2021

**Abdo Jamil Ghossoub Office**
**Appeals Lawyer**
**Doctor of Laws - LLD**

**For the attention of Mr. Majed Bin Amir Al Attabi**

**Re.: Expressing a legal opinion about the attitude of the Lebanese Judiciary to Anglo-Saxon Discovery**

**Answer to the Aforementioned Opinion:**

I, Professor Abdo Jamil Ghossoub, University Instructor, Lawyer at the Beirut Bar Association, Legal Consultant in Dubai, and Legal Expert for multiple International Legal Establishments, showing my curriculum vitae in the paper attached herewith along with this opinion; decide the following:

**First: Facts of the Lawsuit Presented to Us:**

A copy of a pending case before the Court of First Instance of Beirut (the Chamber that looks into Financial Cases) was lodged at our office that includes the following facts:

---

Lebanon: Boushrieh, Al Hajj Center, Fifth Floor,Towards NewCity Supermarket, Tel:01/874387 – Fax: 01/874388 – Mobile: 03/360078 – Email: abdogh2@hotmail.com– PO: Beirut Palace of Justice: 2571

UAE: Dubai – In collaboration with:

HikmatFayad& Associates
Office 503, Green Tower
Baniyas Road, Rigga Al Buteen T +971 4 2222 888
PO Box 5630, Dubai, UAE F + 971 4 2274 870
www.hikmatfayad.com fayadlaw@emirates.net.ae



1

Whereas, you work in the field of singing through the stage name "Majid al-Muhandis" and have many musical albums spread in all the areas of the Arab World;

And whereas you have intended to invest some of your savings in the Lebanese Banks, therefore:

- You deposited on 01/04/2019 an amount of Two Million US Dollars (USD2,000,000) at Bank Audi S.A.L. with an annual interest that is up to 8% for one year ending on 01/04/2020.
- And you also deposited on 31/07/2019, an amount of Two Million and Fifty Thousand US Dollars (USD2,050,000) for a year with an annual interest of 8%, so that the deposit be due on 31/07/2020.

Both deposits were due each on its date and your ultimate balance at Bank Audi S.A.L. amounted to Four Million and Three Hundred and Two Thousand and Six Hundred Ninety Seven US Dollars (USD4,302,697)

Despite the maturity of both deposits and their relevant interests, Bank Audi S.A.L. refused to transfer the account balance of both deposits with their interests to you on the pretext of illegal banking restrictions on cash transfers and withdrawals, which led to filing the abovementioned lawsuit; which, in its arraignment, you decided to oblige Bank Audi S.A.L. to transfer your account balance deposited, amounting to Four Million and Three Hundred and Two Thousand and Six Hundred Ninety Seven US Dollars (USD4,302,697). In addition to the interests that shall be due after filing the lawsuit, to also be transferred to your bank account at Mashreq Bank in Dubai, the details thereof are revealed on the final page of the arraignment submitted to the Court of First Instance in Beirut.

### Second: On Expressing Legal Opinion

You ask if you could submit evidence to the Lebanese Judiciary, which you have obtained through Discovery sought in a legal proceeding in the United States of America.

We must first of all define this Anglo-Saxon legal institution:

**a. Definition of Discovery:**

**Discovery is the name given to the American procedure that allows, in the context of the search for evidence used in a trial, to ask a party for all**

2

**the information (facts, acts, documents, etc.) relevant to the settlement of
the dispute, even though these elements would be unfavorable to it.**

That is, the Anglo-Saxon process known as "Discovery", is an American procedural method that
allows, in the context of a pending case, to ask the litigant to indicate all the elements of the
inquiry (facts, actions, documents, etc.) that he has and are useful in the dispute, even if they are
not in his interest.

### b. The extent to which Discovery is accepted into the Lebanese procedural legal system

To answer this question, we must, in a first stage, lay out the realistic and legal framework for the
proposed solution:

The evidence is for use by the Plaintiff (singer) against the Defendant (a bank) - the merchant-
and therefore you can use against the Bank – merchant - any all the available evidence, as a non-
merchant party can use all the evidence against the merchant party, pursuant to the principle of
"freedom of proof" evidence in commercial matters , provided that this method does not violate
the procedural legal public order and the binding laws in Lebanon.

First of all, it must be pointed out that in the field of evidence, an important issue arises in knowing
the extent of freedom that the judge can have in choosing evidence and in assessing its value. This
results in two considerations:

The first is based on the idea of justice, which requires wide freedom to accept evidence in order
to discover the truth, and the second is based on the motive of stability in dealing and requires
restricting the judge's freedom to choose evidence and determine the value of each of them, to
prevent arbitrariness and to unify solutions in similar cases among all litigants. On the basis of
these two considerations, three doctrines of proof were established.

### 1- Doctrine of Free Proof

In this doctrine, the law does not specify special methods of proof, but rather allows the litigants
to present the evidence they want in order to persuade the judge. It also gives the judge the
freedom to assess the evidence presented to him and to form his conviction accordingly.[1]

### 2- Doctrine of Legal or Restricted Proof

---

[1] Jean Chevallier says in La Charge De La Prevue (The Burden of Proof), p. 25 in this regard: The free doctrine is based on the fact
that proof is to convince the mind of something, and judicial proof is to convince the judge's mind. Persuasion cannot be restricted
by legal rules, but for its realization, various evidence and means that the litigants can present are accepted, and the judge has
complete freedom to assess the value of each means or evidence. Thus, the evidence becomes a psychological or logical matter
rather than a legal one.

The law specifies in this doctrine special methods of proof that differ according to the facts and actions to be proven, it shows each method its value, and it obliges the judge and the litigants to adhere to them.

## 3- Hybrid Doctrine

It combines these two previous doctrines. In civil cases, it is based on defining the methods of proof, determining the value of some of them, and leaving the evaluation of others to the judge's wisdom and conviction. This doctrine was adopted by the Lebanese law and most modern laws such as the French, Latin, Egyptian and Syrian laws, and most other Arab laws.

This doctrine combines the spirit of justice- as it is in the judge's hands to investigate the truth-evidence dealing, and extrapolation of judicial solutions.[2]

It must be clarified here that the evidence, subject of the present opinion is a kind of free proof that you can raise against Bank Audi SAL, which has a commercial capacity, simply because it is a joint stock company. This type of company acquires the status of a merchant in form, as it is a Lebanese joint-stock company.

As long as the issue of free proof has been resolved, it remains for us to know whether the Discovery procedure is acceptable in Lebanon.

And for it to be accepted in Lebanon, it shall not violate the Lebanese general procedural system and the binding laws in this regard.

### c. Conformity between the Anglo-Saxon Discovery Firm and the Lebanese general procedural system and binding laws

First of all, it is worth mentioning that free proof is based on convincing the mind of something, whereas the judicial proof is persuading the judge's mind. Neither of them can be restricted by legal rules. However, for its realization, various evidence and means that the litigants can present are accepted, and the judge has complete freedom to assess the value of each means or evidence. Thus, the evidence becomes a psychological or logical matter rather than a legal one.[3]

---

[2] Edward Eid, Encyclopedia of Principles of Trials, Volume No. 13, p. 38

[3] Review the abovementioned quotation by Jean Chevallier in the Burden of Proof.

