# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re *Ex Parte* Application of Majed Amir Al-Attabi,

                                     *Petitioner,*

for an Order Pursuant to 28 U.S.C. § 1782 to Take
Discovery for use in Foreign Proceedings Pending
in the Republic of Lebanon.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

:   
:   
:    Case No. 1:21-mc-00207(VSB)
:   
:   
:   
:   

## PETITIONER'S MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION OF BANK AUDI S.A.L.
## TO QUASH SUBPOENAS ISSUED PURSUANT TO 28 U.S.C. § 1782

James P. Bonner
Susan M. Davies
**FLEISCHMAN BONNER & ROCCO LLP**
81 Main Street, Suite 515
White Plains, New York 10601
Telephone:  646-415-1399

*Attorneys for Petitioner Majed Amir Al-Attabi*

**LEBANESE COUNSEL FOR PETITIONER:**

Aref El-Aref
Mohammad Ramadan
El-Aref International Law Office
Lebanon, Beirut, Verdun
Snoubra, Itani Street, Chahine Building
*(Not admitted in New York)*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

ARGUMENT ..................................................................................................................... 1

I.   PETITIONER HAS SATISFIED SECTION 1782's "FOR USE" REQUIREMENT........... 1

A.   Contrary to Bank Audi's *Ipse Dixit* Assertion, the Requested
      Discovery is Relevant to Bank Audi's Defense as Pled in the Lebanese Action .................... 1

B.   Bank Audi Seeks to Transmogrify Section 1782's "For Use" Requirement
      into a Foreign Admissibility Requirement, in Contravention of *Brandi-Dohrn* .................... 7

1.   Bank Audi Mischaracterizes Its Own Expert Witness's
      Opinion in a Futile Attempt to Support its "For Use" Argument ........................................... 9

2.   Dr. Ghanem's Disputed Opinion that the Discovery Will be
      Inadmissible in the Lebanese Action Has no Bearing on the Petition................................... 10

C.   The Petition Was Not a "Disguised Request for Pre-Judgment Discovery"......................... 12

II.   BANK AUDI'S MERITLESS ARGUMENTS DO NOT ALTER THE BALANCE
       OF *INTEL* FACTORS, WHICH CLEARLY WEIGH IN FAVOR OF DISCOVERY ........ 13

A.   Bank Audi Mischaracterizes the Record in Both this Proceeding and the
      Lebanese Action to Support its Baseless Claims that Petitioner Misled this Court ............. 13

B.   Bank Audi Has Failed to Identify any Lebanese "Proof-Gathering
      Restriction" that the Requested Discovery Will Circumvent ................................................. 15

1.   Article 140 is Not a "Foreign Proof-Gathering Restriction" ................................................. 15

2.   Lebanon's Inapplicable Bank Secrecy Law Is Not Being Circumvented............................. 17

C.   Bank Audi Has Failed to Offer the Necessary "Authoritative Proof"
      that the Lebanese Civil Court Will Reject This Court's Assistance...................................... 19

III.   BANK AUDI'S REQUEST TO MODIFY THE SUBPOENAS
        SHOULD BE DENIED ...................................................................................................... 22

CONCLUSION.................................................................................................................... 23

TABLE OF AUTHORITIES

<u>Cases</u>

*Brandi-Dohrn v. IKB Deutsche Industriebank AG,*
   673 F.3d 76 (2d Cir. 2012) ................................................................... passim

*Certain Funds, Accounts And/Or Inv. Vehicles Managed
   By Affiliates of Fortress Inv. Grp. L.L.C. v. KPMG, L.L.P.*
   798 F.3d 113 (2d Cir. 2015) ................................................................. passim

*Euromepa v. R. Esmerian,*
   154 F.3d 24 (2d Cir. 1998) ........................................................................... 8

*Euromepa, S.A. v. R. Esmerian, Inc.,*
   51 F.3d 1095 (2d Cir. 1995) ........................................................ 7, 19, 20, 21

*Fayed v. United States,*
   210 F.3d 421 (4th Cir. 2000) ....................................................................... 6

*In re Accent Delight Int'l Ltd.,*
   869 F.3d 121 (2d Cir. 2017) ............................................................... 7, 8, 12

*In re ALB-GOLD Teigwaren GmbH,*
   2019 WL 4140852 (E.D.N.Y. Aug. 30, 2019) ................................ 1, 17, 21, 22

*In re Application of the Children's Inv. Fund Found. (UK),*
   363 F. Supp. 3d 361 (S.D.N.Y. 2019) .................................................... 1, 13

*In re Arida, LLC,*
   2020 WL 7496355 (S.D.N.Y. Dec. 21, 2020) ............................................ 5

*In re Auto-Guadeloupe Investissement S.A.,*
   2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012) ............................................ 20

*In re CBRE Global Investors NI B.V.,*
   2021 WL 2894721 (S.D.N.Y. July 9, 2021) ................................................ 4

*In re Chevron Corp.,*
   633 F.3d 153 (3d Cir. 2011) ...................................................................... 20

*In re China Petrochemical Dev. Corp.,*
   2018 WL 1320665 (D. Conn. Mar. 14, 2018) ......................................... 4, 6

*In re Christen Sveaas*,
  249 F.R.D. 96 (S.D.N.Y. 2008) ............................................................ 4

*In re Diligence Global Bus. Intelligence S.A.*,
  2021 WL 2156278 (S.D.N.Y. May 27, 2021) ........................................ 6

*In re Esses*,
  101 F.3d 873 (2d Cir. 1996)................................................................. 20

*In re Gorsoan*,
  2014 WL 7232262 (S.D.N.Y. Dec. 10, 2014) ...................................... 20

*In re Imanagement Servs.*,
  2005 WL 1959702 (E.D.N.Y. Aug. 16, 2005)....................................... 21

*In re Iraq Telecom Ltd.*,
  2020 WL 1047036 (S.D.N.Y. Mar. 4, 2020) ........................................ 17

*In re Law Firm of Frank R. Bayger, P.C.*,
  2014 WL 2895433 (Bankr. W.D.N.Y. Jun. 25, 2014) ........................... 9

*In re Lloyds Banking Group PLC*,
  2021 WL 3037388 (S.D.N.Y. Jul. 19 2021) ......................................... 23

*In re Metallgesellschaft,*
  121 F.3d 77 (2d Cir. 1997)........................................................... 17, 20

*In re Pishevar*,
  439 F. Supp. 3d 290 (S.D.N.Y. 2020)..................................................... 1

*In re Polygon Global Partners LLP*,
  2021 WL 2117397 (S.D.N.Y. May 25, 2021) ...................................... 19

*In re Sargeant*,
  278 F. Supp. 3d 814 (S.D.N.Y. 2017)..................................................... 8

*In re Schlich*,
  2017 WL 4155405 (S.D.N.Y. Sept. 18, 2017)............................... 5, 7, 12

*In re Tiberius Grp. AG*,
  2020 WL 1140784 (S.D.N.Y. Mar. 6, 2020) ........................... 4, 16, 17, 21

