UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------ x
IN RE APPLICATION OF                 :
                                     :
MAJED AMIR AL-ATTABI,                :
                                     :
For an Order Pursuant to 28 U.S.C. § 1782 to    :   21-MC-207 (VSB)
Take Discovery for Use in Foreign Proceedings   :
Pending in the Republic of Lebanon.  :
                                     :
                                     :
------------------------------------ x
```

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION BY BANK AUDI S.A.L. TO QUASH FOUR *EX PARTE* SUBPOENAS ISSUED PURSUANT TO 28 U.S.C. § 1782

DECHERT LLP
Linda C. Goldstein
Pat Andriola
Tamer Mallat
Three Bryant Park
1095 Avenue of the Americas
New York, New York  10036
(212) 698-3500

*Attorneys for Bank Audi S.A.L.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I. PETITIONER HAS NOT ESTABLISHED THAT THE EVIDENCE SOUGHT IS "FOR USE" IN A FOREIGN PROCEEDING ........................................................... 2

    A. Petitioner Has Not Identified a "Discernible Procedural Mechanism" Under Lebanese Law by Which to Inject the Discovery He Seeks .................................... 2

    B. The Evidence Al-Attabi Seeks Is "Plainly Irrelevant" Given that Illiquidity Is Not at Issue in the Lebanese Proceeding and the Discovery Sought Has No Bearing on the Force Majeure Defense. ............................................................ 6

II. DISCRETIONARY FACTORS CALL FOR QUASHING THE SUBPOENAS. ............ 8

III. IN THE ALTERNATIVE, THE COURT SHOULD MODIFY THE SUBPOENAS. .................................................................................................................. 10

CONCLUSION ............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re CBRE Global Investors NI B.V.*,
   No. 20-MC-315 (VEC), 2021 WL 2894721 (S.D.N.Y. July 9, 2021) .................................. 8

*In re Certain Funds*,
   798 F.3d 113 (2d Cir. 2015) .................................................................................1, 2, 6

*In re China Petrochemical Dev. Corp.*,
   No. 3:17-CV-02138 (SRU), 2018 WL 1320665 (D. Conn. Mar. 14, 2018) .......................... 2

*Euromepa S.A. v. R. Esmerian, Inc.*,
   51 F.3d 1095 (2d Cir. 1995) ....................................................................................... 8, 9

*In re Grabski Inwestycje Finansowe Sp. z.o.o.*,
   No. M19-117, 2004 WL 1234046 (S.D.N.Y. June 2, 2004) ................................................ 2

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004) .................................................................................................. 2, 8

*In re Lloyds Banking Group PLC*,
   No. 21-MC-00376 (JGK)(SN), 2021 WL 3037388 (S.D.N.Y. Jul. 19 2021) ...................... 10

*In re Schlich*,
   No. 16-MC-319 (VSB), 2017 WL 4155405 (S.D.N.Y. Sep. 18, 2017) ............................ 6, 9

*In re Tiberius Grp. AG*,
   No. 19-MC-467 (VSB), 2020 WL 1140784 (S.D.N.Y. Mar. 6, 2020) ................................ 8

*Union Fenosa Gas, S.A. v. Depository Tr. Co.*,
   No. 20 MISC. 188 (PAE), 2020 WL 2793055 (S.D.N.Y. May 29, 2020) ........................... 10

**Statute**

28 U.S.C. § 1782 ..........................................................................................................*passim*

## PRELIMINARY STATEMENT

Al-Attabi's opposition papers confirm that the four subpoenas should be quashed on both statutory and discretionary grounds.[1]

First, Al-Attabi has not identified a procedural mechanism that would permit him to present any evidence obtained from the subpoenas without a prior mandate from the Lebanese judge overseeing the dispute. His speculation that Article 140 of the Lebanese Code of Civil Procedure permits litigants to present such evidence because it does not prohibit them from doing so *in haec verba* is at odds with the text of Article 140—which places exclusive authority for obtaining foreign evidence with the Lebanese judge—and other provisions of Lebanese law.

