```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/26/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re Application of                                  :
                                                      :
MAJED AMIR AL-ATTABI,                    :
                                                      :
For an order pursuant to 28 U.S.C. § 1782 to    :
take discovery for use in foreign proceedings    :
pending in the Republic of Lebanon.              :
                                                      :
-------------------------------------------------------------X

21-MC-207 (VSB) (RWL)

**DECISION AND ORDER:
MOTION TO QUASH**

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Petitioner Majed Amir Al-Attabi ("Petitioner"), moving ex parte, obtained an order
granting issuance of subpoenas to four U.S. banks to obtain discovery for a legal action
in Lebanon.  Bank Audi S.A.L. ("Bank Audi"), the respondent in the Lebanese proceeding,
now moves to quash the subpoenas on the basis that Petitioner has not satisfied the
statutory requirements to obtain a subpoena for use in foreign proceedings pursuant to
28 U.S.C. § 1782 and because discretionary factors favor quashing the subpoenas.  In
the alternative, Bank Audi requests that the subpoenas be modified to eliminate one of
the document categories requested.  For the reasons set forth below, Bank Audi's motion
to quash is DENIED and its request to modify is GRANTED.

## Legal Standard

In order to place the facts and proceedings in context, the Court first sets out the
basic legal principles governing applications to obtain discovery for use in foreign actions
pursuant to 28 U.S.C. § 1782.  In ruling on such an application, "a district court must first
consider the statutory requirements and then use its discretion in balancing a number of
factors." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).
Accordingly, the court must consider both statutory and discretionary elements.

There are three statutory requirements for granting an application pursuant to § 1782.  Granting a request is authorized when: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Id.*; *see also Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 97 (2d Cir. 2020) (stating same requirements).  All three statutory factors must be met in order for a district court to have the authority to grant a § 1782 request.

If an application satisfies the statutory factors, a court must exercise its discretion, guided by the "twin aims of the statute," namely "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts."  *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004) (quotation marks and citations omitted); *accord Brandi-Dohrn*, 673 F.3d at 81.  "[C]ourts have wide discretion to determine whether to grant discovery, and can tailor any requested discovery 'to avoid attendant problems.'"  *In re Postalis*, No. 18-MC-497, 2018 WL 6725406, at *2 (S.D.N.Y. Dec. 20, 2018) (quoting *Application of Esses*, 101 F.3d 873, 876 (2d Cir. 1996)).  To aid the court in determining whether to exercise its discretion to grant discovery pursuant to Section 1782, the Supreme Court has prescribed four factors to consider. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65, 124 S. Ct. 2466, 2483-84 (2004).

The four "*Intel* factors" are:  (1) whether the person from whom discovery is sought is a participant in the foreign proceeding, in which event the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a

nonparticipant in the matter arising abroad; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and 4) whether the request is unduly intrusive or burdensome. *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018) (citing *Intel*, 542 U.S. at 264–65, 124 S. Ct. 2483-84).  If a Section 1782 petition satisfies both the statutory requirements and the discretionary *Intel* factors, a district court may grant the petition.

The burden of establishing entitlement to discovery pursuant to Section 1782 falls on the applicant.  *See In re Gorsoan Limited*, 843 F. App'x 352, 354 (2d Cir. 2021) (party seeking to invoke § 1782 must show the three statutory factors are met); *In re Postalis*, 2018 WL 6725406, at *3 (applicant must show the basic statutory requirements).