4



But the only obstacle to this psychological or logical matter is the procedural public order and the binding laws. So does the Lebanese general procedural system and the binding laws prevent the acceptance in Lebanon of evidence generated through the Discovery procedure?

At the outset, we point out that Lebanese law is very open to Anglo-Saxon concepts including "Trust" and "Estoppel", the division of fees clearance, and the acceptance of a one-person company, etc. Hence, Trust foundation is similar to our (waqf) institution and likewise, there is an Islamic Sharia foundation that is similar to Estoppel, etc.

This is in addition to the fact that the procedural culture in Lebanese law is an open and global culture in the context of globalization. Attempts are currently being made to unify procedures, at the regional (especially Arab), European, or global levels, particularly the principles and rules of non-national civil procedures for UNIDROIT.[4]

The convergence of international procedural laws has a cultural dimension; access to judicial truth should not differ from one country to another because the issue is mainly related to the truth, which is supposed to be the same in the entire world. And the relationship between the Law of Evidence and the Lebanese culture should not arise from texts only, but from the supreme goal of "discovering" the truth. Isn't Discovery a "discovery" of truth itself?

Lebanon - was and continues to be - multicultural and a link between the East and the West. The Lebanese culture was made in a certain way to weave global ties. And the rules of evidence made it possible to sew these ties or create links for the restorative law, so that the international culture rising from the internal society (namely, the Lebanese) must be a unifying culture that undermines isolation, not only at the procedural level, but at the level of legal culture in general.[5]

Therefore, the procedural legal culture does not prevent the acceptance of Anglo-Saxon legal institutions in our Lebanese legal system – in terms of culture. As for the legal texts, the Lebanese legislator has developed in the Civil Procedure Code (Chapter Two, Section Five of Chapter Three entitled "Evidence") a special section entitled: "Obliging the opponent and third parties to submit a document in their possession" in the articles No. 203, 204, 205, 206, 207, 208 and 209 thereof.

---

[4] In particular: Towards a universal civil trial, the American Law Institute's Non-National Rules of Civil Procedure; Ph. Fouchard, La procedure civile mondiale modélisée, 2004, éd. Panthéon – Assas, 2001 ; Quelle cohérence pour Jeuland et A. M. Leroyer, Dalloz, 2004.

[5] Emmanuel Gauland, Judicial Evidence and French Culture, 50/2005 – 2, Revue international interdisciplinaire, 149 to 170.

Indeed, we are not making a comparison herein between the Anglo-Saxon Discovery procedure and the Lebanese texts regulating the obligation of the opponent and third parties to submit a document in their possession, as stipulated in the texts above, yet we suffice to point out the similarities between such Anglo-Saxon process and this section of the Lebanese Code of Civil Procedures. Hence, the Discovery procedure does not violate of the Lebanese general procedural system and the binding national laws of evidence, rather it complements the same.

Moreover, the information companies in Lebanon are widespread and increasing day by day. These companies have all the data of people and institutions, and they provide every questioner with the necessary and sufficient information. In Lebanon, there are indexes that are printed out and renewed annually, including written information about people and institutions, their addresses, HQs, properties, the lawsuits filed by and against them, in addition to their work and financial status. Information companies in Lebanon are authorized to "disclose" details, so how is it not permissible to obtain the same information from abroad and through Discovery procedure?

Above all, the banks in Lebanon include sections that are concerned with inquiring about any person who may apply to the bank to obtain loans or facilities. The said sections are known as Banking Intelligence Service (Service de Renseignement bancaire), whereby banks exchange information. Indeed, several people have lost the opportunity to obtain a loan or facilities from a Lebanese or foreign bank operating on Lebanese territory because of the bad information gathered by the bank about them. The source of the information would be either the information companies mentioned hereinabove, or the "bank inquiry" that investigates every single detail, for the purpose of protecting banks from "bad customers".

Furthermore, we have in Lebanon an apparatus that works for the Central Bank of Lebanon, called the Central des risques, and this apparatus possesses tremendous information about merchants and other Lebanese and foreigners working in Lebanon. It is an official apparatus that has been operating for a long time in Lebanon and is very similar to the Discovery procedure.

Based on the aforementioned details, how would some parties say that the current Lebanese legal system prevents the Discovery procedure from operating?

In the end, we say that nowadays, thanks to the era of globalization (mondialisation), we can discover the "truth" and get liberated from the shell of our procedural system. Isn't Discovery a process to "discover" the truth?

6

In this regard, we do hereby mention that several years ago there was a conflict in the matter of proof between the Romano-Germanic and Anglo-Saxon systems. The procedures in the Anglo-Saxon systems concerned with evidence seem today closer to the Romano-Germanic system (to which the Lebanese legal system belongs). The Lebanese judge has become closer to "disclosing information" than before, because the Romano-Germanic system (and the Lebanese in particular) was affected by the Anglo-Saxon rules of evidence (Preuves anglo – Saxons).

Professor A. Zuckerman[6] believes that "disclosure procedures" are of particular importance in the Anglo-Saxon system, to the point of gaining a constitutional significance (signification constitutionnelle), which aims at a double purpose: to ensure the correctness of the judicial decision in the light of facts and to create confidence in the procedural system, in order to become effective in resolving disputes. H. Dennis believes that Discovery is of public interest because it actually leads to the protection of access to paperwork and documents, to avoid the risk of falling into incomplete judicial decisions that are ultimately the result of judicial errors.[7]

Other examples of the rapprochement between the Romano-Germanic and Anglo-Saxon can be given, namely, the Rome Convention on the Law Applicable to Contractual Obligations of 1980[8] and the European Patent Convention of 1973 (La Convention sur le brevet européen de 1973), or even the United Nations Convention on Contracts for the International Sale of Goods of 1980.[9]

We can say that the gap between the Anglo-Saxon and Romano-Germanic systems with regard to the Discovery procedure is no longer wide, as the mutual influence between the two systems has led to the adaptation of the rules of evidence in the two systems.[10]

In summary, we notice that the Anglo-Saxon Discovery procedure obliges the litigants to disclose any document in their possession, whether it is in their interest or not.

---

[6] A. Zuckerman, Privilege and public interest, dens C, Trapper, crim, Proof and Punisment; Butterworths, 1981, p. 248.

[7] I. H. Dennis, The law of evidence, 2 ème édition, 2002, p. 289.

[8] 80/934/CEE.

[9] http:www,uncitral org/pdf/French/texts/sales/cisg/CISG –f. pdf.