*In re Vale S.A.*,
  2021 WL 311236 (S.D.N.Y. Jan. 29, 2021) ........................................... 4

*In re Veiga*,
    746 F. Supp. 2d 8 (D.D.C. 2010) ............................................................................ 1, 5

*In re WinNet R CJSC*,
    2017 WL 1373918 (S.D.N.Y. Apr. 13, 2017) ......................................................... 5, 6

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ................................................................................................ passim

*Malibu Media, LLC v. Doe*,
    2016 WL 5478433 (S.D.N.Y. Sept. 29, 2016) ......................................................... 23

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015) ........................................................................... 12, 15, 16

*SIMO Holdings Inc. v. H.K. uCloudlink Network Tech. Ltd.*,
    2020 WL 2133173 (S.D.N.Y. May 5, 2020) ............................................................. 8

Statutes

28 U.S.C. § 1782 ................................................................................................................ passim

Other Authorities

ABA Formal Op. 95-391 (1995) ...................................................................................... 9

Brian Eric Bomstein & Julie M. Levitt, Comment, "Much Ado About 1782,"
    20 *U. Miami Inter-Am. L. Rev.* 429 (1989) ............................................................. 11

U.S. Judicial Conference Committee on Codes of Conduct,
    Advisory Opinion No. 72 (June 2009) ...................................................................... 9

Petitioner Majed Amir Al-Attabi, by his undersigned counsel, respectfully submits this memorandum in opposition to the motion by Bank Audi S.A.L. ("Bank Audi") to quash Subpoenas issued pursuant to this Court's September 3, 2021 Opinion and Order (ECF 10 and 2021 WL 4027021) (the "Order").

## ARGUMENT

## I.   PETITIONER HAS SATISFIED SECTION 1782's "FOR USE" REQUIREMENT

As this Court has recognized previously, Section 1782's "for use" requirement is not an exacting one.  *See In re Application of the Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d 361, 371 (S.D.N.Y. 2019) (Broderick, J.) ("*Children's IFF*") ("Applicants need only make a de minimis showing that the requested discovery is 'for use' in the proceeding, so long as the proceeding falls within the scope of § 1782.") (citing *In re Veiga*, 746 F. Supp. 2d 8, 18 (D.D.C. 2010)).  *Accord, e.g., In re Pishevar*, 439 F. Supp. 3d 290, 303 (S.D.N.Y. 2020) ("Petitioner has made the required *de minimis* showing that the information sought is 'for use' in the reasonably contemplated civil and criminal foreign proceedings.") and *In re ALB-GOLD Teigwaren GmbH*, 2019 WL 4140852, at *9 (E.D.N.Y. Aug. 30, 2019) ("[L]ower courts have described the applicant's burden with regard to the 'for use' prong as *de minimis*.") (both citing *Children's IFF*, 363 F. Supp. 3d at 371).  This Court correctly determined that the requested discovery was "for use in a proceeding in a foreign . . . tribunal" because "Petitioner is a party in a pending foreign proceeding against Bank Audi and seeks to introduce evidence showing that Bank Audi has sufficient liquidity to pay Petitioner's claims against it."  Order at 4.

## A.   Contrary to Bank Audi's *Ipse Dixit* Assertion, the Requested Discovery is Relevant to Bank Audi's Defense as Pled in the Lebanese Action

Bank Audi falsely claims that the requested discovery lacks relevance to its *force majeure* defense in the Lebanese Action, purportedly because that defense is materially

different—in some unspecified way—from the defense Petitioner had anticipated.  *See* Bank Audi Mem. (ECF 19) at 1-2, 3-4, 13-15 (Point I.B); Cortbaoui Decl. (ECF 21) at ¶¶ 4-5. Contrary to that *ipse dixit* assertion, the discovery is highly relevant because Bank Audi's purported *force majeure* defense hinges on the factual allegation that Bank Audi lacks access to sufficient U.S. dollar currency to honor Petitioner's transfer instructions, which is precisely the defense Petitioner had anticipated.  *See* Declaration of Aref El-Aref in Opposition to Bank Audi's Motion to Quash, executed on November 15, 2021 ("Opp. Decl.") at ¶ 16.

Specifically, the Petition described Bank Audi's anticipated defense in the following terms:

> Petitioner anticipates that, based on its prior statements, Bank Audi will defend itself in the Lebanese Action by claiming that the current financial crisis [that began in Lebanon towards the end of 2019] excuses it from complying with Petitioner's lawful instruction to transfer the Unpaid Balance to the UAE. Specifically, ***Bank Audi will claim that it does not have access to sufficient freely convertible and transferable USD liquidity ("USD Liquidity") to transfer Petitioner's $4.3 million out of Lebanon***.

Petitioner's Memorandum of Law in Support of Application Pursuant to 28 U.S.C. § 1782 (ECF 3) ("Pet. Mem.") at 2, 3 (citing accompanying February 26, 2021 El-Aref Decl. (ECF 5) at ¶¶ 16, 18, 20, 26) (emphasis added).  The responsive pleading Bank Audi filed in the Lebanese Action two months later confirmed that lack of U.S. dollar liquidity was one of Bank Audi's defenses. Indeed, in its "*First Response*," Bank Audi alleged:

> In the further alternative, it remains that what has been happening in Lebanon since the 17th of October 2019 until now, as a result of the unprecedented economic collapse as well as a result of the Corona pandemic, constitutes force majeure in the very sense of the word . . . .  Subsequently, ***The Defendant Bank is not obligated to carry out the external transfer service [i.e., transfer of Petitioner's $4.3 million out of Lebanon] in light of the force majeure that led to the non-availability of banknotes in US dollars***.

2

Cortbaoui Ex. 2 (ECF 21-2) at 12, 13 (emphasis added).[1]

As this comparison demonstrates, Bank Audi's pleading merely adds a legal theory—
"*force majeure*"—to the same facts Petitioner described to this Court.  In both parties'
descriptions, the crux of the purported defense is Bank Audi's asserted, but unproven, claim that
it cannot transfer Petitioner's $4.3 million to the UAE because it lacks adequate U.S. dollar
currency.  The requested discovery is narrowly-tailored to test that factual assertion.  *See* Bonner
Ex. 1 (ECF 4-1) at pp. 4-5 ¶¶ 1-3; Order at 6 ("Petitioner's Proposed Subpoena is narrowly
tailored to provide the Petitioner with information to support his argument in the foreign
litigation that Bank Audi possesses liquidity to pay his claims.").

Significantly, Bank Audi's *First Response* does not allege that the *force majeure* arises
from any capital control measures being pursued by the Central Bank of Lebanon or the
Association of Banks in Lebanon (the "ABL"), or from any legislation passed by the Lebanese
Parliament.  *See* Cortbaoui Ex. 2.  Nevertheless, Bank Audi's moving papers misleadingly attach
and discuss various exhibits that reference these measures.  *See* Bank Audi Mem. at 5, 17-18
(citing Goldstein Exs. H-L (ECF 20-8 to 20-12)).