Second, the discovery sought cannot possibly be "for use" in the Lebanese proceeding because Bank Audi's *force majeure* defense does not turn on the amount of Bank Audi's overseas assets or the existence of other cross-border transfers but rather, on the legal effect of various directives issued by the Banque du Liban, Lebanon's Central Bank, and the Association of Banks in Lebanon ("ABL"). Petitioner's incorrect contention that this evidence is relevant to an "illiquidity" defense purportedly asserted by Bank Audi is refuted by Bank Audi's pleading and its deposit of a banker's check for the Account Balance with the Lebanese court as security against an adverse judgment. For these reasons, Al-Attabi cannot sustain his "burden of establishing that [he is] in a position to use the evidence [he] seek[s]" in the foreign proceeding. *In re Certain Funds*, 798 F.3d 113, 120 (2d Cir. 2015).

Third, discretionary factors counsel quashing the subpoenas, including because the Lebanese court would be "unreceptive" to Al-Attabi's attempt to "circumvent" Lebanese

---

[1] Capitalized terms not defined here are defined in Bank Audi's opening Memorandum of Law ("MOL") (ECF No. 19). Al-Attabi's Memorandum of Law in Opposition to Motion of Bank Audi S.A.L. to Quash Subpoenas Issued Pursuant to 28 U.S.C. § 1782 (ECF No. 29) is cited as "Opp. at __," using the page numbers at the bottom of each page.

procedural rules permitting only judges to initiate requests for foreign evidence, *see Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), and because, even on Petitioner's view, the evidence bears at best *de minimis* relevance to the Lebanese proceeding.

## ARGUMENT

### I. Petitioner Has Not Established that the Evidence Sought Is "For Use" in a Foreign Proceeding.

Petitioner contends that the discovery sought is "for use" in the Lebanese proceeding because he "is a party in a pending foreign proceeding against Bank Audi and seeks to introduce evidence that Bank Audi has sufficient liquidity to pay Petitioner's claims against it." Opp. at 1 (quoting Order at 4). In this case, however, being "a party" to the Lebanese proceeding does not satisfy Petitioner's burden because only the Lebanese judge presiding over the case may seek foreign evidence.[2] And Bank Audi has not asserted an "illiquidity" defense, but rather a *force majeure* defense, which cannot be proven or refuted by the evidence sought in the subpoenas.

#### A. Petitioner Has Not Identified a "Discernible Procedural Mechanism" Under Lebanese Law by Which to Inject the Discovery He Seeks.

One barrier to Al-Attabi's attempt to identify a "discernible procedural mechanism" for introducing the evidence sought in the foreign proceeding, as required by *In re Certain Funds*, 798 F.3d at 122 n.11, is that *none* of the Lebanese counsel who have submitted testimony in this case, including both parties' Lebanese law experts, can identify a single instance where foreign evidence obtained by a party without a mandate from a Lebanese judge was "used" or "injected"

---

[2] Petitioner's baseless assertion that § 1782's "for use" requirement is always satisfied where petitioners are "themselves parties to the foreign proceeding," Opp. at 7, is refuted by the numerous cases rejecting § 1782 applications brought by foreign parties who were nonetheless unable to meet their burden of establishing that the evidence sought was "for use" in foreign proceedings. *See, e.g.*, *In re China Petrochemical Dev. Corp.*, No. 3:17-CV-02138 (SRU), 2018 WL 1320665 (D. Conn. Mar. 14, 2018) (granting motion to quash against petitioner, the *plaintiff* in the in foreign proceeding, because "for use" requirement was not met); *In re Grabski Inwestycje Finansowe Sp. z.o.o.*, No. M19-117, 2004 WL 1234046, at *1 (S.D.N.Y. June 2, 2004) (same).