## Factual And Procedural Background[1]

### A.    The Lebanese Action

Petitioner, a Saudi national, deposited $4,050,000 with Bank Audi, a Lebanese

---

[1] The background is drawn from the parties' submissions.  For Bank Audi, those include the Memorandum Of Law In Support of its motion (Dkt. 19) ("Audi Mem."); the Reply Memorandum Of Law In Support of its motion (Dkt. 30) ("Reply Mem."); the Declaration of Linda C. Goldstein dated Oct. 12, 2021 (Dkt. 20) ("Goldstein Decl."); the Declaration of Chakib Cortbaoui dated Oct. 11, 2021 (Dkt. 21) ("Cortbaoui Decl."); the Declaration of Chakib Cortbaoui dated Dec. 21, 2021 (Dkt. 31) ("Second Corbaoui Decl."); the Declaration of Ghaleb Ghanem dated Oct. 11, 2021 (Dkt. 22) ("Ghanem Decl."); and the Declaration of Ghaleb Ghanem dated Dec. 22, 2021 (Dkt. 32) ("Second Ghanem Decl."). Al-Attabi's submissions include his Memorandum Or Law In Opposition (Dkt. 29) ("Opp. Mem."); the Declaration of James P. Bonner dated Feb. 26, 2021 (Dkt. 4) ("Bonner Decl."); the Declaration of Aref El-Aref dated Feb. 26, 2021 (Dkt. 5) ("El-Aref Decl."); the Declaration of Aref El-Aref dated Nov. 15, 2021 (Dkt. 28) ("Second El-Aref Decl."); and

bank.   When Petitioner provided instructions to Bank Audi to transfer all funds, plus interest, to his account at a bank in the United Arab Emirates ("UAE"), Bank Audi refused. Bank Audi does not deny that it owes Petitioner the funds at issue.   Rather, Bank Audi objects to transferring those funds outside of Lebanon.

In 2019 Lebanon fell into a financial crisis precipitated by its default on over a billion dollars of Eurobonds.   The crisis has affected Lebanese banks' access to U.S. dollars in Lebanon.   In response, Petitioner alleges, Lebanese banks have implemented unlawful capital control measures at the direction of a private bank association, the Association of Banks on Lebanon (the "ABL").   One of those measures is a directive that Lebanese banks not transfer U.S. dollars out of Lebanon.[2]   According to Petitioner, that directive is both unlawful and discriminatorily applied as Lebanese banks have permitted certain clients, such as bank executives and politically connected depositors, to transfer their U.S. funds outside of Lebanon.

On September 4, 2020, Petitioner commenced an action against Bank Audi in Lebanese court for an order requiring Bank Audi to transfer his funds as directed (the "Lebanese Action").   Petitioner states two claims in the Lebanese Action.   The first claim asserts that, under Lebanese law, Bank Audi is required to transfer Petitioner's funds to his account in the UAE.   The second claim asserts that transfer is required by certain treaties between Lebanon and the Kingdom of Saudi Arabia.   In response, Bank Audi has

the Declaration of Abdo Jhamil Ghossoub dated Nov. 12, 2021 (Dkt. 28-1) ("Ghossoub Decl.").   The Court also draws upon the prior proceedings in this action.

[2] The directive purportedly issued by the ABL does not apply to U.S. dollars received from outside Lebanon since October 17, 2019, or what Petitioner refers to as "fresh" U.S. dollars.   (El-Aref Decl. ¶ 19.)   The parties' dispute does not appear to implicate fresh U.S. dollars.

asserted three defenses.  The first posits that Bank Audi has the discretion to transfer the funds overseas but is not required to do so by Lebanese law.  The second asserts that the ongoing financial crisis in Lebanon constitutes a *force majeure*, relieving Bank Audi of any obligation to transfer funds overseas.  The third defense asserts that the treaties cited by Petitioner cannot be enforced by individuals but rather only by signatory states.

Petitioner also filed a separate ex parte proceeding in the Lebanese Court of Judicial Enforcement to obtain pre-judgment attachment of Bank Audi shares of ownership in various Lebanese companies (the "Attachment Proceeding").  In response, Bank Audi submitted, for attachment, a check drawn from Bank Audi's U.S. dollar currency holdings at Lebanon's Central Bank for the full amount of the amount owed to Petitioner.  The check, however, is payable only in Lebanon.  Petitioner has challenged the sufficiency of the check in the Attachment Proceeding.

## B.     The U.S. Discovery Sought

In support of his case in the Lebanese Action and the Attachment Proceeding, Petitioner seeks discovery from four U.S. banks that are not parties to the Lebanese Action or Attachment Proceeding.  The four banks are J.P. Morgan Chase Bank, N.A., The Bank Of New York Mellon Corporation, Citibank, N.A., and Standard Chartered Bank (the "Correspondent Banks").  Each of the Correspondent Banks has purportedly received wire transfers from Bank Audi on behalf of Bank Audi customers.

Petitioner believes that discovery from the Correspondent Banks is likely to yield evidence that is relevant to Bank Audi's defenses in the Lebanese Action and its inability or refusal to transfer Petitioner's funds out of Lebanon.  Specifically, the discovery Petitioner seeks is aimed at determining whether Bank Audi transferred U.S. dollars for

itself or for customers to accounts outside of Lebanon and whether Bank Audi has sufficient U.S. dollars that would allow it to transfer the full amount owed to Petitioner's UAE account.   Petitioner also seeks communications between Bank Audi and the Correspondent Banks about the subpoenas and the application Petitioner made to obtain them.