[10] Review: Practical Guide to Evidence, Christopher Allen, 3 ème éd., 2004; Evidence, Ardrew L.T. choo, 2006, Cross and Tapper on evidence; Colin Tapper, 11 ème édition, 2007; Droit judiciaire privé, Manuels Juris Classeur, Loïc Cadiet, Emmanuel Jeulan, Paris Litec, 5 ème edition, 2006; procedure civile, Gérard Couchez, 14 ème edition, 2006, Procédure civile, l'action en justice, le procès , les voies de recours, Mélina Douchy – Oudot, 2 ème édition, 2006 ; Guide pratique de procédure civile, Hervé Croz, Christian Morel, Olivier Fradin, 3ème edition, 2006.Guide pratique de procédure civile, Hervé Cros, Christian Morel, Olivier Fradin 3 ème edition 2006 ; Dalloz Action, Droit et pratique de la procédure civile, sous la direction de Serge Guinchard, 5 ème édition, 2006 – 2007.

7

In Lebanon, the previous system of proof was based on the opponents' freedom to present documents that were in their best interest only. However, it is up to the litigants in Lebanon to obtain any information that is against the interests of their opponents through many other means, where it is permissible to obtain the numbers of real estate owned by their opponent inside Lebanon by means of the "deny of ownership" transaction that is carried out by the Directorate of Real Estate Affairs, the automated center, and the opponent is provided with the real estate numbers owned by the person whose data is required to be revealed. He can also know all the contracts concluded by his opponent by reviewing the commercial registry. Information companies remain the great source of information about liabilities, and they are companies recognized and licensed by the competent official departments, as well as the "centralization of risks" at the Central Bank of Lebanon, which provides you with all the information about the person to be inquired about. Not to mention some economic publications that dedicate pages to information on some influential economic authorities.

In addition, the gap between the Romano-Germanic and Anglo-Saxon systems has been almost bridged since the introduction of Civil Procedure Rules to England, and the two systems became close.[11]

As for the practical practice in countries that adopt the Romano-Germanic system, the Discovery procedure has begun to emerge because it guarantees equality between opponents, and leads to the useful disclosure of documents (Divulgation utile) that are in the opponent's possession but not in his interest. In addition, it leads to speeding up the procedures by "discovering" hidden paperwork or documents, which are often productive and useful. Thereby, some issues would be resolved, leading to a significant saving in the time spent on the trial.[12]

It must be noted in this regard that globalization is not limited to the economic aspect, but also includes the legal aspect, through the convergence of systems, as the conflict between them leads to deterrent results in each of the countries that adopt the Anglo-Saxon system or the Romano-Germanic system. This affects the litigants, as what counts in private international law is the conflict of interests of individuals of an international status, not the conflict of regulations! So, the doors should not be closed between the two systems, but rather they should be wide open.

---

[11] http: //www. Opsi. Gov.uk/si1998/19983132. Htm.

[12] Review: Une procedure de discovery simplifiée par l'introduction en Angleterre des " civil Procedure Rules" ( SI 1998 / 3132 ) – par Mélanie D'anglejan.

8



### d. Conformity of Discovery to Articles 139 and 140 of the Lebanese Code of Civil Procedure:

Article 139 of the LCCP stipulates that **"evidence of legal acts may be established in accordance with the law of the country that applies to the effects of these acts, or according to the law of the country in which they were established.**

**Acceptance of evidence of material acts is subject to the law of the judge examining the dispute. The evidentiary power of attribution is subject to the law of the place in which it was established."**

**After analyzing this article, we come up with the following:**

Legal acts are subject to the law of the state that applies to the effects of these acts, or to the law of the state whereby they were established.

In the above two cases, American law is applicable because the legal acts to be proven were established in America and are subsequently subject to American law, which embraces "Discovery". And if we consider that the effects of these legal acts took place in Lebanon, then the Lebanese law considers in the terms of a third party- and you are from the category of third parties as you are not parties to the mentioned legal acts- that legal acts are material facts for them, and material acts can be proven by various means, so what is the impediment to proving them through the Discovery procedure ?

Therefore, Article 139, in both cases of its application, permits the application of the Discovery procedure as a means of proof.

Article 140 of the lCCP states that **"evidence procedures are subject to the law of the judge, before whom the said procedures are taking place. However, the evidence procedures that took place in a foreign country are considered valid if they conform to the provisions of the Lebanese law, even if they are in violation of the foreign law. It is possible to delegate a foreign court to take evidentiary measures necessary for the case."**

After analyzing this article, we come up with the following:

If we consider that the evidence procedures will be subject to the law of the judge before whom it is being held, and that the Lebanese judge is the intended party here, then the Lebanese judge can accept the application of Discovery procedure without any problems as long as the Lebanese judge

9



is not competent to assess the source of proof of the information presented to him. Moreover, the procedures for evidence according to the Discovery procedure are not contrary to the Lebanese public order, but rather are not alien to the same, as the Discovery procedure is very similar to the "centralization of risks" institution operating as an apparatus within the bodies of Lebanon's Central Bank. It is also similar to the information companies that provide the Lebanese with all the required information, which is necessary to file any lawsuit, not to mention the bodies working with Lebanese banks called information service (Service de renseignement), which exchanges information between banks on the issue of customers or on those who wish to deal with any Lebanese bank.

As for the issue of representation, it is not raised here. It is unreasonable for a Lebanese court to delegate a foreign court to carry out a procedure that does not originally fall within the jurisdiction of the Lebanese judiciary. The Lebanese judge does not have to collect information about the litigants, but the evidence is the task of the litigants, and the role of the judge is limited to receiving this information to take measures based on it.

Articles 139 and 140 of the LCCP are directed towards acceptance of Discovery's application in Lebanon, not rejection of the same.

However,

It must be clarified that Articles 139 and 140 of the LCCP deal with "proof procedures", while "Discovery" is not in itself a proof procedure, but rather is a means of collecting information, in other words, it is a source of information, but it does not contradict in any way with the Lebanese legal system. As we find, for example, that knowing the names of real estate owners is carried out according to a transaction called "the transaction of denial of ownership", as anyone can submit an unjustified request to the "Directorate of Real Estate Affairs, the Automated Center" in the Ministry of Finance; as it is enough to write in the "purpose of the request" box: To inquire! Then, how can the Discovery procedure be a violation to the Lebanese law?!

This is for real estate ownership; besides, with regard to the commercial registry, in Lebanon we can view all the contents of the commercial registry by submitting an unjustified request to report the restrictions and entries of any company registered at the mentioned bureau, where the applicant is given an electronic bulletin that includes all the information about the company. Then, how can the Discovery procedure be a violation to the Lebanese law?!

**Third: Conclusion**

10

The Discovery procedure is acceptable to the Lebanese legal system for the reasons set out hereinbefore. As, I see that the court examining the case between you and Bank Audi SAL, has no reason to reject Discovery procedure in Lebanon.

The outcome that the Discovery procedure aims to achieve, which is to review the assets of Bank Audi SAL in the United States of America and its transfers in US dollars to its banks, shall be definitely adopted by the Lebanese courts, because the Lebanese courts have nothing to do with the source of the information obtained by the litigant! What about the courts in Lebanon if a litigant applies for a precautionary seizure of the assets or money of his opponent? Is the Lebanese court asking him about the source of his information regarding the existence of this money?! Of course not, as there is no legal or even logical justification for the refusal.