Those materials have no relevance to Bank Audi's *force majeure*/illiquidity defense
because **none of these measures prevents Bank Audi from transferring Petitioner's $4.3
million to the UAE**.  *See* El-Aref Decl. at ¶ 19 (discussing ABL directives); Opp. Decl. at ¶¶ 20-
21.  Indeed, Bank Audi's motion papers do not contend otherwise.  In fact, the record is devoid
of any evidence that Bank Audi is even following the ABL trade association's non-binding
directive against transferring U.S. dollars outside of Lebanon.[2]  But even if Bank Audi had

---

[1] *Accord* Cortbaoui Ex. 2 at 13 ("Defendant is not liable **for the lack of foreign currency**
pursuant to the contract signed between the Plaintiff and the Defendant.") (emphasis added).

[2] Tellingly, Bank Audi itself has provided no testimony in support of its motion to quash, and its

chosen to follow the ABL's directive, that voluntary conduct would not qualify as a *force majeure* under Lebanese law, which recognizes only events that are beyond the control of the obligor.  *See* Opp. Decl. at ¶¶ 17-19.  This further confirms that, while Bank Audi's *First Response* characterizes the entire Lebanese financial crisis as a *force majeure*, it actually relies upon the supposed "non-availability of banknotes in US dollars"—*i.e.*, its own illiquidity in U.S. dollars—to excuse its contractual performance.

Quite apart from its lack of merit, Bank Audi's challenge to the relevance of the requested discovery ignores the extremely **permissive** standard by which courts evaluate relevance in the context of a Section 1782 application.  Indeed, "courts have described the 'for use' element [of Section 1782] as requiring only a '*de minimis*' showing that the information sought would be relevant to the foreign proceeding."  *In re CBRE Global Investors NI B.V.*, 2021 WL 2894721, at *7 (S.D.N.Y. July 9, 2021).  As this Court has recognized previously, "because the substantive issues presented in the foreign litigation are to be decided by a foreign court applying unfamiliar foreign law, the district court should 'be permissive' when assessing relevance" for purposes of Section 1782.  *In re Tiberius Grp. AG*, 2020 WL 1140784, at *7 (S.D.N.Y. Mar. 6, 2020) (Broderick, J.) (quoting *In re Christen Sveaas*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008) and *quoted in In re Vale S.A.*, 2021 WL 311236, at *3 (S.D.N.Y. Jan. 29, 2021)).  *See also In re China Petrochemical Dev. Corp.*, 2018 WL 1320665, at *4 (D. Conn. Mar. 14, 2018) (*cited in* Bank Audi Mem. at 14) ("Even where 'relevance is in doubt' in a Section 1782 case, 'the district court should be permissive.'") (quoting *Sveaas*, 249 F.R.D. at

---

Lebanese counsel states only that:  "As a result of this [financial and economic] crisis, all banks in Lebanon (including Bank Audi) are **not to our knowledge** making overseas transfers of U.S. dollars, except for certain purposes of national importance, such as the import of feed, fuel, or medical supplies, or to pay urgent personal expenses on an exceptional basis."  Cortbaoui Decl. at ¶ 5 (emphasis added).

107); *Veiga*, 746 F. Supp. 2d at 18 ("[W]here conflicting statements result in a factual dispute regarding the relevance of the discovery sought, it is inappropriate to deny Section 1782 discovery.") (internal quotation omitted); *In re WinNet R CJSC*, 2017 WL 1373918, at *8 (S.D.N.Y. Apr. 13, 2017) (*cited in* Bank Audi Mem. at 14, 19, 20) ("[a]ssuming" that the "for use" requirement had been met despite the fact that the petitioner "ha[d] made no persuasive showing of the utility of [the] discovery" to any issues in the pending Russian actions).

In *Certain Funds, Accounts And/Or Inv. Vehicles Managed By Affiliates of Fortress Inv. Grp. L.L.C. v. KPMG, L.L.P.* (*cited in* Bank Audi Mem. at 8, 9, 14, 15), the Second Circuit observed that any information that is not "***plainly irrelevant*** to the foreign proceeding could be said to be 'for use' in that proceeding." 798 F.3d 113, 120 n.7 (2d Cir. 2015) (emphasis added) (*quoted in In re Arida, LLC*, 2020 WL 7496355, at *6 (S.D.N.Y. Dec. 21, 2020) ("[I]t 'may be necessary' for courts to weigh relevance as part of the 'for use' analysis if the information sought is 'plainly irrelevant' to the foreign proceeding.")).

This Court explicitly applied the *Certain Funds*' "plainly irrelevant" standard to deny a Section 1782 petition in *In re Schlich*, 2017 WL 4155405 (S.D.N.Y. Sept. 18, 2017) (Broderick, J.) (*cited in* Bank Audi Mem. at 13). There, the only issue before the foreign tribunal—the European Patent Office ("EOP")—was whether the priority of certain challenged biotechnology patents should be determined under United States or European law. *See id.* at *3, 3 n.8, 6. The requested discovery related to whether some of the applications for the challenged patents had identified the correct inventors—an issue that the EOP had preliminarily determined it was "'clearly not competent'" to assess. *Id.* at *6-7. This Court concluded that the requested discovery was "plainly irrelevant" to the choice-of-law issue, noting that the petitioner had "provide[d] no explanation for why the merits of the inventorship study would be relevant to the

5

EPO's choice-of-law determination." *Id*. at 6, 7 (citing *Certain Funds*, 798 F.3d at 120 n.7).

In the only other case Bank Audi cites in which a district court found that the "for use" element was not met on relevance grounds, the sought-after discovery also met the "plainly irrelevant" standard. In *China Petrochemical*, the only issue in the Taiwanese proceeding was whether correct procedures had been followed in convening a special meeting of shareholders. *See* 2018 WL 1320665, at *4. The district court concluded that the sought-after discovery into the Vice-Chairman's role in nominating or appointing corporate officers, directors or supervisors, which reached back five years before the date of the special meeting, "will not shed light on the *legality* of the procedure to call [the corporation's] February 21, 2017 shareholders' meeting." *Id*. at *5 (emphasis in original).

In all of the other cases cited in Point I.B of Bank Audi's memorandum of law, district courts rejected or quashed Section 1782 discovery *on grounds other than irrelevance*—grounds that also have no application here. *See In re Diligence Global Bus. Intelligence S.A.*, 2021 WL 2156278, at *5-7 (S.D.N.Y. May 27, 2021) (the district court found that the petitioner's unsubstantiated description of U.K. data protection and privacy law "stretche[d] credulity" and concluded that the petitioner, which was a private investigation company, was using the petition to further an investigation and not "for use" in the foreign proceeding); *WinNet*, 2017 WL 1373918, at *8-9 (discovery denied under the third *Intel* factor because petitioner sought it in "an attempt to circumvent the decisions already issued by the Russian courts" in proceedings that had terminated before the Section 1782 application was made, "and/or to harass" the discovery targets in New York); *Fayed v. United States*, 210 F.3d 421, 422, 424 (4th Cir. 2000) (affirming district court's discretionary denial of application seeking discovery of "highly classified government documents … identified by [the respondent U.S. National Security Agency] as

potentially causing 'exceptionally grave damage to the national security'").