into a Lebanese proceeding. El-Aref Decl. ¶ 41; Cortbaoui Decl. ¶ 6; Ghanem Decl. at 5–6; *see generally* Declaration of Abdo Jamil Ghossoub (ECF No. 28-1) ("Ghossoub Decl."). The fact that Mr. El-Aref is "not aware of any instance in which a Lebanese court has refused to consider evidence that was obtained in the United States pursuant to Section 1782" is meaningless because he does not contend that any other litigant has ever tried to submit foreign evidence without such a mandate.³ Declaration of Aref El-Aref in Opposition (ECF No. 28) ("El-Aref Opp. Decl.") ¶ 12. The unprecedented nature of Al-Attabi's unsanctioned § 1782 application strongly suggests that practicing lawyers in Lebanon agree with Judge Ghanem's conclusion: a judicial mandate under Article 140 of the Lebanese Code of Civil Procedure is the exclusive means to inject foreign evidence into a Lebanese proceeding.

As Judge Ghanem explains, pursuant to Article 140, a party to a Lebanese proceeding may not vest itself with authority to seek evidence in a foreign court without first obtaining a mandate to do so from the Lebanese judge assigned to the case. *See* Ghanem Decl. at 8, 10, 12; MOL at 10. Petitioner's contention that nothing precludes "Lebanese *litigants* from gathering evidence in foreign countries *without* an order from a Lebanese court," El-Aref Opp. Decl. ¶ 8 (emphases added); *see also* Ghossoub Decl. at 9–10, flies in the face of Article 140's express statement that such authority lies solely with Lebanese *judges*. His *ipse dixit* construction of Article 140 ignores the need for a "license" or "order" from the Lebanese court, which thereby "deprives the judge hearing the dispute of his extensive authority in managing the case." Reply Declaration of Ghaleb Ghanem ("Ghanem Reply Decl.") at 12–13. As Judge Ghanem explains, "[t]he Code of Civil Procedure gives [the judge] important authority to automatically decide to

---

³ The sole example proffered of "the taking of U.S.-style discovery in Lebanon" is inapposite, given that the discovery was taken for use in a California state court, not a Lebanese court. El-Aref Decl. ¶ 11.

conduct any investigation that he deems useful in the event of insufficient evidence provided by the litigants." *Id.* at 11. (internal citation omitted).

The fact that Article 140 authorizes Lebanese judges to delegate their powers "to a foreign court to carry out evidentiary procedures in the case initiated before the Lebanese court," and does not authorize the parties to do so, is purposeful. Ghanem Reply Decl. at 12. Lebanese law's "general prohibition" of foreign procedural mechanisms, such as "discovery" and "cross-examination," stems from the "controversy" these mechanisms have caused "in judicial and legal circles"—prompting the legislature to "interven[e] to put an end to them." *Id.* at 13.

Judge Ghanem's discussion of the scope of Lebanese judges' authority is supported by multiple concrete citations to the Lebanese Code of Civil Procedure.[4] By contrast, Professor Ghossoub's contention that the "evidence is the task of the litigants, and the role of the judge is limited to receiving this information to take measures based on it," Ghossoub Decl. at 10, is conspicuously lacking in legal citations. Indeed, Petitioner proffers *no* Lebanese legal authorities supporting his assertion that litigants may assume the Lebanese courts' authority to obtain foreign evidence, and *no* real-world examples where this has occurred.

None of the other grounds raised by Professor Ghossoub override the exclusive authority given to the Lebanese judge under Article 140. Professor Ghossoub seeks to infer that Petitioner may circumvent Article 140 because a "non-merchant party can use all the evidence against the merchant party, pursuant to the principle of 'freedom of proof' evidence in commercial matters, provided that this method does not violate the procedural legal public order and the binding laws

---

[4] *See, e.g.*, Article 135 (regarding the power given to the court to conduct, *sua sponte*, any investigation to "complete the evidence invoked by the litigants); Article 205 (the power to order an opponent to produce a paper in his possession); Article 218 (the power to decide, *sua sponte*, to question a litigant); Article 225 (the power, *sua sponte*, to delegate to a foreign court the task of questioning a litigant); Article 268 (the power, *sua sponte*, to call witness in cases where the law permits the use of witness testimony). *Id.* at 11–12.