## C.   The Instant Proceeding

Petitioner filed his ex parte application for the subpoenas on February 26, 2021.[3] On September 3, 2021, Judge Broderick issued an Opinion and Order granting Petitioner's application.  (Dkt. 10.)  The Court found that Petitioner satisfied the three statutory requirements to obtain discovery pursuant to 28 U.S.C. § 1782.  First, the Correspondent Banks are "found" in this District as they or their parent corporations have headquarters here.  Second, the discovery sought is "for use" in the Lebanese Action because Petitioner, as a party to the foreign proceeding, "seeks to introduce evidence showing that Bank Audi has sufficient liquidity to pay Petitioner's claims against it" and also intends to use the discovery in the Attachment Proceeding.[4]  (Dkt. 10 at 4.)  Third, Petitioner is an interested person with respect to the Lebanese Action.

Judge Broderick also found that all four of the *Intel* factors favored granting the application.  Addressing the first factor, he noted that none of the Correspondent Banks

---

[3] "It is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 ex parte.  The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)."  *Gushlak v. Gushlak*, 486 Fed. App'x 215, 217 (2d Cir. 2012) (citing cases).

[4] The Court acknowledged that the Attachment Proceeding alone likely would not suffice to satisfy the use element because it is not "adjudicative" in nature.  (Dkt. 10 at 4.)

are parties to the Lebanese Action.  With respect to the second factor, the Court observed that "there is no indication that a Lebanese court would be unreceptive to federal-court judicial assistance."  (Dkt. 10 at 5.)  "To the contrary," the Court explained, "Petitioner submits a declaration from a Lebanese litigator stating that Articles 139 and 140 of the Lebanese Code Of Civil Procedure provide for the admissibility of evidence obtained in accordance with the law of other jurisdictions."  (Dkt. 10 at 5.)  For the same reason, the Court found that that third factor supports the application and that Petitioner "does not seek to circumvent the rules and procedures of the Lebanese tribunal."  (Dkt. 10 at 5.) Additionally, the Court noted that although Lebanon has a secrecy law guarding certain bank records, the law does not apply to the Correspondent Banks.  As to the fourth factor, the Court found that the subpoenas' requests for documents are narrowly tailored and not unduly burdensome or intrusive.

On October 12, 2021, Bank Audi moved to quash the subpoenas.  The motion was fully briefed as of December 23, 2021, and was referred to me for decision and order on a non-dispositive motion.

## **The Issues In Dispute**

The issues in dispute on this motion are discrete.  Bank Audi does not dispute either that the subpoenaed banks are found in this district, thus satisfying the first statutory element for obtaining discovery pursuant to 28 U.S.C. § 1782, or that the application is made by Petitioner as an "interested person," thus satisfying the third requirement.[5]  (*See* Audi Mem. at 8-9.)

---

[5] Although Bank Audi does not contest the "interested party" requirement, the Court notes that "there is considerable overlap" between that factor and the "for use" factor.  *Certain Funds, Accounts And/Or Investment Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 118 (2d

Instead, Bank Audi argues that the second element – "for use in a foreign proceeding" – is not satisfied for two separate reasons.  First, contrary to what Petitioner presented in his application, the discovery he seeks cannot be used in the Lebanese Action because the Lebanese court has not requested that evidence.  Bank Audi bases its argument on the declaration of a former Lebanese judge, Ghaleb Ghanem, and his interpretation and explanation of the Lebanese Code of Civil Procedure.  In response, Petitioner presents the declaration from a Lebanese professor, Abdo Jhamil Ghossoub, who gives his interpretation and explanation of the same authority.

Second, Bank Audi asserts that the discovery sought cannot be used in the Lebanese Action because it is irrelevant to the issues in dispute there.  According to Bank Audi, the entire basis for Petitioner's application was to test Bank Audi's anticipated "illiquidity" defense that it did not have sufficient access to U.S. dollars.  But, Bank Audi explains, it is not asserting an illiquidity defense, as demonstrated by its having provided a check in the full amount in the Attachment Proceeding.  Petitioner responds that the discovery sought is relevant regardless of whether Bank Audi asserts an illiquidity defense because the Correspondent Banks' records will show whether Bank Audi can transfer, and has transferred, U.S. dollars outside Lebanon for its customers.  If so, such evidence potentially would undermine Bank Audi's *force majeure* defense.