What law prevents a litigant from investigating the assets or funds of his opponent for exercising his legitimate rights over them?! And even the Lebanese court does not have to search or ask about the source of this information! Whoever wants to challenge the Discovery procedure must challenge its procedures abroad, where they took place or will take place, and not in Lebanon, where it is not within the competence of the Lebanese judiciary to search for the source of the litigants' information and discover the assets and money owned by their opponent!! So the problem raised about the permissibility of accepting the results of the Discovery procedure's application in Lebanon is a fictitious one (Faux problem). Whoever wants to challenge Discovery procedure must appeal against it, where its procedures are taking place. However, after the completion of the procedures and the acquirement of the result, the Lebanese courts have no right in any way to refuse to take any action on the litigant's money or assets under the pretext that the mechanism of obtaining the information that enabled them to "discover" these funds or assets is not acceptable in Lebanon! This is without a doubt an unacceptable legal and procedural heresy.

**Therefore,**

I, Professor Abdo Jamil Ghossoub, the signatory of this opinion, and my CV attached herewith, hereby declare, under penalty of civil and criminal liability, especially those arising from a false statement in accordance with the laws of the United States of America, that the content of this legal opinion expresses our firm convictions in light of our correct interpretation of the Lebanese laws in force, especially in terms of the absence of any obstacle preventing the acceptance of the Discovery procedure in Lebanon on the one hand and the lack of jurisdiction of the Lebanese courts to investigate the legality of the methods used by one of the litigants abroad to obtain useful information in the case, the appeal remains permissible before the authority that decided to use the Discovery mechanism, and not in Lebanon.

**Professor Abdo Jamil Ghossoub**

11

مكتب
عبده جميل غصوب
محام بالاستئناف
دكتور في الحقوق

بتاريخ ٢٠٢١/١١/١٢

حضرة السيد ماجد بن امير العتابي المحترم

الموضوع: ابداء رأي قانوني عن موقف القضاء اللبناني من اللجوء الى الـDiscovery الانكلوسكسوني

الاجابة على الرأي اعلاه:

نحن البروفسور عبده جميل غصوب الاستاذ الجامعي، المحامي لدى نقابة المحامين في بيروت، المستشار القانوني في دبي، والخبير القانوني لدى اكثر من مؤسسة قانونية دولية، وقد بيّنا سيرتنا الذاتية في الورقة المرفقة طيّه مع هذا الرأي، نقرر ما يلي:

اولا: في وقائع القضية المعروضة امامنا:

لقد تم ايداعنا نسخة عن دعوى عالقة امام محكمة الدرجة الاولى في بيروت ( الغرفة الناظرة بالدعاوى المالية )، تتضمن الوقائع التالية:

لبنــان: البوشرية، سنتر الحاج، الطابق الخامس، تجاه سوبر ماركت نيوسيتي، هاتف: ٠١/٨٧٤٣٨٧ -
فاكس: ٠١/٨٧٤٣٨٨ - خلوي: ٣٦٠٠٧٨ /٣٠ - البريد الالكتروني: abdogh2@hotmail.com
ص. ب. قصرعدل بيروت : ٢٥٧١

الامارات العربية المتحدة: دبي - متعاونون مع:

Hikmat Fayad & Associates
Office 503, Green Tower
Baniyas Road, Rigga Al Buteen          T +971 4 2222 888
PO Box 5630, Dubai, UAE               F + 971 4 2274 870
www.hikmatfayad.com                   fayadlaw@emirates.net.ae

انكم تعملون في مجال الغناء من خلال الاسم الفني " ماجد المهندس " ولديكم العديد من الالبومات الغنائية المنتشرة في كافة ارجاء الوطن العربي وانكم رغبتم في استثمار بعض مدخراتكم في المصارف اللبنانية وعليه:

ـ أودعتم بتاريخ ١/٤/٢٠١٩ مبلغ مليوني دولار اميركي ٢,٠٠٠,٠٠٠ $ لدى بنك عوده ش.م.ل بفائدة سنوية تصل الى ٨ % لمدة سنة واحدة تنتهي في ١/٤/٢٠٢٠.

ـ وأودعتم ايضا بتاريخ ٣١/٧/٢٠١٩، مبلغ مليوني وخمسين الف دولار اميركي ٢,٠٥٠,٠٠٠ $ لمدة سنة بفائدة سنوية بنسبة ٨ % على ان تستحق الوديعة بتاريخ ٣١/٧/٢٠٢٠.

استحقت الوديعتان كل بتاريخها وبلغ رصيدكم النهائي لدى بنك عوده ش.م.ل مبلغ اربعة ملايين وثلاثماية والفين وستماية وسبعة وتسعين دولارا اميركيا ٤,٣٠٢,٦٩٧ $.

بالرغم من استحقاق الوديعتين وفوائدها، رفض بنك عوده ش.م.ل تحويل رصيد حساب الوديعتين مع فوائدهما لكم متحججا بالقيود المصرفية غير القانونية على التحويلات والسحوبات النقدية، ما اقتضى التقدم بالدعوى اعلاه التي انتهيتم في خاتمة استحضارها الى طلب الزام بنك عوده ش.م.ل بتحويل رصيد حساباتكم لديه البالغة اربعة ملايين وثلاثماية والفين وستماية وسبعة وتسعين دولارا اميركيا ٤,٣٠٢,٦٩٧ $ . بالاضافة الى الفوائد التي سوف تستحق بعد اقامة الدعوى، الى حسابكم المصرفي في بنك المشرق في دبي، الذي بيئتم تفاصيله في الصفحة الاخيرة من الاستحضار المقدم الى المحكمة الابتدائية في بيروت.

## ثانيا: في ابداء الرأى القانوني

تسألون  اذا كان بمكنكم تقديم ادلة للقضاء اللبناني، استحصلتم عليها عن طريق الـDiscovery، عبر إجراءات قانونية في الولايات المتحدة الاميركية.

لا بد لنا بادىء ذي بدء من تعريف هذا الإجراء القانوني الانكلوسكسونية :

2

<div dir="rtl">

## أ – تعريف الـDiscovery:

</div>

Discovery est le nom donné à la procédure américaine permettant dans le cadre de la recherche de preuves pouvant être utilisées dans un procès, de demander à une partie tous les éléments d'information ( faits, actes, documents …) pertinents pour le règlement du litige dont elle dispose quand bien même ces éléments lui seraient défavorables.

<div dir="rtl">

اي ان الإجراء القانوني الانكلوسكسوني المعروف باسم Discovery هو وسيلة اجرائية اميركية تجيز ـ في معرض دعوى عالقة  ـ  الطلب من الخصم بيان جميع عناصر الاستعلام (وقائع، اعمال، مستندات الخ ) تكون بحوزته ومفيدة في النزاع ولو كانت في غير مصلحته.

## ب ـ مدى قبول إجراء الـ Discovery في النظام القانوني الاجرائي اللبناني

للاجابة على هذا السؤال لا بد لنا، في مرحلة أولى، من وضع الاطار الواقعي والقانوني للحل المقترح:

الادلة للإستخدام من قبل المدعي (الفنان) ضد المدعى عليه (المصرف) ـ التاجر، وبالتالي فإنه يمكنكم ان تستخدموا ضد المصرف ـالتاجر ـ أي و جميع الادلة المتاحة اذ يمكن لغير التاجر ان يستخدم بوجه التاجر كل الادلة، عملا بمبدأ الاثبات الحر في المواد التجارية، بشرط الا تكون هذه الوسيلة مخالفة للنظام العام القانوني الاجرائي والقوانين الالزامية في لبنان.