To paraphrase in *In re Schlich*, it is not necessary for this Court to make "'a speculative foray[] into legal territories unfamiliar to federal judges'" in order to determine that the discovery at issue here is anything but "plainly irrelevant to" Bank Audi's *force majeure*/illiquidity defense. 2017 WL 4155405, at *7 (quoting *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir. 1995) ("*Euromepa I*")) and *6 (citing *Certain Funds*, 798 F.3d at 120 n.7).

## B. Bank Audi Seeks to Transmogrify Section 1782's "For Use" Requirement into a Foreign Admissibility Requirement, in Contravention of *Brandi-Dohrn*

The "for use" requirement is "focused . . . on the practical ability of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017). Hence, in the "for use" cases that Bank Audi cites in Point I.A of its memorandum of law, district courts only found that Section 1782's "for use" requirement had not been satisfied where ***the petitioners were not themselves parties to the foreign proceeding*** or, in one instance, ***the foreign proceeding had already terminated***. Those cases—and Bank Audi's entire "for use" argument—have no application to the discovery at issue here because Petitioner is the plaintiff in the currently pending Lebanese Action. *See* El-Aref Decl. at ¶¶ 24-26, 37-39; Cortbaoui Decl. ¶¶ 3-6; Order at 4.

In *Certain Funds* (*cited in* Bank Audi Mem at 9) the petitioners sought discovery with the intention of "furnish[ing] information [to a party to the foreign suit] ***in the hope*** that it might be used." 798 F.3d at 121 (emphasis in original). It was in that entirely inapposite context that the Second Circuit observed that a petitioner must have "some means of injecting the evidence into the [foreign] proceeding." *Id*. at 120. The Second Circuit then went on to hold that "[t]he ability to submit information to [a party to a foreign proceeding], who can then decide whether or not to

use that information, does not establish that the information is 'for use' in a foreign proceeding . . . ." *Id.* at 121.  Similarly, in *SIMO Holdings Inc. v. H.K. uCloudlink Network Tech. Ltd.*, 2020 WL 2133173, at *3-4 (S.D.N.Y. May 5, 2020) (*cited in* Bank Audi Mem. at 12) the petitioner was not a party to the Chinese lawsuit and, in two separate declarations by its Chinese law expert, failed to identify any means by which it could submit evidence to the Chinese court.  And in *In re Sargeant*, 278 F. Supp. 3d 814, 822 (S.D.N.Y. 2017) (*cited in* Bank Audi Mem. at 9), the petitioner "fail[ed] to show that he ha[d] any procedural right or mechanism to inject the requested evidence into the London proceeding, given that he [wa]s not a party to that proceeding."  278 F. Supp. 3d at 822.  Here, by contrast, Petitioner is a party to the foreign proceeding.

In *Euromepa v. R. Esmerian,* 154 F.3d 24 (2d Cir. 1998) (*cited in* Bank Audi Mem. at 8, 9), the petitioners failed to satisfy the "for use" requirement because, by the time the district court ruled on the Section 1782 petition, there was no pending or imminent foreign proceeding in which the discovery could be submitted.  *See id.* at 28-29.  While the Section 1782 petition had been pending, the Cour de Cassation—the highest court of criminal and civil appeal in France—had rendered a "final judgment [that] eliminated all pending proceedings in which Petitioners sought to use the discovery." *Id.* at 26.  The possibility that the petitioners could move to reopen the Cour de Cassation proceeding, based on newly discovered evidence, could not "serve as a predicate foreign proceeding for the Petition" because it was "neither very likely to occur nor very soon to occur." *Id.* at 29.

By contrast, in *Accent Delight* (*cited in* Bank Audi Mem. at 9), the petitioners ***successfully obtained § 1782 discovery*** "for use" in a criminal proceeding in Monaco to which they were "civil parties" because—like the Petitioner here—they had "the procedural right to

submit the requested documents to the [foreign tribunal]."  869 F.3d at 132 (distinguishing

*Certain Funds*, 798 F.3d at 120-21).

1. Bank Audi Mischaracterizes Its Own Expert Witness's
   Opinion in a Futile Attempt to Support its "For Use" Argument

Undaunted by the total disconnect between the "for use" case law cited in its

memorandum of law and Petitioner's undisputed status as a party to a currently pending foreign

proceeding, Bank Audi purports to rely upon the declaration of its expert witness, Dr. Ghanem,

to advance the baseless argument that "Petitioner has no procedural mechanism to insert the

requested discovery into the Lebanese Action."  Bank Audi Mem. at 9.[3]  This assertion is not

correct.  *See* El-Aref Decl. at ¶¶ 25, 27, 41; Opp. Decl. at ¶¶ 9, 13-15; Opp. Decl. Ex. 1 (Legal

Opinion of Dr. Abdo Jamil Ghossoub ("Ghossoub Op.")) at 8, 11.

Furthermore, while the certified English translation of his declaration is far from a model

of clarity, Dr. Ghanem does not support this inaccurate assertion.  In a nutshell, it is Dr.

Ghanem's opinion that the Lebanese Civil Court will refuse to admit the requested discovery into

evidence because U.S.-style discovery is "incompatible" with the Lebanese legal system, in

which U.S.-style discovery is not available to litigants.  *See, e.g.*, Ghanem Decl. at 6 (¶ 3), 10

---

[3] Bank Audi improperly refers to its expert witness by the title "Judge."  *See* Bank Audi Mem. at
1, 11, 12, 16.  Dr. Ghanem retired from the judiciary more than ten years ago, and his role in this
litigation is that of a private attorney representing a paying client.  *See* Ghanem Decl. at 19; Opp.
Decl. at ¶ 5.  "In federal court no former judge is ever to be referred to as 'judge' in any litigation
or documents except appearances for ceremonial purposes."  *In re Law Firm of Frank R. Bayger,
P.C.*, 2014 WL 2895433, at \*3 n.4 (Bankr. W.D.N.Y. Jun. 25, 2014).  *See also* U.S. Judicial
Conference Committee on Codes of Conduct, Advisory Opinion No. 72 at 107 (June 2009)
("Judges should insure that the title 'judge' is not used in the courtroom or in papers involved in
litigation before them to designate a former judge, unless the designation is necessary to
accurately describe a person's status at a time pertinent to the lawsuit.");  ABA Formal Op. 95-
391 (1995) ("[T]he title 'Judge' should not be used at all in the courtroom, or otherwise in
connection with legal proceedings, to refer to a former judge who is appearing on behalf of a
client or as an expert witness.").