in Lebanon." Ghossoub Decl. at 3. But as Judge Ghanem explains, the principle of "freedom of proof" in Article 254 of the Commercial Code does not wrest from the Lebanese judge the exclusive authority to "assess[] whether these [freedom of proof] means are acceptable or not." Ghanem Reply Decl. at 3–4. Professor Ghossoub's suggestion that various methods by which parties obtain evidence from public records in Lebanon are "similar" to § 1782 have no bearing on the "proper legal interpretation of Articles 139 and 140 of the Lebanese Code of Civil Procedure." *See id.* at 21–23. Nor do Articles 203 and 209 permit, as Professor Ghossoub and El-Aref contend, litigants to compel the production of evidence by third parties without a court order, Ghossoub Decl. 5–6; El-Aref Opp. Decl. ¶ 13, because Article 205 *expressly states* that such requests cannot be issued unless approved by the court. Ghanem Reply Decl. at 11, 15, 17. Critically, a party's failure to seek judicial authorization under Article 205 renders any effort at self-help in obtaining evidence from third parties "null and void." *Id.* at 4 (quoting Suleiman Morcos, *Principles and Procedures of Evidence*, Fifth Ed. 1991). This provision confirms Judge Ghanem's conclusion that evidence obtained in violation of Article 140 could not be "injected" into the Lebanese proceeding.

Petitioner also mischaracterizes Bank Audi's "for use" argument as a "foreign admissibility" argument, Opp. at 11. However, as the case law makes clear, "[w]hether an applicant will be able to furnish the material sought to the foreign tribunal, so that the material may be 'employed with some advantage or serve some use in the proceeding,' is a separate question from whether the discovered material will be admissible in the foreign proceeding." *Certain Funds*, 793 F.3d at 122 n.11 (quoting *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015)); *see* MOL at 8, 13. Thus, a "district court's demand that [Al-Attabi] identify some 'discernible procedural mechanism' for introducing the evidence [he] s[eeks] simply reflects the burden on a

§ 1782 applicant to establish that it will have some means of actually using the evidence in the foreign proceeding." *Certain Funds*, 793 F.3d at 122 n.11. Petitioner has not met this burden.

> **B.  The Evidence Al-Attabi Seeks Is "Plainly Irrelevant" Given that Illiquidity Is Not at Issue in the Lebanese Proceeding and the Discovery Sought Has No Bearing on the Force Majeure Defense.**

In addition to Petitioner's inability to use the requested evidence because of his effort to usurp of the role of the Lebanese judge under Article 140, he will be unable to use the evidence because it is irrelevant to his claims and to Bank Audi's defenses  As this Court has held, "it is difficult to conceive how information that is plainly irrelevant to the foreign proceeding could be said to be 'for use' in that proceeding." *In re Schlich*, No. 16-MC-319 (VSB), 2017 WL 4155405, at *6 (S.D.N.Y. Sep. 18, 2017) (quoting *Certain Funds*, 798 F.3d at 120 n.7).

Petitioner asserts that "the discovery is highly relevant because Bank Audi's purported *force majeure* defense hinges on the factual allegation that Bank Audi lacks access to sufficient U.S. dollar currency to honor Petitioner's transfer instructions, which is precisely the defense Petitioner has anticipated." Opp. at 2. Every step in this argument is wrong.