Similar to its focus on only one of the statutory factors, Bank Audi does not advance any argument that either the first or fourth *Intel* factors weigh against granting

---

Cir. 2015) (analyzing the Supreme Court's *Intel* decision).  That is because a person arguably does not qualify as "interested" if they do not have the "ability" to use the discovery material in the foreign proceeding.  *Id.*

the requested discovery.  Rather, Bank Audi trains its sights on the second and third factors, arguing that Lebanese Courts will not be receptive to the requested evidence and that Petitioner is circumventing Lebanese law by not having sought and obtained permission from the Lebanese Action court to pursue the discovery.  Additionally, Bank Audi contends that Petitioner and his counsel misled the Court in two respects: first, by failing to apprise the Court that Bank Audi did not assert the anticipated illiquidity defense in the Lebanese Action, and, second, by mischaracterizing Lebanese law regarding evidence obtained in foreign jurisdictions.[6]  As with the second statutory factor, the parties' arguments about the second and third discretionary factor mostly rest on dueling interpretations and explanations of Lebanese law by Lebanese legal experts and practitioners.

## Discussion

### A.    Petitioner Satisfies The "For Use" Statutory Requirement

As noted, the pivotal dispute is whether the discovery sought by Petitioner meets Section 1782's "for use" in a foreign proceeding requirement.  The Court concludes, as did Judge Broderick, that it does.

#### 1.  Procedural Mechanism For Using The Discovery

The "for use" inquiry focuses "on the ***practical ability*** of an applicant to place a beneficial document – or the information it contains – before a foreign tribunal."  *In re Accent Delight International Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017) (emphasis in original).  "[T]he term 'for use' in Section 1782 has only its ordinary meaning – that the

---

[6] As explained below, the Court does not agree that Petitioner or his counsel misled the Court.

requested discovery is 'something that will be employed with some advantage or serve some use in the proceeding.'"  *Id.* at 132. (quoting *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015)).  Petitioner, as a party to the Lebanese Action, seeks to do exactly that with the discovery it obtains from the Correspondent Banks (assuming, of course, that the information proves helpful to Petitioner).  That is, Petitioner will place beneficial material obtained through the subpoenas before the Lebanese Court for its consideration.

According to Bank Audi, however, Petitioner cannot possibly use the discovery in the Lebanese Action because Lebanese law does not authorize obtaining discovery absent a request from the Lebanese court.  Petitioner has not presented any evidence of a Lebanese court request to that effect or any indication that Petitioner has even applied for such an order.  As support for its argument, Bank Audi invokes Lebanese law and civil procedure, particularly Articles 139 and 140 of the Lebanese Code Of Civil Procedure.  To make its point, however, Bank Audi relies on two declarations (both opening and reply) from former Lebanese judge Ghanem essentially serving in the role of an expert in Lebanese law.

For instance, Ghanem opines: "[U]nder Lebanese law, the judge is the only authority who has the ability to request the production of evidence (for example, witness testimony, documents) from a third party.  A judge may do so *sua sponte (d'office)* or at the request of one of the parties to the dispute.  In other words, no party may independently from the judge overseeing the dispute seek evidence from a third party. Any evidence obtained in a manner that does not conform with these procedures is inadmissible."  (Ghanem Decl. at 5.)  Ghanem asserts that Petitioner's lawyer who

submitted a declaration attesting to Lebanese law, and on which Judge Broderick relied, "misinterpreted" Articles 139 and 140 of the Lebanese procedural code.  (Ghanem Decl. at 4.)  Ghanem characterizes Petitioner's Section 1782 application as "illegal," and goes so far as to accuse Petitioner's Lebanese lawyer as having submitted "a false declaration regarding the interpretation" of those articles.  (Ghanem Decl. at 3, 5.)