</div>

3

لا بد بادىء ذي بدء من الاشارة الى انه تثار في حقل الاثبات مسألة هامة تكمن في معرفة مدى الحرية التي يمكن ان تعود للقاضي في اختيار الادلة وفي تقييمها قيمتها. وينشأ عن ذلك اعتباران:

اولهما يرتكز على فكرة العدالة، وهو يستلزم حرية واسعة في قبول الادلة توصلا لكشف الحقيقة، وثانيهما يستند الى دافع الاستقرار في التعامل ويوجب تقييد حرية القاضي في اختيار الادلة وتعيين قيمة كل منها، منعا للتعسف ولاجل توحيد الحلول في القضايا المتماثلة بين جميع المتقاضين. وعلى اساس هذين الاعتبارين نشأت مذاهب ثلاثة في الاثبات.

### ١ ــ مذهب الاثبات الحر

لا يعيّن القانون، في هذا المذهب، طرقا خاصة للاثبات، بل يترك للخصوم حرية تقديم الادلة التي يشاؤون في سبيل اقناع القاضي. كما يترك للقاضي حرية تقدير الادلة المقدمة اليه وتكوين قناعته بالاستناد اليها [1].

### ٢ ـ مذهب الاثبات القانوني او المقيّد

يعيّن القانون في هذا المذهب طرقا خاصة للاثبات تختلف باختلاف الوقائع والتصرفات المراد اثباتها، ويبيّن لكل طريق قيمته، ويفرض على القاضي والخصوم التقيد بها.

### ٣ ــ المذهب المختلط:

هو يجمع بين هذين المذهبين السابقين. ويقوم في القضايا المدنية على تحديد طرق الاثبات وتعيين قيمة بعضها وترك تقدير البعض الأخر لحكمة القاضي وقناعته. وقد اخذ بهذا المذهب

---

[1] يقول جان شبغليه في عبء الاثبات، ص ٢٥ في هذا الصدد: ان المذهب الحر يستند الى كون الاثبات هو اقناع العقل بحقيقة شيء، والاثبات القضائي هو اقناع لعقل القاضي، والاقناع لا يمكن تقييده بقواعد قانونية بل تقبل لاجل تحقيقه مختلف الادلة والوسائل التي يستطيع الخصوم تقديمها وتكون للقاضي حرية تامة في تقدير قيمة كل وسيلة او دليل. وبذلك يصبح الاثبات امرا نفسيا او منطقيا اكثر منه قانونيا.

القانون اللبناني ومعظم الشرائع الحديثة كالقانون الفرنسي وسائر القوانين اللاتينية والقانون المصري والسوري ومعظم القوانين العربية الاخرى.

هذا المذهب يجمع بين روح العدالة اذ يترك للقاضي حرية استقصاء الحقيقة وثبوت التعامل واستقراء الحلول القضائية [٢].

لا بد هنا من التوضيح ان الاثبات المطروح في الرأي الحاضر، هو من نوع الاثبات الحر الذي يمكن لكم اثارته بوجه بنك عوده ش.م.ل الذي يتمتع بالصفة التجارية، بمجرد كونه شركة مساهمة مغفلة. وهذا النوع من الشركات يكتسب صفة التاجر شكلا اي بمجرد انه شركة مغفلة لبنانية.

فطالما ان مسألة الاثبات الحر قد حسمت، يبقى لنا معرفة ما اذا كان إجراء الـ Discovery مقبولة في لبنان.

هناك شرط واحد لقبولها في لبنان هو الا تكون مخالفة للنظام العام الاجرائي اللبناني والقوانين الالزامية في هذا الصدد.

## ج ـ عدم تعارض إجراء الـDiscovery الانكلوسكسوني مع النظام العام الاجرائي اللبناني والقوانين الالزامية

لا بد بادىء ذي بدء من التذكير بان الاثبات الحر يقوم على اقناع العقل بحقيقة شيء ما. والاثبات القضائي هو اقناع عقل القاضي، فلا يمكن تقييد اي منهما بقواعد قانونية، بل تقبل لاجل تحقيقهما مختلف الادلة والوسائل التي يستطيع الخصوم تقديمها وتكون للقاضي حرية تقدير كل منها. فبذلك يصبح الاثبات الحر امرا نفسيا او منطقيا اكثر منه قانونيا [٣].

---

[٢] ادوار عيد موسوعة اصول المحاكمات، الجزء الثالث عشر، ص ٣٨.

[٣] راجع اعلاه قول جان شيفالييه في عبء الاثبات.

ولكن العائق الوحيد امام هذا الامر النفسي او المنطقي هو النظام العام الاجرائي والقوانين الالزامية. فهل ان النظام العام الاجرائي اللبناني والقوانين الالزامية تمنع قبول الاثبات الناشىء عن الـ Discovery في لبنان ؟

نشير في البدء الى ان القانون اللبناني منفتح جدا على المؤسسات القانونية الانكلوسكسونية ومنها إجراء التراست Trust، والاستوبيل Estoppel، وتجزئة الذمة المالية، وقبول شركة الشخص الواحد الخ. فالتراست Trust شبيهة عندنا بمؤسسته الوقف ومؤسسته الاستوبيل لها مثيلتها في الشريعة الاسلامية الخ.

هذا فضلا عن ان الثقافة الاجرائية في القانون اللبناني، هي ثقافة منفتحة وعالميا ـ في اطار العولمة ـ تجري حاليا محاولات لتوحيد الاجراءات، سواء على الصعيد الاقليمي ( لا سيما العربي ) او الاوروبي، او العالمي، خصوصا مباديء وقواعد الاجراءات المدنية غير الوطنية لليونيدروا ( UNIDROIT ).[٤]

ان تقارب القوانين الاجرائية العالمية هو ذات بعد ثقافي ؛ فالوصول الى الحقيقة القضائية لا يجب ان يختلف من بلد الى آخر لان المسألة تتعلق بشكل اساسي بالحقيقة، التي من المفترض ان تكون واحدة في العالم بأسره. والعلاقة بين قانون الاثبات والثقافة اللبنانية لا يجب ان ينهض من النصوص فقط بل من الهدف الاسمى وهو " اكتشاف " الحقيقة ؟ اوليس إجراء الـ Discovery هو " اكتشاف " الحقيقة بذاتها ؟

ان لبنان كان ـ وما زال ـ صلة وصل بين الشرق والغرب، وهو متعدد الثقافات وان الثقافة اللبنانية صنعت بطريقة معيّنة لنسج الاواصر العالمية. وان قواعد الاثبات جعلت من الممكن خياطة هذه الروابط او انشاء روابط للقانون التصالحي، بحيث يجب ان تكون الثقافة الدولية

---

[٤]  على وجه الخصوص: نحو محاكمة مدنية عالمية، القواعد غير الوطنية للاجراءات المدنية لمعهد القانون الاميركي ؛
Ph. Fouchard, La procedure civile mondiale modélisée, 2004, éd. Panthéon – Assas, 2001 ; Quelle cohérence pour Jeuland et A. M. Leroyer, Dalloz, 2004.