(¶ 11), 12 (¶ 15), 13 (¶ 17), 15-16.  The fact that Dr. Ghanem opines that the Lebanese Civil

Court will "refuse to admit" the evidence Petitioner seeks to discover demonstrates that—

**contrary to Bank Audi's assertion**—even Dr. Ghanem recognizes that a procedural mechanism

does exist for placing the discovery before the Lebanese Civil Court so that it can make such a

determination.  *Accord* El-Aref Decl. at ¶¶ 25, 27, 41; Opp. Decl. at ¶¶ 9, 13-15; Ghossoub Op.

at 8, 11.

    2.   Dr. Ghanem's Disputed Opinion that the Discovery Will be
        <u>Inadmissible in the Lebanese Action Has no Bearing on the Petition</u>

       Petitioner disputes Dr. Ghanem's opinion that the discovery will not be admitted in the

Lebanese Action.  *See, e.g.,* Ghossoub Op. at 11 (opining that the Lebanese Civil Court "has no

reason to reject [the] Discovery"); El-Aref Decl. at ¶ 41; Opp. Decl. at ¶¶ 10-12.  Dr. Ghanem is

expressing his personal own opinion, without citing legal support for his prediction.  *See* Opp.

Decl. at ¶ 10.  He fails to acknowledge the wide discretion afforded Lebanese judges in

determining what evidence to accept and rely upon.  *See id.*; Ghossoub Op. at 3-4, 9-10.  That

discretion is particularly broad where, as here, the evidence relates to a "material act" (*see*

Ghanem Decl. at 11 (¶ 14)) and is offered against a party, like Bank Audi, that qualifies as a

"merchant."  *See* Ghossoub Op. at 3, 4, 9; Opp. Decl. at ¶¶ 14-15.  In such cases, Lebanese law

does not prescribe the methods or standards of proof, and the courts do not inquire into the

sources of the evidence.  *See* Ghossoub Op. at 3-4, 11; Opp. Decl. at ¶¶ 14-15.  Rather, the

presiding judge has "the freedom to assess the evidence presented to him and to form his

conviction accordingly."  Ghossoub Op. at 3.

       In any event, Dr. Ghanem's disputed opinion that the requested discovery will be

**inadmissible** in Lebanon has no bearing whatsoever on the Petition because of the unequivocal

rule that "a district court . . . should not consider the ***admissibility*** of evidence in the foreign

proceeding in ruling on a section 1782 application." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) (emphasis in original). In *Brandi-Dohrn*, the Second Circuit reasoned that Section 1782's text provides no support for a "foreign admissibility" requirement, which would "serve 'only to thwart § 1782(a)'s objective to assist foreign tribunals in obtaining relevant information that the tribunals may find useful . . . .'" 673 F.3d at 82 (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 262 (2004)).

*Brandi-Dohrn* rejected an admissibility requirement, in part, because "requiring a district court to apply the admissibility laws of the foreign jurisdiction would require interpretation and analysis of foreign laws and such '[c]omparisons of that order can be fraught with danger.'" *Id.* (quoting *Intel*, 542 U.S. at 263). Specifically, "'attempts by U.S. courts to construe foreign evidentiary codes and rules result[] in a gross waste of judicial resources, particularly where even experts on the foreign law in question often disagree on the potential admissibility of the evidence sought.'" *Id.* at 82 n.1 (quoting Brian Eric Bomstein & Julie M. Levitt, Comment, "Much Ado About 1782," 20 *U. Miami Inter-Am. L. Rev.* 429, 457 (1989)). The dueling opinions of Drs. Ghalem and Ghossoub perfectly illustrate why district courts must avoid inquiry into the admissibility of discovery before foreign tribunals.

Bank Audi's failure to distinguish between Section 1782's "for use" requirement and the irrelevant issue of foreign admissibility is puzzling given that its memorandum of law cites *Certain Funds* no fewer than four times. *See* Bank Audi Mem. at 8, 9, 14, 15. In that case, the Second Circuit made abundantly clear that "[w]hether an applicant [under Section 1782] will be able to furnish the material sought to the foreign tribunal, so that the material may be 'employed with some advantage or serve some use in the proceeding,' is a separate question from whether the discovered material will be ***admissible*** in the foreign proceeding." *Certain Funds*, 793 F.3d

at 122 n.11 (quoting *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015)) (emphasis in original).

*Accord Schlich*, 2017 WL 4155405, at *6 ("'[T]he burden on a § 1782 applicant to establish that

it will have some means of actually using the evidence in the foreign proceeding' . . . 'is a

separate question from whether the discovered material will be admissible in the foreign

proceeding.'") (*cited in* Bank Audi Mem. at 13) (quoting *Certain Funds*, 798 F.3 at 122 n.11).  It

is difficult to escape the conclusion that Bank Audi has mischaracterized its own expert's

opinion concerning the supposed inadmissibility of the discovery in an effort to circumvent

*Brandi-Dohrn*.

## C.  The Petition Was Not a "Disguised Request for Pre-Judgment Discovery"

The fourth prong of Bank Audi's "for use" challenge scarcely warrants a response.  Bank

Audi ignores the record in this proceeding, as well as binding Second Circuit precedent, when it

mischaracterizes the Petition as a "disguised request for pre-judgment discovery of Bank Audi's

assets, which is plainly beyond the scope of § 1782."  Bank Audi Mem. at 14.  The Petition fully

disclosed the existence of the Lebanese Attachment Proceeding and Petitioner's intention to use

the discovery in that proceeding.  *See* Pet. Mem. at 2-3, 11; El-Aref Decl. at ¶¶ 29-36.  In

authorizing Petitioner's use of the discovery in the Attachment Proceeding, this Court quoted

*Accent Delight*, 869 F.3d at 135, for the well-established proposition that "'Section 1782 does

not prevent an applicant who lawfully has obtained discovery under the statute with respect to

one foreign proceeding from using the discovery elsewhere . . . .'"  Order at 5.  Hence,

Petitioner's intention to use the discovery in the Attachment Proceeding was never "disguised"

and is clearly not "beyond the scope of § 1782."

## II.  BANK AUDI'S MERITLESS ARGUMENTS DO NOT ALTER THE BALANCE OF *INTEL* FACTORS, WHICH CLEARLY WEIGH IN FAVOR OF DISCOVERY

Bank Audi asks this Court to deny the discovery under the second and third *Intel* factors, and because Petitioner supposedly misled this Court.  *See* Bank Audi Mem. at 16-20 (Point II).[4] As explained below, Bank Audi's meritless arguments mischaracterize the record and ignore binding Second Circuit precedent.