First, Bank Audi has not asserted in the Lebanese proceeding (or in any of the other 125 depositor lawsuits it is defending as a result of the Lebanese financial crisis) that it lacks sufficient U.S. dollar currency to make the requested overseas transfer. Reply Declaration of Chakib Cortbaoui ("Cortbaoui Reply Decl.") ¶ 4. Thus, evidence of Bank Audi's assets held at the Correspondent Banks is irrelevant to this lawsuit. If Bank Audi were to claim "illiquidity"—which it has not—that contention would be completely at odds with the fact that Bank Audi has both "offered Mr. Al-Attabi a banker's check for the Account Balance, to be drawn against Bank Audi funds deposited with the Lebanese Central Bank," Cortbaoui Decl. ¶ 4, and has also "deposited a check amounting to USD 4,732,966.70 with the judge presiding over the attachment

proceeding commenced by Mr. Al-Attabi." Cortbaoui Reply Decl. ¶ 3; *see also* Cortbaoui Decl. ¶ 11.[5]

Second, Bank Audi's *force majeure* defense is not based "on the factual allegation that Bank Audi lacks access to sufficient U.S. dollar currency," as Petitioner urges. El-Aref Opp. Decl. ¶ 14. Rather, as explained by Bank Audi's Lebanese counsel, "Bank Audi's *force majeure* defense submits that the current financial crisis in Lebanon relieves it of the obligation to make an overseas transfer of those funds." Cortbaoui Reply Decl. ¶ 3. Thus, the evidence that Bank Audi relies upon to support this defense "will consist of the various directives of Banque du Liban (Lebanon's Central Bank) and the [ABL]," *id.*, measures which Bank Audi argues restrict its "present ability to transfer Mr. Attabi's funds to any overseas account, but not to another Lebanese account." *Id.* Petitioner's legal discussion of the *force majeure* defense challenges whether these directives can relieve Bank Audi of any obligation to transfer funds overseas due to Bank Audi's purported role in "causing the collapse of the economy in Lebanon," Al-Aref Opp. Decl. ¶ 21, because he contends that the ABL directive "cannot constitute a *force majeure* event because it is not irresistible . . . nor an event outside Bank Audi's control." *Id.* ¶ 20; *see also id.* ¶ 17 (applying *force majeure* factors under Lebanese law). Most tellingly, his extended discussion of the *force majeure* defense actually asserted by Bank Audi does not give any indication of how the evidence sought in the subpoenas might be relevant to it. *See generally id.* ¶¶ 16–21; *see also* Opp. at 3–4.

---

[5] On December 17, 2021, in a Lebanese depositor lawsuit brought in England, United Kingdom, against another Lebanese bank, a court issued its final judgment finding that the bank had complied with its contractual legal obligations to the depositor when it offered to pay the depositor by check drawn against that bank's funds deposited with the Lebanese Central Bank, payable in Beirut, Lebanon. *Khalifeh v. Blom Bank SAL*, 2021 EWHC 399 QB (High Court of Justice – Queen's Bench Division) (United Kingdom).

Finally, to date, Lebanese courts have "uniformly rejected" the *force majeure* defense in other cases. Cortbaoui Reply Decl. ¶ 5. This consistent record is further proof that the evidence sought by Petitioner is not "for use" in the Lebanese proceeding, including to the *force majeure* defense.

Petitioner can take little comfort from insisting that the "for use" requirement is an "extremely *permissive* standard," Opp. at 4 (emphasis in original), because he still must make at least a "*de minimis*" showing that the evidence he seeks is somehow relevant to the issues being litigated in the foreign proceeding. *Id.* (quoting *In re CBRE Global Investors NI B.V.*, No. 20-MC-315 (VEC), 2021 WL 2894721, at *7 (S.D.N.Y. July 9, 2021)). He has failed to do so here. Because the information he seeks is "plainly irrelevant" to the Lebanese proceeding, Petitioner cannot meet § 1782's "for use" requirement, and the motion to quash should be granted.

## II.  Discretionary Factors Call for Quashing the Subpoenas.

In exercising its discretion under the factors set forth by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, the Court should consider, *inter alia*, "the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance" and whether "the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country." *In re Tiberius Grp. AG*, No. 19-MC-467 (VSB), 2020 WL 1140784, at *3 (S.D.N.Y. Mar. 6, 2020) (Broderick, J.) (citing *Mees*, 793 F.3d at 239) (internal quotation marks omitted).

As for the receptivity of the Lebanese court, Bank Audi has submitted "authoritative proof," *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995), by way of two declarations of experienced Lebanese law practitioners (including a former judge on Lebanon's highest court) confirming that they have never seen an instance where a Lebanese court has permitted the use of discovery obtained from a foreign court without a mandate from a Lebanese

judge. Ghanem Decl. at 5–6; Cortbaoui Decl. ¶ 6. In response, Al-Attabi has been unable to identify a single such case. El-Aref Opp. Decl. ¶ 12. Moreover, Lebanon's strict Bank Secrecy Law prohibits Lebanese banks from disclosing their customers' information, and any bank that does is subject to criminal penalties. El-Aref Opp. Decl. Ex. 2 (ECF No. 28-2). While Petitioner contends that "it is by no means clear that the Bank Secrecy Law would prohibit Bank Audi from explaining the purposes of other customers' transactions to the Lebanese Civil Court," Opp. at 18–19, that assertion cannot be squared with the text of the Bank Secrecy Law, which prohibits disclosure of "any information known to [bank managers and employees] about the clients' names, funds, or *personal matters to any party*, be it an individual or a public authority." El-Aref Opp. Decl. Ex. 2 (emphasis added).