Unsurprisingly, Petitioner has submitted an opinion from its own expert Lebanese lawyer (Professor Ghossoub) as well as further explanation of Lebanese law from the lawyer representing Petitioner in the Lebanese Action (Mr. El-Aref).  Ghossoub opines that Articles 139 and 140 "are directed towards acceptance of Discovery's application in Lebanon, not rejection of the same" and characterizes as "fictitious" the "problem raised about the permissibility of accepting the results of the Discovery procedure's application in Lebanon."[7]   (Ghossoub Decl. at 10, 11.)   Just as Ghanem faults Petitioner's "interpretation" of the Lebanese procedural rules, El-Aref contends that Ghanem's "interpretation" of the rules "is not correct."  (Second El-Aref Decl. ¶ 8.) Indeed, El-Aref pointedly asserts that Article 140 "does not prevent Lebanese litigants from gathering evidence in foreign countries without an order from a Lebanese court." (*Id.*)

In the end, however, both parties offer indefinite predictions as to how the discovery sought will be treated in the Lebanese Action.  Petitioner's Lebanese counsel

---

[7] Ghossoub's declaration is less than a paragon of clarity, at times incomprehensible, and advances what appear to be a number of rhetorical questions without answering them. Whether his opinion, or that of Bank Audi's Lebanese legal expert, would be admissible at trial in a U.S. court of law is open to question.  What matters here, however, is that the opinions conflict and, taken together, demonstrate that the ultimate question of to what extent the discovery Petitioner seeks may be admitted in the Lebanese Action cannot and should not be determined by this Court based on the record before it.

opines that the Lebanese court "will most likely welcome this Court's assistance under Section 1782" (Second El-Aref Decl. ¶6), while Bank Audi's Lebanese counsel opines that it is "unlikely" that the Lebanese court will "admit that evidence."  (Cortbaoui Decl. ¶ 7.)  In other words, the parties disagree about the relative likelihood that the Lebanese court ultimately will admit the discovery sought.

That is precisely the type of dispute that should not enter the Court's determination of whether the "for use" requirement is met.  As the Second Circuit has admonished, "a district court … should not consider the ***admissibility*** of evidence in the foreign proceeding in ruling on a section 1782 application."  *Brandi-Dohrn*, 673 F.3d at 82 (emphasis in original).  In *Brandi-Dohrn*, the Court explained that Section 1782's test provides no support for a "foreign admissibility" requirement, which would "serve 'only to thwart § 1782(a)'s objective to assist foreign tribunals in obtaining relevant information that the tribunals may find useful ….'"  *Id.* at 82 (quoting *Intel*, 542 U.S. at 262, 124 S. Ct. at 2482).

The Court Of Appeals also rejected an admissibility requirement in part because "requiring a district court to apply the admissibility laws of the foreign jurisdiction would require interpretation and analysis of foreign laws and such '[c]omparisons of that order can be fraught with danger.'"  *Id.* (quoting *Intel*, 542 U.S. at 263, 124 S. Ct. at 2482).  Attempting to determine whether the Lebanese court is "most likely" to consider the discovery at issue, as Petitioner contends, or "unlikely" to do so, as Bank Audi contends, presents exactly that danger.  In words directly applicable here, the *Brandi-Dohrn* court noted that "attempts by U.S. courts to construe foreign evidentiary codes and rules result in a gross waste of judicial resources, particularly where even experts on the

foreign law in question often disagree on the potential admissibility of the evidence sought."  *Id.* at 82 n.1 (internal quotation marks omitted).   The Court agrees with Petitioner's observation that the opposing opinions of Drs. Ghalem and Ghossoub "perfectly illustrate why district courts must avoid inquiry into the admissibility of discovery before foreign tribunals."  (Opp. Mem. at 11.)

To be sure, there is a distinction between admissibility and the availability of a procedural mechanism for getting material before a foreign court for consideration of admissibility.  *See Certain Funds*, 793 F.3d at 122 n. 11 ("Whether an applicant [under Section 1782] will be able to furnish the material sought to the foreign tribunal, so that material may be 'employed with some advantage or serve some use in the proceeding,' is a separate question from whether the discovered material will be ***admissible*** in the foreign proceeding") (quoting *Mees*, 793 F.3d at 298) (emphasis in original).   In this instance, that distinction, at least as advanced by Bank Audi, is one without a meaningful difference.[8]  Petitioner is a party to the Lebanese Action.[9]  His attorney will

---

[8] Bank Audi's own expert repeatedly frames the issue as the extent to which the discovery sought by Petitioner is or is not admissible.   *See* Ghanem Decl. at 5 ("any evidence obtained in a manner that does not conform with these procedures is inadmissible"); 7 (referencing the "admissibility of evidence"); 9 (referencing the judge's role "to determine the acceptable evidence and the procedures for submitting such evidence"); 11 (Articles 139 and 140 "negate[] any possibility of accepting Discovery by the Lebanese court").