الناهضة من المجتمع الداخلي ( وهنا اللبناني ) ثقافة توحيدية تؤدي الى تقويض الانغلاق، ليس فقط على المستوى الاجرائي، بل على مستوى الثقافة القانونية بصورة عامة °.

اذن فان الثقافة القانونية الاجرائية لا تحول اطلاقا دون قبول المؤسسات القانونية الانكلوسكسونية في نظامنا القانوني اللبناني ـ هذا من جهة الثقافة، اما من جهة النصوص القانونية، فقد افرد المشترع اللبناني في قانون اصول المحاكمات المدنية ( الفصل الثاني ـ القسم الخامس من الباب الثالث المعنون " الاثبات ") قسما خاصا معنونا: " الزام الخصم والغير بتقديم مستند تحت يده " في المواد ٢٠٣، ٢٠٤، ٢٠٥، ٢٠٦، ٢٠٧، ٢٠٨، ٢٠٩ منه.

لسنا هنا بمعرض اجراء مقارنة بين الـDiscovery الانكلوسكسونية وبين النصوص اللبنانية المنظمة لالزام الخصم والغير بتقديم مستند تحت يده، المنصوص عنها في النصوص اعلاه، ولكننا نكتفي بالاشارة الى التقارب بين ذلك الاجراء الانكلوسكسوني وهذا الجزء من قانون اصول المحاكمات المدنية اللبناني، ما يجعل الـ Discovery غير مخالف للنظام العام الاجرائي اللبناني ولقوانين الاثبات الوطنية الالزامية التطبيق، بل مكملا صحيحا ومفيدا لها.

ليس هذا فقط، بل ان شركات المعلومات في لبنان منتشرة وتزداد انتشارا يوما بعد آخر. وهذه الشركات متخصصة في جميع المعلومات عن الاشخاص والمؤسسات وهي تزود كل سائل بالمعلومات اللازمة والكافية، بل اكثر من ذلك فانه توجد في لبنان فهارس مطبوعة ورقيا وتجدد سنويا تتضمن بين دفتيها، معلومات خطية عن اشخاص ومؤسسات، بدءا من عناوينها ومراكزها وممتلكاتها وانتهاء بالدعاوى المرفوعة منها او بوجهها، مرورا بكل مفاصل عملها وذممها المالية. فشركات المعلومات في لبنان مرخص لها بان " تفضح " كل مستور، فكيف لا يحق الاستحصال على ذات المعلومات من الخارج وعن طريق الـ" Discovery " ؟!

واكثر من كل ذلك ، فان للمصارف في لبنان اقساما داخلها تعنى بالاستعلام عن اي شخص قد يتقدم الى المصرف للاستحصال على قروض او تسهيلات ، وان هذه الاقسام المسماة

---

° ايمانويل جولاند، الادلة القضائية والثقافة الفرنسية، Revue international interdisciplinaire 50/2005-2 ١٤٩ الى ١٧٠.

Service de Renseignement bancaire تتبادل المصارف بموجبها المعلومات فيما بينها. وكم من شخص خسر فرصة الاستحصال على قرض او تسهيلات من مصرف لبناني او اجنبي عامل على الاراضي اللبنانية بسبب سوء المعلومات الواردة الى المصرف عنه والتي يكون مصدرها اما شركات المعلومات المحكى عليها اعلاه واما " الاستعلام المصرفي " الذي لا يترك لا شاردة ولا واردة الا للاستعلام عنها حماية للمصارف من " الزبائن السيئين ".

واكثر من كل ذلك، لدينا في لبنان جهاز يعمل لدى مصرف لبنان اسمه " مركزية المخاطر Central des risques " هذا الجهاز يملك معلومات هائلة عن التجار وسواهم من اللبنانيين والاجانب العاملين في لبنان وهو جهاز رسمي يعمل منذ زمن طويل في لبنان ويشبه الى حد بعيد إجراء الـ" Discovery ".

فكيف ـ والحالة على ما هي اعلاه ـ يجيز البعض لنفسه القول بانه لا يصح إعمال إجراء الـDiscovery من خلال المنظومة القانونية اللبنانية الحالية ؟

وفي النهاية نقول بان زمن العولمة mondialisation يأبى ان " نتقوقع " في زوايا نظامنا الاجرائي، فنحرم الحقيقة من فرص " اكتشافها ". أليس إجراء الـDiscovery هو إجراء "استكشاف الحقيقة "؟

لا بد في هذا السياق من الافكار من القول انه منذ سنوات خلت كان يوجد ثمة تعارض في موضوع الاثبات بين النظامين الرومانو ـ جرماني والانكلوسكسوني. فالاجراءات في الانظمة الانكلوسكسونية المختصة بالاثبات تبدو اليوم أقرب الى النظام الرومانو ـ جرماني (الذي ينتمي اليه النظام القانوني اللبناني )، فالقاضي اللبناني اصبح أقرب الى " إفشاء المعلومات " من السابق، بسبب تأثر النظام الرومانو ـ جرماني ( واللبناني خصوصا ) بقواعد الاثبات الانكلوسكسوني Preuves anglo – Saxons .

8

يرى البروفسور A. Zuckerman [6] ان " اجراءات الافشاء " ترتدي اهمية خاصة في النظام الانكلوسكسوني، الى درجة اكتساب دلالة دستورية Signification constitutionnelle فهي ترمي الى غاية مزدوجة: ضمان صحة القرار القضائي في ضوء الوقائع وخلق ثقة في النظام الاجرائي، لكي يصبح فعالا في حل النزاعات. ويرى H. Dennis بأن إجراء الـ" Discovery " هي ذات نفع عام لانها تؤدي فعليا الى حماية الوصول الى الوثائق والمستندات، لتفادي خطر الوقوع في اصدار قرارات قضائية ناقصة تكون في النهاية وليدة اخطاء قضائية[7].

ويمكننا اعطاء امثلة أخرى على تقارب التضامن الرومانو ـ جرماني والانكلوسكسوني، من بينها معاهدة روما بشأن القانون المطبق على الالتزامات العقدية العائدة للعام ١٩٨٠ [8] والمعاهدة المتعلقة بالبراءات الاوروبية للعام ١٩٧٣ La Convention sur le brevet européen de 1973 ، او حتى معاهدة الامم المتحدة بشأن عقود بيع البضائع الدولية للعام ١٩٨٠[9].

نستطيع القول بأن المسافة بين النظامين الانكلوسكسوني والرومانو ـ جرماني في ما يخص إجراء الـ" Discovery "، لم تعد بعيدة، فالتأثير المتبادل بين النظامين قد أدى الى تأقلم قواعد الاثبات في النظامين مع بعضهما البعض [10].