### A.  Bank Audi Mischaracterizes the Record in Both this Proceeding and the Lebanese Action to Support its Baseless Claims that Petitioner Misled this Court

For the reasons explained at Point I.A above, this Court must reject Bank Audi's accusation that Petitioner had a duty to inform this Court that Bank Audi asserted a *force majeure* defense **based on lack of U.S. dollar liquidity** two months after the Petition was filed. Bank Audi fails to articulate why its *force majeure* defense in the Lebanese Action is supposedly "***not*** an 'illiquidity' defense" (Bank Audi Mem. at 2 (emphasis in original)).  The supposed difference Bank Audi imagines between its defense as anticipated and as ultimately pled is, at most, merely a matter of nomenclature.  The requested discovery is indisputably relevant to Bank Audi's allegation that it lacks the U.S. dollar currency to transfer Petitioner's funds to the UAE. *See* Cortbaoui Ex. 2 at 13 (alleging "non-availability of banknotes in US dollars" and "lack of foreign currency").  Accordingly, the actual text of Bank Audi's *First Response* in the Lebanese Action provides no basis for this Court to abandon its initial conclusion that the requested discovery is not "plainly irrelevant to the foreign proceeding."  *Certain Funds*, 798 F.3d at 120 n.7.

---

[4]  Bank Audi's memorandum of law does not address, and therefore concedes, that the first and fourth *Intel* factors weigh in favor of granting the discovery.  *See Children's IFF*, 363 F. Supp. 3d at 373.

In order to manufacture a second supposedly sanctionable "omission" from the Petition, Bank Audi once again mischaracterizes its own expert witness's opinion. Bank Audi asserts that Petitioner "improperly misled the Court" by citing to Article 140 of the Lebanon Civil Procedures Code "without informing the Court that Article 140 contemplates admission of [evidence obtained in a foreign jurisdiction] only when obtained pursuant to a mandate from a Lebanese judge." Bank Audi Mem. at 18 (citing Ghanem Decl. at pp. 5, 10, 13, 14). This is not a correct interpretation of Article 140 (*see* Opp. Decl. at ¶ 8; Ghossoub Op. at pp. 9-10), and nowhere in his opinion does Dr. Ghanem state that Article 140 precludes the admission of evidence obtained from a foreign country without the mandate of a Lebanese judge.[5] *Accord* Ghossoub Op. at 10; Opp. Decl. at ¶¶ 8, 13.

More importantly, under *Brandi-Dohrn*, whatever Article 140 states about the admissibility of evidence obtained in a foreign jurisdiction ***has no bearing on Petitioner's entitlement to Section 1782 discovery*** and, therefore, there was no reason for the Petitioner to bring it to this Court's attention. *See* Point I.B.2 above; Order at 4 ("Section 1782(a) contains no requirement that particular evidence be admissible in a foreign proceeding to be considered for use in a proceeding in a foreign or international tribunal.") (internal quotations omitted). The Petition referenced Article 140 simply to demonstrate that Lebanese courts are open to considering evidence obtained in foreign jurisdictions, not to advance an irrelevant argument

---

[5] In fact, Dr. Ghanem identifies ***two circumstances*** in which foreign evidence will be admissible under Article 140: (1) when it has been obtained pursuant to a mandate issued by a Lebanese court; or (2) when the evidentiary procedures in the foreign country are in compliance with Lebanese law. *See* Ghanem Decl. at 10 (¶ 10). Dr. Ghanem cites no legal authority that supports his opinion that Section 1782's procedures are not in compliance with Lebanese law. *See id.* at 5 (¶ 2), 6 (¶ 3), 10 (¶ 11), 12 (¶15), 13 (¶ 17), 15-16, 17. In Dr. Ghossoub's view, they are. *See* Ghossoub Op. at 5-6, 7, 10, 11.

about the admissibility of the requested discovery in the Lebanese Civil Court.  *See* El-Aref
Decl. at ¶ 41; Opp. Decl. at ¶¶ 6-7; Pet. Mem. at 11 (citing *Brandi-Dohrn*, 673 F.3d at 82).  As
explained in the next section, there is nothing about Article 140 that could have led this Court to
deny the Petition.

**B.  Bank Audi Has Failed to Identify any Lebanese "Proof-Gathering
Restriction" that the Requested Discovery Will Circumvent**

Under the third *Intel* factor, "a district court could consider whether the § 1782(a) request
conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a
foreign country or the United States."  *Intel*, 542 U.S. at 265.  According to Bank Audi, the
Petition supposedly concealed attempts to circumvent two alleged proof-gathering restrictions:
(1) Article 140, which Bank Audi mischaracterizes as only allowing *judges* to obtain evidence
from overseas; and (2) Lebanon's Bank Secrecy Law.  *See* Bank Audi Mem. at 1, 6, 10-13, 16-
17.

1.  Article 140 is Not a "Foreign Proof-Gathering Restriction"

As the Second Circuit made clear in *Mees* (*cited in* Bank Audi Mem. at 8, 13, 16, 20),
only foreign laws that ***affirmatively prohibit the gathering or use of information*** qualify as
"foreign proof-gathering restrictions" that implicate the third *Intel* factor.  793 F.3d at 303 n.20.
"'Proof-gathering restrictions' are best understood as rules akin to privileges that ***prohibit*** the
acquisition or use of certain materials, rather than as rules that ***fail to facilitate*** investigation of
claims by empowering parties to require their adversarial and non-party witnesses to provide
information."  *Id.*  (emphases in original).  In other words, the fact "[t]hat a country does not
enable broad discovery within a litigation does not mean that it has a policy that restricts parties
from obtaining evidence through other lawful means."  *Id*.  Hence, as this Court has noted, the

15

third *Intel* factor is implicated "[o]nly where the materials being sought are privileged or otherwise prohibited from being discovered or used." *Tiberius Grp.*, 2020 WL 1140784, at *4.

Article 140 is a rule that deals with the admissibility of evidence, not proof gathering. *See* Ghanem Decl. at 7 (¶ 5), 8 (¶ 7), 11-12 (¶¶ 14-15); Ghossoub Op. at 10. It includes the following provision (as translated by Dr. Ghanem): "It is permissible [for a Lebanese court] to mandate a foreign court to carry out the evidentiary procedures needed to rule on the case." Ghanem Decl. at 8 (¶ 6). As explained in Point II.A above, contrary to Bank Audi's assertion, Article 140 does not preclude the admission of evidence obtained from a foreign country without the mandate of a Lebanese judge. *See* Ghanem Decl. at 10 (¶ 10); Ghossoub Op. at 9-10, 11; Opp. Decl. at ¶ 8. Rather, it is a classic example of a foreign "rule[] that ***fail[s] to facilitate*** investigation of claims" by the litigants themselves. *Mees*, 793 F.3d at 303 n.20. As such, Article 140 does not constitute a "proof-gathering restriction" that implicates the third *Intel* factor. Nor is there any other provision of Lebanese law that affirmatively prohibits resort to Section 1782. *See* Opp. Decl. at ¶¶ 8, 13.