Finally, the (at best) attenuated relevance of the evidence sought to Bank Audi's defense is another basis to quash the subpoenas. "A request that appears only marginally relevant to the foreign proceeding may in certain cases suggest that the application is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials." *Mees*, 793 F.3d at 299 n.10 (internal quotation marks and citation omitted); in *In re Schlich*, this Court considered a Petitioner's claim that requested discovery under Section 1782 would "call into question the reliability" of a competing declaration in the relevant foreign proceeding. *Id.* at *7. This Court recognized that the discovery could potentially "go[] to [the] reliability" of the declarant, but found "such relevance minimal." *Id*. Therefore, this Court held that, "to the extent Petitioner could use the material only to discredit [the declarant], I would find such material only 'marginally relevant' such that is seeks 'unreasonably cumulative or irrelevant materials' and this find grounds for discretionary denial." *Id*. (quoting *Mees*, 793 F.3d at 299 n.10 (quoting *Euromepa*, 51 F.3d at 1101 n.6)). Here, Petitioner's assertion that he will use the

- 9 -

discovery to rebut a U.S. dollar illiquidity defense is baseless, since Bank Audi is not asserting that defense and the evidence is irrelevant to the defenses that Bank Audi has asserted. This Court should, as it did in *In re Schlich*, consider any potential marginal relevance of the requested discovery to be outweighed by the overbreadth and irrelevance of the information, *see* MOL at 15–20, and deny discovery based on its discretion.

### III. In the Alternative, the Court Should Modify the Subpoenas.

Petitioner contends that Request No. 4 seeks evidence that is "potentially relevant" to "establish evidence of bad faith on the part of Bank Audi, through the interference with the subpoenas, sufficient to constitute a breach of the . . . 'fair and equitable treatment' standard" under certain bilateral treaties. El-Aref Opp. Decl. ¶ 28. But this *post hoc* justification is meritless because any treaty claims asserted here are "enforceable only by the signatory States, not by their citizens," Cortbaoui Decl. ¶ 4, and, in any event, Al-Attabi has not asserted such a claim. *See id.* Ex. 1. Lastly, Petitioner's assertion that Bank Audi "lacks standing to object on the basis of undue burden," Opp. at 23 (citing *In re Lloyds Banking Group PLC*, No. 21-MC-00376 (JGK)(SN), 2021 WL 3037388, at *3, (S.D.N.Y. Jul. 19 2021), carries no weight because Bank Audi challenges the subpoenas for overbreadth. *Union Fenosa Gas, S.A. v. Depository Tr. Co.*, No. 20 MISC. 188 (PAE), 2020 WL 2793055, at *8 (S.D.N.Y. May 29, 2020) (holding "that the challenge is properly brought" where intervenor "challenges the breadth of the sought-after discovery, as opposed to the burden it will impose on [respondent bank]").

### CONCLUSION

Because Petitioner's application fails to satisfy the statutory "for use" requirement of 28 U.S.C. § 1782, and because the *Intel* analysis and other discretionary factors weigh against issuing the subpoenas, all four subpoenas should be quashed in their entirety. In the alternative, if the Court does not quash the four subpoenas, each should be modified to strike Request No. 4.

| | |
|---|---|
| Dated: New York, New York<br>December 23, 2021 | Respectfully submitted,<br><br>DECHERT LLP<br><br>By: /s/ *Linda C. Goldstein*<br>    Linda C. Goldstein<br>    Pat Andriola<br>    Tamer Mallat<br>    Three Bryant Park<br>    1095 Avenue of the Americas<br>    New York, New York  10036<br>    (212) 698-3500<br><br>    *Attorneys for Bank Audi S.A.L.* |

- 11 -