[9] The fact that Petitioner is a party to the Lebanese Action materially distinguishes this case from those on which Bank Audi relies that examined whether a ***non-party*** had a mechanism for submitting U.S. discovery material in a foreign proceeding to which they were not a party.  *See, e.g.*, *Certain Funds*, 798 F.3d at 121 (non-parties sought discovery with intention to furnish the information to a party "in the hope that it might be used"); *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Technologies Ltd.*, No. 18-CV-5427, 2020 WL 2133173, at *3-4 (S.D.N.Y. May 5, 2020) (non-party to Chinese lawsuit failed to identify any means of submitting evidence to the Chinese court); *In re Sargent*, 278 F. Supp.3d 814, 822 (S.D.N.Y. 2017) (non-party failed to show any procedural right or mechanism to inject requested evidence into London proceeding).   That is not to say that merely being a party to a foreign proceeding is sufficient to satisfy the "for use"

attempt to introduce favorable material obtained through investigation and the foreign discovery sought here.  Whether the Lebanese court will refuse to even consider the material is not for this Court to say.

### 2.  Relevance

The discovery sought is relevant to Bank Audi's *force majeure* defense.  Bank Audi claims that because of the Lebanese financial crisis, it cannot send Petitioner's U.S. dollars overseas.  Petitioner seeks to test that assertion by obtaining discovery showing that Bank Audi has in various instances transferred U.S. dollars overseas and that it could do the same for Petitioner.

Ignoring that potential use, Bank Audi contends that the discovery sought is irrelevant because Petitioner based his application on a different relevance ground, the rationale for which has now been mooted.  Specifically, Bank Audi emphasizes that Petitioner initially professed needing the discovery to respond to what Petitioner anticipated would be Bank Audi's defense that it did not have access to enough liquid U.S. dollars to pay the funds owed to Petitioner.  Indeed, Judge Broderick expressly invoked that rationale in his opinion granting Petitioner's ex parte application.  (Dkt. 10 at 4.)

Bank Audi contends it never did advance an "illiquidity" defense, and, in any event, any concern about liquidity was mooted when it submitted a check for the funds

---

requirement; nonetheless, the petitioner's status as a non-party in the cases cited by Bank Audi was a significant factor in the outcomes.  Another case cited by Bank Audi is materially distinguishable because, even though petitioner was a party, the foreign proceeding had terminated such that there was no proceeding in which to use the discovery sought. *See Euromepa, S.A. v. R. Esmerian Inc.*, 154 F.3d 24, 26, 28-29 (2d Cir. 1998).

due in the Attachment Proceeding.  As Bank Audi would have it, Petitioner's failure to bring those facts to the Court's attention was misleading and violated principles of candor with the Court.

Bank Audi doth protest too much.  The *force majeure* and illiquidity defenses are not mutually exclusive.  To the contrary, the gravamen of Petitioner's complaint in the Lebanese Action is that Bank Audi illegally has refused to transfer his U.S. dollar funds overseas, using the Lebanese financial crisis as an excuse.  Bank Audi's argument is premised on mischaracterizing as purely a liquidity issue the defense Petitioner actually anticipated.  In his application, Petitioner expressly links liquidity to transferability: "Bank Audi will claim that it does not have access to sufficient freely convertible and ***transferable*** USD liquidity ("USD liquidity") to transfer Petitioner's $4.3 million out of Lebanon."  (Dkt. 3 at 3 (emphasis added).)

The anticipated defense thus was not whether Bank Audi has sufficient funds to pay Petitioner, but rather whether it has access to sufficient U.S. dollars that it could be transferred out of Lebanon.  Bank Audi's *force majeure* defense can be readily framed as Bank Audi's not having access to sufficient U.S. dollars that it can send overseas due to the financial crisis.  The check that Bank Audi submitted in the Attachment Proceeding does not moot that issue because the check is payable only in Lebanon. Even Bank Audi framed its *force majeure* defense in terms of liquidity in its responsive pleading submitted in the Lebanese Action.  There, Bank Audi claimed no longer to be

bound to its contractual obligations to Petitioner "in light of the *force majeure* that led to the non-availability of banknotes in U.S. dollars."  (Dkt. 21-2 at 13.)