في الخلاصة نقول بأن إجراء الـ " Discovery " الانكلوسكسوني يلزم الخصوم بالكشف عن اي مستند بحوزتهم، سواء أكان يصب في مصلحتهم ام لا.

---

[6] A. Zuckerman, Privilege and public interest, dens C, Trapper, crim, Proof and Punisment; Butterworths, 1981, p. 248.

[7] I. H. Dennis, The law of evidence, 2 ème édition, 2002, p. 289.

[8] 80/934/CEE.

[9] http:www,uncitral org/pdf/French/texts/sales/cisg/CISG –f. pdf.

[10] انظر في كل ذلك:

Practical Guide to Evidence, Christopher Allen, 3 ème éd., 2004; Evidence, Ardrew L.T. choo, 2006, Cross and Tapper on evidence; Colin Tapper, 11 ème édition, 2007; Droit judiciaire privé, Manuels Juris Classeur, Loïc Cadiet, Emmanuel Jeulan, Paris Litec, 5 ème edition, 2006; procedure civile, Gérard Couchez, 14 ème edition, 2006, Procédure civile, l'action en justice, le procès , les voies de recours, Mélina Douchy – Oudot, 2 ème édition, 2006 ; Guide pratique de procédure civile, Hervé Croz, Christian Morel, Olivier Fradin, 3ème edition, 2006.Guide pratique de procédure civile, Hervé Cros, Christian Morel, Olivier Fradin 3 ème edition 2006 ; Dalloz Action, Droit et pratique de la procédure civile, sous la direction de Serge Guinchard, 5 ème édition, 2006 – 2007.

9

في لبنان كان نظام الاثبات السابق يقوم على حرية الخصوم في ابراز المستندات التي تصب في مصلحتهم فقط. ولكن يعود للمتقاضين في لبنان ان يستحصلوا على اي معلومات تكون ضد مصلحة خصومهم بوسائل أخرى كثيرة ومتعددة ومنها ـ كما ذكرنا ـ جواز الاستحصال على ارقام العقارات التي يملكها خصمهم داخل لبنان بواسطة معاملة " نفي الملكية" التي تنجزها مديرية الشؤون العقارية ـ المركز الآلي، ويتم تزويد الخصم مقدم الطلب بارقام العقارات التي يملكها الشخص المطلوب كشف اسراره. كما يمكنه معرفة جميع العقود المبرمة من خصمه عن طريق مراجعة السجل التجاري. وتبقى شركات المعلومات هي المصدر الكبير للمعلومات عن الخصوم وهي شركات معترف بها ومرخصة من الدوائر الرسمية المختصة، فضلا عن "مركزية المخاطر" لدى مصرف لبنان المركزي الذي يفيدكم بكل المعلومات عن الشخص المراد الاستفسار عنه. هذا عدا عن بعض المنشورات الاقتصادية التي تخصص صفحات للمعلومات عن بعض الجهات الاقتصادية النافذة.

بقي ان نقول في هذا السياق بان التعارض بين النظامين الرومانو ـ جرماني والانكلوسكسوني، قد غاب بصورة شبه كاملة منذ ادخال Civil Procedure Rules الى انكلترا، بحيث اصبح النظامان متقاربين [11].

اما الممارسة العملية في البلدان التي تعتمد النظام الرومانو ـ جرماني، فقد بدأ يظهر فيها إجراء الـ " Discovery " لانه يضمن المساواة بين الخصوم، وتؤدي الى " الكشف المفيد " Divulgation utile للمستندات التي بحوزة الخصم وليست في مصلحته. هذا فضلا عن انها تؤدي الى تسريع الاجراءات من خلال " الكشف " عن مستندات او وثائق مستورة، وهي في الغالب تكون منتجة ومفيدة، فيتم من خلالها حسم بعض النقاط ، ما يؤدي الى توفير كبير في الوقت الذي تستغرقه المحاكمة [12].

---

[11] http: //www. Opsi. Gov.uk/si1998/19983132. Htm.

[11] راجع في كل ذلك:
Une procedure de discovery simplifiée par l'introduction en Angleterre des " civil Procedure Rules" ( SI 1998 / 3132 ) – par Mélanie D'anglejan.

ولا بد من الاشارة في هذا السياق من الافكار ان العولمة لا تقتصر على الناحية الاقتصادية، بل تشمل ايضا الناحية القانونية، من خلال التقارب بين الانظمة، اذ ان التعارض بينها يؤدي الى نتائج رادعة في كل من البلدان التي تعتمد النظام الانكلوسكسوني او النظام الرومانو ـ جرماني. وهذا ما ينعكس ضررا على المتقاضين، اذ ان ما يعتد به في القانون الدولي الخاص هو تنازع مصالح الافراد ذات الطابع الدولي وليس تنازع الانظمة ! فلا يجب ان تكون الابواب مغلقة بين النظامين، بل يجب ان تكون مشرعة على مصراعيها.

## د ـ في انطباق إجراء "Discovery " على المادتين ١٣٩ و١٤٠ من قانون اصول المحاكمات المدنية اللبناني:

تنص المادة ١٣٩ أ.م.م انه*"تجوز اقامة الدليل على الاعمال القانونية وفقا لقانون الدولة الذي يطبق على آثار هذه الاعمال او وفقا لقانون الدولة التي انشئت فيها.*

*يخضع قبول الدليل على الاعمال المادية لقانون القاضي الذي ينظر بالنزاع. تخضع القوة الثبوتية للاسناد لقانون المحل الذي أنشئت فيه " .*

**ان تحليل هذه المادة يحملنا على ابداء ما يلي:**

**ان الاعمال القانونية تخضع لقانون الدولة الذي يطبق على آثار هذه الاعمال او لقانون الدولة التي انشئت فيها.**

في الحالتين اعلاه ان القانون الاميركي هو الواجب التطبيق لان الاعمال القانونية المراد اثباتها قد انشئت في اميركا وهي تخضع تاليا للقانون الاميركي، الذي يحتضن إجراء الـ "Discovery " ، وفي حال اعتبرنا ان آثار هذه الاعمال القانونية حصلت في لبنان، فالقانون اللبناني يعتبر بالنسبة للغير ـ وانتم من فئة الغير كونكم لستم اطرافا في الاعمال القانونية المذكورة ـ ان الاعمال القانونية هي وقائع مادية بالنسبة اليهم، والاعمال المادية يصح اثباتها بمختلف الوسائل، فأين المانع من اثباتها بواسطة إجراء الـ " Discovery " !؟

11

اذن ان المادة ١٣٩ في حالتي تطبيقها، تجيز تطبيق إجراء الـ " Discovery " كوسيلة اثبات.