It should be noted that Dr. Ghanem's disputed opinion that the Lebanese Civil Court will not admit the discovery into evidence is primarily based on the fact that U.S.-style discovery is not available to litigants in Lebanon. *See* Ghanem Decl. at 2 (¶ 1(1)), 6 (¶ 3), 10 (¶ 11), 13 (¶ 17), 15-17. It is for this reason that Dr. Ghanem considers that discovery is not in compliance

with Lebanese law. *Id.* at 6 (¶ 3), 10 (¶ 11), 15-17.[6]  Irrespective of Dr. Ghanem's views, however, Second Circuit precedent makes clear "[t]he fact that discovery may be unavailable through an application to the foreign tribunal does not mean that a § 1782 application is a circumvention of the tribunal's proof-gathering restrictions." *ALB-GOLD Teigwaren*, 2019 WL 4140852, at *11.  *See also, e.g., In re Metallgesellschaft*, 121 F.3d 77, 79-80 (2d Cir. 1997) (district court abused its discretion by denying Section 1782 discovery on the ground that equivalent discovery was unavailable in the German court); *Tiberius Grp.*, 2020 WL 1140784, at *4 ("District courts assessing a § 1782(a) application may not . . . deny the application 'solely because such discovery is unavailable in the foreign court.'") (quoting *Metallgesellschaft*, 121 F.3d at 79).  As the Second Circuit has noted, "[i]f district courts were free to refuse discovery based upon its unavailability in a foreign court . . . § 1782 would be irrelevant to much international litigation, frustrating its underlying purposes. *Metallgesellschaft*, 121 F.3d at 80.

2.  Lebanon's Inapplicable Bank Secrecy Law Is Not Being Circumvented

In a previous matter, this Court held that a Section 1782 Petition did not seek to circumvent Lebanon's Bank Secrecy Law because that law "applies only to banks established in Lebanon and banks that are Lebanese branches of foreign banks." *In re Iraq Telecom Ltd.*, 2020 WL 1047036, at *2 (S.D.N.Y. Mar. 4, 2020) (*cited in* Order at 5-6).  Bank Audi concedes that

---

[6] Petitioner takes issue with Dr. Ghanem's assertions that only evidence that has been obtained by a Lebanese judge is admissible in Lebanese proceedings, and only Lebanese judges have the power to compel the production of evidence from third parties.  *See* Ghanem Decl. at 5 (¶ 1). Under Lebanese civil procedure, the litigants are primarily responsible for bringing forth the evidence to sustain their factual allegations.  *See* Opp. Decl. at ¶ 9; Ghossoub Op. at 3, 8, 9, 10. Contrary to Dr. Ghanem's assertion, the Lebanon Code of Civil Procedures empowers litigants to compel their adversaries and third parties to produce specific documents without a court order. *See* Opp. Decl. at ¶ 13; Ghossoub Op. at 5.  In addition, Lebanese litigants can request and obtain evidence for use in litigation from a variety of other sources without court assistance.  *See* Ghossoub Op. at 6, 8.

Lebanon's Bank Secrecy Law does not apply to the Respondent U.S. banks located in New York.  *See* Bank Audi Mem. at 17.  It does not apply here for the additional reason that it only protects Lebanese banks' customers' information, not information concerning the banks' own accounts.  *See* Bank Audi Mem. at 17 ("Lebanon's Bank Secrecy Law prohibits disclosure by Lebanese banks of information pertaining to their customers."); El-Aref Decl. at ¶ 43; Opp. Decl. at ¶¶ 22-23 and Opp. Ex. 2 at Article 2.  Here, the Petitioner only seeks information about ***Bank Audi's own correspondent and depositary accounts***, and has explicitly instructed the Respondents not to disclose any information that could identify the person initiating or receiving a U.S. dollar transfer, or any Bank Audi customer.  Bonner Ex. 1 at 5 (¶ 3).

Bank Audi nevertheless asserts that the discovery should be denied because of alleged "unfair[ness] to Bank Audi, which will be unable to explain the nature of other customers' transactions (such as payment of educational or other urgent expenses) without committing a criminal violation of the Bank Secrecy Law."  Bank Audi Mem. 17 (citing Ghanem Decl. at 15 and Cortbaoui Decl. at ¶ 7).  This argument fails on multiple levels.  In the first place, as explained at Point I.A above, Bank Audi's *force majeure* defense is based exclusively on the alleged "non-availability of banknotes in US dollars," not on the existence of the non-binding capital control measures of the ABL.  If the discovery demonstrates that Bank Audi has continued transferring U.S. dollars overseas throughout Lebanon's financial crisis, that evidence will rebut its *force majeure/*illiquidity defense regardless of whether the transfers were made for reasons approved by the ABL.  In other words, Bank Audi's alleged need to explain the purposes of other customers' U.S. dollars transfers is a red herring.

Second, it is by no means clear that the Bank Secrecy Law would prohibit Bank Audi from explaining the purposes of other customers' transactions to the Lebanese Civil Court, if that

evidence were relevant.  For example, the Bank Secrecy Law only prohibits disclosure of information "about the clients' names, funds, or personal matters" and does not apply in "a lawsuit involving banks and their clients over banking operations."  Opp. Decl. Ex. 2 at Article 2.  Bank Audi also has the option of obtaining a client's consent to the disclosure of information covered by the Act.  *See id.*  Bank Audi also fails to explain why alternatives such as anonymizing the relevant data provide insufficient solutions.

But, in any event, this is yet another issue of foreign law that this Court is not required to resolve because the task of ensuring "parity" between the litigants in the foreign proceeding falls to the foreign tribunal, not this Court.  *See, e.g., Intel*, 542 U.S. at 262 ("Concerns about maintaining parity among adversaries in litigation likewise do not provide a sound basis for a cross-the-board foreign-discoverability rule . . . .  [T]he foreign tribunal can place conditions on its acceptance of the information to maintain whatever measure of parity it concludes is appropriate."); *Brandi-Dohrn*, 673 F.3d at 82 ("[W]e need not be concerned with issues of parity because the ultimate admissibility of the evidence is determined by the foreign tribunal.").

## C.  Bank Audi Has Failed to Offer the Necessary "Authoritative Proof" that the Lebanese Civil Court Will Reject this Court's Assistance

Under the second *Intel* factor, "a court presented with a § 1782(a) request may take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court assistance."  *Intel*, 542 U.S. at 264.  According to Second Circuit precedent, this factor permits a district court to consider "'***only authoritative proof*** that a foreign tribunal would reject evidence obtained with the aid of [S]ection 1782 . . . as embodied in a forum country's ***judicial, executive or legislative declarations***.'"  *In re Polygon Global Partners LLP*, 2021 WL 2117397, at *8 (S.D.N.Y. May 25, 2021) (quoting *Euromepa I*, 51 F.3d at 1100) (emphases added).  *Accord,*

*e.g., Metallgesellschaft,* 121 F.3d at 80 ("[A]bsent 'authoritative proof that a foreign tribunal would reject the evidence obtained with the aid of section 1782' . . . a district court should not refrain from granting the assistance afforded under the act based simply on allegations to that effect.") and *In re Esses*, 101 F.3d 873, 876 (2d Cir. 1996) ("[O]nly upon 'authoritative proof that a foreign tribunal would ***reject*** evidence obtained with the aid of section 1782,' should a district court refrain from granting the assistance offered by the act.") (emphasis in original) (both quoting *Euromepa I*, 5 F.3d at 1100).