In trying to portray the discovery sought as irrelevant, Bank Audi even questions the merits of its own defense.  Its Lebanese Attorney thus avers "that to the best of my knowledge, no court has yet accepted the assertion of *force majeure* as a defense to these depositor lawsuits, whether asserted by Bank Audi or by another bank, but rather, they have uniformly rejected it."  (Second Cortbaoui Decl. ¶ 5; *see also* Reply Mem. at 8.)   It is perhaps ironic, but certainly not persuasive, for Bank Audi to argue the weakness of its own defense as a reason to deny Petitioner the opportunity to obtain documents that could further undermine that defense.

"[B]ecause the substantive issues presented in the foreign litigation are to be decided by a foreign court applying unfamiliar foreign law, the district court should be permissive when assessing relevance" for purposes of Section 1782.  *In re Tiberius Group AG*, No. 19-MC-467, 2020 WL 1140784, at *7 (S.D.N.Y. March 6, 2020) (Broderick, J.) (citation omitted); *see also In re China Petrochemical Development Corp.*, No. 3:17-CV-02138, 2018 WL 1320665, at *4 (D. Conn. March 14, 2018) ("Even where relevance is in doubt in a Section 1782 case, the district court should be permissive") (internal quotation marks omitted); *cf. In re Schlich*, No.16-MC-319, 2017 WL 4155405, at *6 (S.D.N.Y. Sept. 18, 2017) (Broderick, J.) (finding "for use" requirement not met where information sought was "plainly irrelevant").  Courts thus have "described the 'for use' element [of Section 1782] as requiring only a '*de minimis*' showing that the information sought would be relevant to the foreign proceeding."  *In re*

*CBRE Global Investors (NL) B.V.*, No. 20-MC-315, 2021 WL 2894721, at \*7 (S.D.N.Y. July 9, 2021). Petitioner well exceeds that threshold.

In sum, Petitioner has satisfied the requirement that the discovery he seeks from the Correspondent Banks is "for use" in the Lebanese Action.

**B.      The Discretionary Factors Favor Issuing The Subpoenas**

As noted, there is no dispute that the first and fourth *Intel* factors weigh in favor of the discovery sought. And for the same reasons that the statutory "for use" element is satisfied, the second and third *Intel* factors also weigh in favor of the discovery sought.

The second *Intel* factor considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264, 124 S. Ct. at 2483. To show that a foreign tribunal would ***not*** be receptive to evidence obtained through § 1782 requires "authoritative proof" that provides a "clear directive." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995). Such authoritative proof may only be found "in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." *Id.*; *see also In re Polygon Global Partners LLP*, No. 21-MC-364, 2021 WL 2117397, at \*8 (S.D.N.Y. May 25, 2021) ("In this Circuit, this factor requires consideration of 'only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of [S]ection 1782 ... as embodied in a forum country's judicial, executive or legislative declarations'") (quoting *Euromepa*, 51 F.3d at 1100).

Moreover, "Second Circuit case law places the burden on the party opposing discovery [under Section 1782] to show that a foreign court would ***not*** be receptive to

17

this assistance." *In re Auto-Guadaloupe Investissement S.A.* No. 12-MC-221, 2012 WL 4841945, at *6 (S.D.N.Y. Oct. 10, 2012) (citing *Euromepa*, 51 F.3d at 1099) (emphasis in original); *see also In re Gorsoan Limited*, No. 13-MC-397, 2014 WL 7232262, at *7 (S.D.N.Y. Dec. 10, 2014) ("the party opposing the Section 1782 application bears the burden of proving the non-receptivity of the foreign tribunal") (citations omitted), *aff'd sub nom.*,*Gorsoan Limited v. Bullock*, 652 F. App'x 7 (2d Cir. 2016).