وتنص المادة ١٤٠ أ.م.م أنه *" تخضع اجراءات الاثبات لقانون القاضي الذي تتم امامه، مع ذلك يعتد باجراءات الاثبات التي تمت في دولة اجنبية اذا كانت مطابقة لاحكام القانون اللبناني، وان كانت مخالفة للقانون الاجنبي. ومن الجائز انابة محكمة اجنبية لاتخاذ اجراءات اثبات يقتضيها نظر الدعوى" .*

اذا حللنا هذه المادة، نخلص الى ما يلي:

اذا اعتبرنا ان اجراءات الاثبات سوف تخضع لقانون القاضي الذي تتم امامه، وان القاضي اللبناني هو المقصود هنا، فان القاضي اللبناني يمكنه ان يقبل بتطبيق إجراء الـ " Discovery " بدون اي اشكال طالما ان القاضي اللبناني غير مختص لتقييم مصدر اثبات المعلومة المعروضة عليه. كما ان اجراءات الاثبات وفقا لإجراء الـ " Discovery " ليس مخالف للنظام العام اللبناني، بل ليس غريب عنه، اذ ان إجراء الـ " Discovery " يشبه الى حد بعيد مؤسسة " مركزية المخاطر" العاملة كجهاز من ضمن اجهزة مصرف لبنان، كما انها ليست بعيدة عن شركات المعلومات التي تزود اللبنانيين بكل المعلومات المطلوبة، اللازمة لرفع اي دعوى ناهيك عن الاجهزة العاملة لدى المصارف اللبنانية المسماة "خدمة المعلومات"   Service de renseignement التي تتبادل المعلومات فما بين المصارف بموضوع العملاء او حتى بموضوع من يرغب في التعامل مع اي مصرف لبناني.

اما موضوع الانابة فليس مطروحا هنا. اذ لا يعقل ان تستنيب محكمة لبنانية محكمة اجنبية لانجاز اجراء لا يدخل اصلا في اختصاص القضاء اللبناني. فليس على القاضي اللبناني ان يجمع معلومات عن المتقاضين بل ان الاثبات من مهمة الخصوم ويقتصر دور القاضي على تلقي هذه المعلومات لاتخاذ اجراءات بالاستناد اليها.

12

ان المادتين ١٣٩ و ١٤٠ أ.م.م. تصبان بإتجاه قبول تطبيق إجراء " Discovery " في لبنان وليس رفضها.

**ولكن،**

لا بد من التوضيح بأن المادتين ١٣٩ و ١٤٠ أ.م.م تتناولان " اجراءات الاثبات"، بينما إجراء الـ" Discovery " ليست بذاتها اجراء من اجراءات الاثبات، بل هي وسيلة لجمع المعلومات، هي بعبارة أخرى مصدر للمعلومات، ولكنها لا تتعارض باي شكل من الاشكال، مع النظام القانوني اللبناني، حيث نجد مثلا ان معرفة اسماء مالكي العقارات يتم وفقا لمعاملة اسمها " معاملة نفي الملكية " اذ يمكن لاي كان ان يتقدم بطلب من "مديرية الشؤون العقارية ـ المركز الآلي" في وزارة المالية بطلب غير مبرر اذ يكفي ان يضع في خانة "الغاية من الطلب": للاستعلام ! فكيف يكون إجراء الـ" Discovery " مخالف للقانون اللبناني ؟!

هذا بالنسبة للملكية العقارية؛ ايضا بالنسبة للسجل التجاري، يمكننا في لبنان الاطلاع على محتويات السجل التجاري كافة من خلال التقدم بطلب غير مبرر للافادة عن قيود ووقوعات اي شركة مسجلة لدى السجل المذكور، حيث يعطى طالب الافادة نشرة تصدر بصورة الكترونية تتضمن كل المعلومات عن الشركة . فكيف يكون إجراء ال" Discovery "  مخالف للقانون اللبناني ؟

**ثالثا: في النتيجة**

ان إجراء الـ Discovery مقبول في النظام القانوني اللبناني للاسباب المبيّنة في متن هذا الرأي. ولا أرى مانعا يحول دون قبول المحكمة الناظرة بالنزاع العالق بينكم وبين بنك عوده ش.م.ل، بها في لبنان.

ان النتيجة التي يرمي اليها إجراء الـ Discovery هي الاطلاع على اصول بنك عوده ش.م.ل في الولايات المتحدة الاميركية و على تحويلاته بالدولار الاميركي الى مصارفها، ستاخذ

13

بها المحاكم اللبنانية حتما، لانه لا علاقة للمحاكم اللبنانية بمصدر المعلومات الذي يحصل عليها المتقاضي ! فما شان المحاكم في لبنان إن تقدم احد المتقاضين بطلب القاء حجز احتياطي على اصول او اموال خصمه ؟ فهل تسأله المحكمة اللبنانية عن مصدر معلوماته بشأن وجود هذه الاموال؟! بالطبع كلا، اذ لا مبرر قانوني او حتى منطقي للرفض.

فأي قانون يمنع المتقاضي من التقصي على اصول او اموال خصمه لممارسته حقوقه المشروعة عليها ؟! واصلا ليس للمحكمة اللبنانية ان تبحث او حتى تسأل عن مصدر هذه المعلومات ! فمن يريد ان يطعن بإجراء الـ Discovery عليه ان يطعن باجراءاته في الخارج حيث حصلت او ستحصل وليس في لبنان، حيث ليس من اختصاص القضاء اللبناني ان يبحث في مصدر معلومات المتقاضين واكتشافه للاصول والاموال التي يمتلكها خصمهم ! فتكون المشكلة المطروحة عن مدى جواز القبول بنتيجة تطبيق إجراء الـ Discovery في لبنان مشكلة " وهمية " Faux problème غير قائمة اصلا ! فمن يريد الطعن بإجراء الـ Discovery عليه ان يطعن فيها حيث تدور اجراءاتها. اما عند اتمام الاجراءات ، والاستحصال على النتيجة، فانه لا يحق للمحاكم اللبنانية ـ باي شكل من الاشكال ـ ان ترفض اتخاذ اي اجراء على اموال او اصول المتقاضي بذريعة ان آلية استحصاله على المعلومات التي مكنته من " اكتشاف " هذه الاموال او الاصول، غير مقبولة في لبنان ! فهذا ـ بدون ادنى شك ـ هرتقة قانونية واجرائية غير مقبولة.

### على ذلــــــك،

نحن البروفسور عبده جميل غصوب موقّع هذا الرأي والمبينة سيرتي الذاتية طيّه مع هذه الاوراق، نصرح ـ تحت طائلة المسؤولية المدنية والجزائية، لا سيما تلك الناشئة عن التصريح الكاذب وفقا لقوانين الولايات المتحدة الاميركية ، ان مضمون هذا الرأي القانوني يعبّر عن قناعاتنا الثابتة في ضوء تفسيرنا الصحيح للقوانين اللبنانية المرعية الاجراء، خصوصا لجهة عدم وجود اي مانع يحول دون قبول " إجراء الـ Discovery " في لبنان من جهة؛ ولعدم اختصاص المحاكم اللبنانية للتحري عن قانونية السبل التي لجأ اليها احد الخصوم في الخارج للاستحصال على

14

معلومات مفيدة في الدعوى، بل يبقى الطعن جائزا امام المرجع الذي قرر السير بآلية Discovery وليس في لبنان.

**البروفسور عبده جميل غصوب**

عبده جميل غصوب
المحامي بالاستئناف
دكتور في الحقوق

15