The reason for this limitation is familiar; namely, to avoid the "battle-by-affidavit of international legal experts" that is likely to result in a district court making "'superficial' ruling[s] on [foreign] law." *Euromepa I*, 51 F.3d at 1099. *See id.* ("We think that it is unwise— as well as in tension with the aims of section 1782—for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law.").

It is well-settled in this Circuit that the burden of proving that a foreign tribunal will ***reject*** U.S. judicial assistance falls on the party who alleges it. *See, e.g., In re Auto-Guadeloupe Investissement S.A.*, 2012 WL 4841945, at *6 (S.D.N.Y. Oct. 10, 2012) ("Second Circuit case law places the burden on the party opposing discovery [under Section 1782] to show that a foreign court would ***not*** be receptive to this assistance.") (citing *Euromepa I*, 51 F.3d at 1099) (emphasis in original); *In re Gorsoan*, 2014 WL 7232262, at *7 (S.D.N.Y. Dec. 10, 2014) ("[T]he party opposing the Section 1782 application bears the burden of proving the non-receptivity of the foreign tribunal.") (citing *Esses*, 101 F.3d at 876 and *In re Chevron Corp.*, 633 F.3d 153, 162-63 (3d Cir. 2011)). Thus, the proper approach "[u]nder Second Circuit precedent [is for] the district court is to ***assume*** that the foreign tribunal ***would be receptive*** to evidence

20

discovered through a § 1782 request absent 'authoritative proof' to the contrary." *ALB-GOLD Teigwaren*, 2019 WL 4140852, at *11 (emphases added).

This Court correctly concluded that the second *Intel* factor did not weigh against allowing the discovery sought here because "there is no indication that a Lebanese court would be unreceptive to federal-court judicial assistance." Order at 5. Bank Audi's motion confirms this conclusion because Bank Audi has been unable to provide the necessary "authoritative proof" "embodied in a . . . judicial, executive or legislative declaration[]" of the Republic of Lebanon "that [the Lebanese Civil Court] would reject evidence obtained with the aid of section 1782." *Euromepa I*, 5 F.3d at 1100.

To be clear, the contested opinion of Bank Audi's Lebanese law expert is not such a declaration. Dr. Ghanem is not a judge, let alone the jurist presiding over the Lebanese Action. *See* Opp. Decl. at ¶ 5. He no longer works for the Ministry of Justice of Lebanon. *See id.* He has no authority to make declarations in this proceeding that are binding on Lebanon's government or courts. *See id.* His opinion is offered only on behalf of his client, which is the defendant in the Lebanese Action. *See* Ghanem Decl. at 1. Dr. Ghanem's disputed opinion about the admissibility of the discovery is indistinguishable from the affidavits of other foreign law experts that this Court and others in this Circuit have found insufficient to justify the denial of discovery under the second *Intel* factor. *See, e.g., Tiberius Grp.*, 2020 WL 1140784, at *6 (declining to "adjudicate [a] 'battle-by-affidavit of international legal experts'" as to whether the Lagos High Court would reject Section 1782 discovery); *In re Imanagement Servs.*, 2005 WL 1959702, at *4 (E.D.N.Y. Aug. 16, 2005) ("BNY's expert affidavit . . . is insufficient to constitute 'authoritative proof' that a Russian court would reject the evidence sought by [petitioner] if gathered pursuant to § 1782.").

Significantly, Bank Audi—which bears the burden of proving that the Lebanese Civil Court will be unreceptive to this Court's assistance—cannot cite to a single instance when a Lebanese court, let alone the court in which the Lebanese Action is pending (*i.e.*, the Court of First Instance of Beirut), has rejected evidence obtained through Section 1782 discovery. Petitioner's Lebanese counsel is likewise unaware of any such ruling.  *See* Opp. Decl. at ¶ 12.[7] Accordingly, this Court may properly assume that the Lebanese Civil Court will be receptive to its assistance.  *See ALB-GOLD Teigwaren*, 2019 WL 4140852, at *11.

## III.   BANK AUDI'S REQUEST TO MODIFY THE SUBPOENAS SHOULD BE DENIED

Bank Audi's motion, in the alternative, to quash only Document Request 4 in the Subpoenas should also be denied.  This document request seeks:  "Any communication between [Respondent Bank] and Bank Audi concerning this subpoena, [Respondent Bank's] response thereto, or [the Petition] and the Court's order granting same."  Bonner Ex. 1 at 5 (¶ 4).  This request seeks evidence of any attempt by Bank Audi to interfere with Petitioner's discovery efforts.  Such evidence is relevant to the Lebanese Proceeding both pursuant to Article 278 of the Lebanon Civil Procedure Code, which prohibits parties from interfering with potential witnesses, and under certain bilateral treaties between Lebanon and the Kingdom of Saudi Arabia that form the basis of other legal claims Petitioner has asserted against Bank Audi in the Lebanese Civil Action arising out of Bank Audi's refusal to transfer Petitioner's funds to the UAE.  *See* Opp. Decl. at ¶¶ 24-28; Cortbaoui Ex. 1 at 4.  Efforts by Bank Audi to interfere with the Subpoenas would violate its obligations to Petitioner under the bilateral treaties.  *See* Opp. Decl. at ¶ 28.

---

[7] Petitioner's Lebanese counsel is aware of an instance in which Lebanese judicial authorities supervised the taking of depositions in Lebanon pursuant to letters rogatory issued by a California state court (*see* Opp. Decl. at 11.

Bank Audi's objections on grounds of overbreadth and undue burden are not well taken. "Even where a party has standing to quash a subpoena based on privilege or a personal right, he or she lacks standing to object on the basis of undue burden." *In re Lloyds Banking Group PLC*, 2021 WL 3037388, at *3, (S.D.N.Y. Jul. 19 2021). *See also, e.g., Malibu Media, LLC v. Doe*, 2016 WL 5478433, at *3 (S.D.N.Y. Sept. 29, 2016) ("Because the subpoena does not obligate Defendant to do or produce anything, he cannot be unduly burdened."). In any event, the Subpoenas are narrowly tailored and seek communications during a period of only a few months. The responsive documents are therefore unlikely to be voluminous.

## CONCLUSION

For the foregoing reasons, Bank Audi's motion to quash or modify the Subpoenas should be denied in its entirety.

Dated:   November 16, 2021
         White Plains, New York

Respectfully submitted,

**FLEISCHMAN BONNER & ROCCO LLP**

By: /s/ James P. Bonner
James P. Bonner (jbonner@fbrllp.com)
Susan M. Davies (sdavies@fbrllp.com)
81 Main Street, Suite 515
White Plains, New York 10601
Telephone:  646-415-1399

*Attorneys for Petitioner Majed Amir Al-Attabi*

**LEBANESE COUNSEL FOR PETITIONER:**

Aref El-Aref
Mohammad Ramadan
El-Aref International Law Office
Lebanon, Beirut, Verdun
Snoubra, Itani Street, Chahine Building
*(Not admitted in New York)*