Here, the parties engage in the same dispute in evaluating the second factor as they do in arguing whether the "for use" requirement is met.  Bank Audi contends that the Lebanese court would not at all be receptive to judicial assistance from this Court in permitting issuance of subpoenas both because of Lebanese civil procedure law and because of "(at best) attenuated" relevance.  (Reply Mem. at 9.)  As discussed above, contrasting legal interpretations of Lebanese law have been provided by the parties that leave this Court with a less then "clear" or "authoritative" understanding that the court in the Lebanese Action would not permit any use of the subpoenaed information.  *See In re Tiberius Group*, 2020 WL 1140784 at *6 (declining to "adjudicate [a] battle-by-affidavit of international law experts" as to whether foreign court would reject the discovery sought).  And, as also discussed above, the information sought is relevant to Petitioner's attempt to parry Bank Audi's *force majeure* defense.   The second *Intel* factor thus weighs in favor of granting the application.

The third *Intel* factor looks to whether the § 1782 application "conceals an attempt to circumvent  foreign evidence-gathering restrictions."  *Intel*, 542 U.S. at 264-65, 124 S. Ct. at 2483.  Bank Audi argues that Petitioner is trying to do exactly that and pursuing discovery in contravention of Lebanese law.  The Court is not persuaded that that is so

given the competing interpretations of, and opinions offered about, Lebanese law, as well as the potential relevance of the discovery sought to the Lebanese Action.

Bank Audi suggests that Petitioner's real objective is to obtain material to use in the Attachment Proceeding, which is not the type of proceeding that can support a Section 1782 order.   (Opp. Mem. at 12.)   As Judge Broderick observed, if the Attachment Proceeding were the only proceeding at issue, the Court may have declined to grant the application.  (Dkt. 10 at 4.)  Having found that the material sought is being sought for use in the Lebanese Action, however, the Court need not consider that hypothetical scenario.  Moreover, provided the statutory and discretionary criteria are satisfied, as they are here, a Section 1782 application should not be denied merely because the discovery material may have potential other uses by the petitioner. *See In re Accent Delight.*, 869 F.3d at 135 ("Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise").

Bank Audi also argues that Petitioner's subpoenas are an attempt to thwart Lebanese bank secrecy law.  As Judge Broderick determined, those laws do not apply to the Correspondent Banks (being non-Lebanon entities).  (Dkt. 10 at 5-6.)  *See In re Iraq Telecom Ltd.*, 18-MC-458, 2020 WL 1047036, at *2 (S.D.N.Y. March 4, 2020) (Section 1782 application was not an attempt to circumvent Lebanon's bank secrecy law because it "applies only to banks established in Lebanon and banks that are Lebanese branches of foreign banks").

Bank Audi nonetheless argues that the Lebanese court will not be receptive to discovery obtained about Lebanese bank customers to be used in a Lebanese action.

19

That too is not at all clear, particularly as the subpoenas instruct the Correspondent Banks not to disclose customer names or personally identifying information.  Finally, Bank Audi argues that the secrecy law will put it at a disadvantage because even if Petitioner obtains records of Bank Audi transfers to its customers' non-Lebanese accounts, Bank Audi could not openly address the material without violating the Lebanese secrecy law.  Again, that is not at all clear, and if the Lebanese court was otherwise receptive to the subpoenaed material, it potentially could fashion a means to address any potential inequities posed to the parties.

As an additional discretionary consideration, Bank Audi charges Petitioner and his lawyers with lack of candor to the Court about Lebanese law and Bank Audi's *force majeure* defense.  For reasons explained above, the Court does not find that Petitioner or his lawyers misled the Court.

Considering all the *Intel* factors together, the Court finds, in its discretion, sufficient basis to support Petitioner's application and to deny Bank Audi's motion to quash the subpoenas.

## C.      Request Number 4 Should Be Stricken From The Subpoenas

Bank Audi asks that even if the Court does not quash the subpoenas, it modify them to remove the request for documents concerning communications between the Correspondent Banks and Bank Audi about the subpoenas, responses to them, or Judge Broderick's order granting the ex parte application.  Bank Audi challenges the relevance of such material.  Petitioner explains the relevance as potentially revealing interference with his discovery efforts, which is prohibited conduct under Lebanese law and treaties.

The Court agrees that the request at issue should be stricken from each subpoena.  The relevance of that particular request is, as Bank Audi would say, far too attenuated.  It also is speculative and the type of fishing expedition that U.S. discovery rules do not condone.

### Conclusion

For the foregoing reasons, Bank Audi's motion to quash is DENIED; the alternative request for relief is GRANTED; and the Correspondent Banks need not respond to Request No. 4, which is deemed stricken.

SO ORDERED,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: January 26, 2022
       New York, New York