UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

IN RE APPLICATION OF                      :
                                          :
MAJED AMIR AL-ATTABI,                     :
                                          :
For an Order Pursuant to 28 U.S.C. § 1782 to   :   21-MC-207 (VSB) (RWL)
Take Discovery for Use in Foreign Proceedings   :
Pending in the Republic of Lebanon.       :
                                          :
                                          :
------------------------------------- x

**BANK AUDI'S OBJECTIONS TO THE DISTRICT COURT'S MARCH 8 ORDER**

DECHERT LLP
Linda C. Goldstein
Pat Andriola
Three Bryant Park
1095 Avenue of the Americas
New York, New York  10036
(212) 698-3500

*Attorneys for Bank Audi S.A.L.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS .......................................................................................................... 2

    A.   The Lebanese Financial Crisis................................................................................ 2

    B.   Petitioner's Application for Discovery.................................................................... 3

    C.   Petitioner's Opposition to Bank Audi's Previous Motion to Quash ....................... 5

    D.   Bank Audi's Withdrawal of the Defenses that Petitioner Purportedly Seeks
        to Rebut with the Subpoenas ................................................................................. 6

ARGUMENT .............................................................................................................................. 8

I.     IT WAS CLEARLY ERRONEOUS NOT TO QUASH THE SUBPOENAS
      AFTER BANK AUDI WITHDREW ITS DEFENSES BECAUSE THE
      EVIDENCE SOUGHT BY THE SUBPOENAS IS NO LONGER RELEVANT
      TO THE LEBANESE ACTION ............................................................................. 8

II.    IT WAS AN ABUSE OF DISCRETION NOT TO QUASH THE SUBPOENAS
      AFTER BANK AUDI WITHDREW THE DEFENSES THAT THE
      REQUESTED EVIDENCE PURPORTEDLY SOUGHT TO REBUT ....................... 12

III.   THE COURT SHOULD STAY ENFORCEMENT OF THE SUBPOENAS
      PENDING RESOLUTION OF THESE OBJECTIONS ................................................. 15

    A.   Bank Audi Will be Irreparably Harmed Absent a Stay ......................................... 15

    B.   Al-Attabi Will Not Be Substantially Injured by a Stay. ......................................... 17

    C.   A Stay is in the Public Interest. ............................................................................. 17

CONCLUSION ........................................................................................................................... 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*,
  978 F.3d 968 (5th Cir. 2020) ................................................10

*Baxalta Inc. v. Genentech, Inc.*,
  No. 16-MC-80087-EDL, 2016 WL 11529803 (N.D. Cal. Aug. 9, 2016)................12

*Brenntag Int'l Chemicals, Inc. v. Bank of India*,
  175 F.3d 245 (2d Cir. 1999)................................................15

*Chevron Corp. v. Berlinger*,
  629 F.3d 297 (2d Cir. 2011)................................................10

*EM Ltd. v. Republic of Argentina*,
  131 F. App'x 745 (2d Cir. 2005) .........................................18

*Euromepa, S.A. v. R. Esmerian, Inc.*,
  154 F.3d 24 (2d Cir. 1998)................................................5

*In Re Gorsoan Ltd.*,
  435 F. Supp 3d 589 (S.D.N.Y. 2020)........................................5

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004)................................................ *passim*

*Khrapunov v. Prosyankin*,
  931 F.3d 922 (9th Cir. 2019) .........................................9, 13

*Loreley Financing (Jersey) No. 3 Ltd. V. Wells Fargo Securities, LLC*,
  797 F.3d 160 (2d Cir. 2015)................................................11

*Larouche v. Webster*,
  175 F.R.D. 452 (S.D.N.Y. 1996) .........................................8

*Mangouras v. Squire Patton Boggs*,
  740 F. App'x 757 (2d Cir. 2018) .........................................10

*Mangouras v. Squire Patton Boggs*,
  980 F.3d 88 (2d Cir. 2020)................................................9, 13

*Mastafa v. Chevron Corp.*,
  770 F.3d 170 (2d Cir. 2014)................................................11, 12

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015)............................................................................14

*N.A.A.C.P., Inc. v. Town of E. Haven*,
    70 F.3d 219 (2d Cir. 1995)..............................................................................17

*Pablovich v. Rooms to Go Louisiana Corp.*,
    No. CV 20-617, 2021 WL 928030 (E.D. La. Mar. 11, 2021)..................................15

*Really Good Stuff, LLC v. BAP Invs., L.C.*,
    813 F. App'x 39 (2d Cir. 2020) .......................................................................15

*Register.com, Inc. v. Verio, Inc.*,
    356 F.3d 393 (2d Cir. 2004)............................................................................15

*Richardson Greenshields Securities, Inc. v. Lau*,
    825 F.2d 647 (2d Cir. 1987)............................................................................11

*Roell v. Withrow*,
    538 U.S. 580 (2003) ........................................................................................1

*S.E.C. v. Citigroup Glob. Markets Inc.*,
    673 F.3d 158 (2d Cir. 2012)............................................................................17

*Kiobel ex rel. Samkalden v. Cravath, Swaine & Moore LLP*,
    895 F.3d 238 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 852 (2019) .........................12

*In re Schlich*,
    893 F.3d 40 (1st Cir. 2018)..................................................................12, 13, 14

*In re Schlich for Ord. to Take Discovery Pursuant to 28 U.S.C. §1782*,
    No. 16-MC-319 (VSB), 2017 WL 4155405 (S.D.N.Y. Sept. 18, 2017) ...................12

*Shapiro v. Cadman Towers, Inc.*,
    51 F.3d 328 (2d Cir. 1995)..............................................................................15

*In re World Trade Ctr. Disaster Site Litig.*,
    503 F.3d 167 (2d Cir. 2007)............................................................................13

**Statutes and Rules**

28 U.S.C. § 1782 ....................................................................................... *passim*

Fed. R. Civ. P. 60 ..................................................................................7, 9, 10

Fed. R. Civ. P. 72 ..................................................................................1, 8, 15

## PRELIMINARY STATEMENT

Pursuant to Fed. R. Civ. P. 72(a), Bank Audi SAL ("Bank Audi") objects to the District Court's order entered on March 8, 2022 (ECF No. 39) (the "March 8 Order") which denied Bank Audi's renewed motion to quash four subpoenas issued pursuant to 28 U.S.C. § 1782 without even permitting full briefing on the issue.  Bank Audi sought to make the motion because a critical development in the foreign proceeding destroyed the statutory basis for issuing subpoenas to four of Bank Audi's correspondent banks (the "Subpoenas").[1]

On February 25, 2022, one month after this Court issued its January 26 Decision and Order denying most of Bank Audi's previous motion to quash the Subpoenas, *see* ECF No. 34 (the "January 26 Decision"), Bank Audi formally withdrew the defenses it had asserted in the Lebanese breach of contract suit (the "Lebanese Action") for which Majed Amir Al-Attabi (the "Petitioner") had sought discovery.  *See* ECF No. 36-1 ("Withdrawal Notice").  Because the *only* reason Petitioner sought the discovery from Bank Audi's correspondents was to rebut those defenses, their withdrawal vitiated the statutory basis for the Subpoenas: the documents sought are no longer "for use" in the Lebanese Action.  For this reason, and because the record suggests that Petitioner's insistence on getting these documents has more to do with generating adverse publicity for Bank Audi than with proving his claims in the Lebanese Action, the *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) discretionary factors now weigh against

---

[1]   Bank Audi has filed an emergency motion to stay enforcement of the Subpoenas pending an appeal of this action, including the March 8 Order.  These Objections are being filed protectively based on Petitioner's argument that the Second Circuit that the Second Circuit has no appellate jurisdiction in the absence of an objection by Bank Audi to the March 8 Order.  App. Dkt. No. 12-1 at 8.  Bank Audi believes that appellate jurisdiction over the March 8 Order exists even without these Objections, because the parties implicitly agreed that Magistrate Judge Lehrburger could resolve the renewed motion to quash by submitting their pre-motion conference letters to him.  *See Roell v. Withrow*, 538 U.S. 580, 590 (2003) (implied consent where "litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the Magistrate Judge").

granting the § 1782 application.  The Magistrate Judge erred by not granting Bank Audi's renewed request to quash the Subpoenas.

The Magistrate Judge also erred by denying Bank Audi's request to stay enforcement of the Subpoenas.  There is no established procedure for filing documents under seal in the Lebanese Action; as discussed below and in the accompanying Declaration of Chahdan Jebeyli, publication of the information sought by the Subpoenas would create the misleading inference that Bank Audi is flouting Lebanon's *de facto* capital controls and discriminating among its customers, a false narrative that Bank Audi could not rebut because of the restrictions of Lebanon's Bank Secrecy Act.  That false narrative would cause irreparable injury to Bank Audi's reputation and remaining goodwill in Lebanon.[2]

## STATEMENT OF FACTS

The following summary focuses on the facts most pertinent to these objections.

### A.    The Lebanese Financial Crisis

Lebanon's current economic and financial crisis, which began in late 2019, has been described by the World Bank as one of the "most severe crises episodes globally since the mid-nineteenth century."  Jebeyli Decl. ¶ 3.  Lebanon's GDP contracted by 58% from 2019 to 2021. *Id*.  For years, the Lebanese Government has been operating with large trade deficits as well as large fiscal deficits funded by public debt.  Jebeyli Decl. ¶ 4.  According to the World Bank, "more than half the population is likely below the national poverty line."  *Id*.  Violent civil unrest resulted in the complete closure of Bank Audi and Lebanon's other commercial banks for two weeks in late October 2019.  *Id*. ¶ 8.

---

[2]  The Declaration of Chahdan Jebeyli ("Jebeyli Decl.") is attached as Exhibit A to the accompanying Declaration of Linda C. Goldstein.

To address these challenging circumstances, Lebanon's central bank, Banque du Liban ("BdL") restricted international transfers of the U.S. dollar deposits that Lebanese banks, including Bank Audi, hold at BdL. *Id*. ¶ 5. Initially, those restrictions limited international transfers to transactions that further matters of vital national interest, such as financing wheat, medical, and fuel imports. *Id*. More recently, however, the holdings of U.S. dollar deposits at BdL have declined so precipitously that only the most urgent imports can be financed. *Id*.

Following BdL's restrictions on the international transfers of the U.S. dollar deposits that Lebanese banks hold with BdL, on November 17, 2019, the Association of Banks in Lebanon announced that all Lebanese banks would implement restrictions on overseas transfers of foreign currency, with certain exceptions such as trade financing and the payment of urgent personal expenses. *Id*. ¶ 6. Overseas transfers are also permitted for payment of the tuition expenses of Lebanese students studying abroad, pursuant to a law enacted by the Lebanese Parliament. *Id*. Within Lebanon, withdrawals of cash from U.S. dollar accounts are subject to strict weekly limits. *Id*.

Now well into its third year, the economic crisis in Lebanon has intensified. This January, the World Bank reported that the crisis is a threat to Lebanon's "social peace." *Id.* ¶ 3. Throughout the crisis, anti-bank protests have filled the streets of Lebanon, sometimes becoming violent. *Id.* ¶ 8. Protestors have stormed Bank Audi and are reported to have "torched and vandalized" other banks, with dozens of injuries on a single night. *Id.* ¶ 7. Protestors are also reported to have broken into BdL. *Id.* ¶ 9.

### B.   Petitioner's Application for Discovery

Al-Attabi is a citizen of Saudi Arabia. ECF No. 5 ¶ 10. Between April and July 2019, he made two separate term deposits, totaling US$ 4,050,000, into an account at Bank Audi in Lebanon. *Id*. ¶¶ 12–13. The deposits earned interest at the rate of 8% per year. *Id*. After the

deposits matured, Al-Attabi asked Bank Audi to transfer the account balance of US$ 4,302,697, to an account at Mashreq Bank in Dubai, United Arab Emirates.  *Id.* ¶ 15-16, but Bank Audi refused the request.

On February 26, 2021, Petitioner filed an *ex parte* application in this Court for an order permitting him to seek discovery pursuant to 28 U.S.C. § 1782 from the Correspondent Banks. The Subpoenas direct the Correspondent Banks not to produce any documents that "disclos[e] the names or other personally identifying information of any initiating or receiving party, or customer of Bank Audi."  ECF No. 4-1 ¶ 3.  In his *ex parte* § 1782 Application, Petitioner told the Court that he sought the requested discovery for one reason: "to rebut Bank Audi's anticipated defense [in the Lebanese Action] that it lacks sufficient US Liquidity to transfer the Unpaid Balance to the UAE."  ECF No. 3 ("*Ex Parte* Memo of Law") at 11.  Petitioner's Lebanese counsel asserted that information regarding "whether Bank Audi has U.S. dollars in accounts in New York that would establish that Bank Audi has enough liquidity, in freely convertible and transferable United States dollar currency, that would allow it to transfer the Unpaid Balance into Petitioner's Bank [] Account" was needed to rebut "Bank Audi's anticipated defense that it cannot transfer the Unpaid Balance[.]"  ECF No. 5 ¶¶ 37-38. Petitioner insisted that the Subpoenas were "narrowly tailored to seek *only* the information Petitioner needs to debut Bank Audi's anticipated defense that it cannot comply with Petitioner's lawful instruction to transfer the Unpaid Balance to Petitioner's bank account in the UAE."  *Ex Parte* Memo of Law at 16 (emphasis added).

On September 3, 2021, this Court granted the application, finding that Petitioner had met the statutory "for use" requirement of § 1782 by providing evidence that the requested discovery would help him "show[] that Bank Audi has sufficient liquidity to pay Petitioner's claims against

it." ECF No. 10 ("*Ex Parte* Order") at 4.  This Court's opinion was clear that rebuttal of this defense was the *only* way in which the "for use" requirement was met.  In his application, Petitioner had also sought leave to use the requested discovery in a separate attachment proceeding in Lebanon on the ground that "the outcome of that proceeding depends in part upon the merits of Petitioner's claim in the Lebanese Action," while admitting that *In Re Gorsoan Ltd.*, 435 F. Supp 3d 589 (S.D.N.Y. 2020) appeared to foreclose discovery solely for use in a pre-judgment attachment proceeding.  *Ex Parte* Memo of Law at 11-12.  This Court held that Petitioner's desire to "use the discovery as part of a pre-judgment attachment proceeding against Bank Audi" would "likely not satisfy section 1782, as Petitioner does not argue that the pre-judgment attachment proceeding 'an adjudicative proceeding' that decides '[t]he merits of the dispute.'" *Ex Parte* Order at 4 (quoting *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 28 (2d Cir. 1998)).  As such, this Court ordered the discovery based solely on Petitioner's representation that it would be "for use" to him in "support [of] his argument in the foreign litigation that Bank Audi possesses liquidity to pay his claims."  *Id.* at 6.

### C.   Petitioner's Opposition to Bank Audi's Previous Motion to Quash

Bank Audi then moved to quash the Subpoenas.  *See* ECF No. 19.  Bank Audi contended that it was not asserting a U.S. dollar illiquidity defense in the Lebanese Action, but instead was asserting a *force majeure* defense predicated on the ongoing financial and economic crisis in Lebanon.  ECF No. 19 at 6-7; 13-15.  As explained by Bank Audi's Lebanese counsel: "Bank Audi has not asserted that it lacks sufficient liquidity in U.S. dollars to make an overseas transfer.  Instead, it has argued that it is not obligated to carry out this transfer in light of the *force majeure* that led to the unavailability of U.S. dollar banknotes."  ECF No. 21 ¶ 5.[3]

---

3   Bank Audi's Lebanese counsel candidly admitted that he was not aware of any other depositor case in which the *force majeure* defense had been accepted by a Lebanese court, even though it has been asserted many times

Petitioner opposed the motion, contending the requested discovery was "indisputably relevant to Bank Audi's allegation that it lacks the U.S. dollar currency to transfer Petitioner's funds to the UAE." ECF No. 27 at 13. *See also id*. at 3 (arguing that the "requested discovery is narrowly-tailored to test" whether Bank Audi could "transfer Petitioner's $4.3 million to the UAE because it lacks adequate U.S. dollar currency.").

The Motion to Quash was then referred to the Magistrate Judge, who on January 26, 2022, ruled on Bank Audi's initial motion to quash. *See* January 26 Decision. The Court held that the statutory "for use" element of § 1782 was satisfied because, "[t]he discovery sought is relevant to Bank Audi's *force majeure* defense." *Id*. at 14. Likewise, the Court held that the discretionary factors outlined by the Supreme Court in *Intel* weighed in favor of the discovery sought, in part because "the information sought is relevant to Petitioner's attempt to parry Bank Audi's *force majeure* defense." January 26 Decision at 18.[4] The Magistrate Judge endorsed this Court's "acknowledge[ment] that the Attachment Proceeding alone likely would not suffice to satisfy the use element because it is not 'adjudicative' in nature." *Id*. at 6 n.4.

### D.   Bank Audi's Withdrawal of the Defenses that Petitioner Purportedly Seeks to Rebut with the Subpoenas

After the January 26 Decision was issued, Bank Audi formally withdrew its *force majeure* and U.S. dollar illiquidity defenses in the Lebanese Action. *See* Withdrawal Notice. The Withdrawal Notice states that Bank Audi "has retracted what it invoked with respect to the force majeure, and asks your honorable Court not to take such defense into consideration wherever it is mentioned. The defendant bank announces that force majeure is of no relevance to

---

during the financial crisis. ECF No. 31 ¶¶ 4-5. This fact, which Petitioner does not contest, shows that Petitioner never had a genuine need for the subpoenaed information to rebut the *force majeure* defense.

[4]   The Court struck Request Number 4 from the Subpoenas, in which Petitioner had sought documents concerning communications between the Correspondence Banks and Bank Audi about the Subpoenas, on the ground that it was "the type of fishing expedition that U.S. discovery rules do not condone." January 26 Decision at 21.

the present case, and Bank Audi SAL will not again raise force majeure nor present evidence in support of that former defense." *Id*. The Withdrawal Notice also renounces the defense of U.S. dollar illiquidity. *Id*. The sole basis on which the Petition had been granted—to rebut a *force majeure* or illiquidity defense by Bank Audi—was thus eliminated. After the withdrawal, Bank Audi's remaining defenses in the Lebanese Action are that (1) under Lebanese law, Bank Audi is not required to make an overseas transfer of funds unless the account documents expressly refer to such service; and (2) Petitioner improperly invoked the 1967 and 1971 treaties between Lebanon and the Kingdom of Saudi Arabia, as those treaties are only enforceable by the signatory States, and not private citizens. ECF No. 21 ¶ 4.

Bank Audi then filed a pre-motion conference letter addressed to the Magistrate Judge on February 25, 2022 (ECF No. 35), which requested leave to file a renewed motion to quash, and attached a Lebanese-language version of the Withdrawal Notice (ECF No. 35-1), followed by a certified English translation of the Withdrawal Notice (ECF No. 36-1). Petitioner responded with a letter addressed to the Magistrate Judge on March 2, 2022 (ECF No. 37). The letter raised, for the first time in this litigation, other defenses in the Lebanese Action that the subpoenaed information purportedly was needed to rebut. ECF No. 37 at 3.

The Court held a telephone conference on March 8, 2022, and summarily denied the motion without full briefing, ruling that it was governed by Fed. R. Civ. P. 60(b) and that vacatur was not available under that rule because withdrawal of the force majeure defense was "controlled and created" by Bank Audi. *See* March 8 Order. Bank Audi's counsel sought an opportunity to submit a formal response to address Bank Audi's willingness to withdraw another defense that the Magistrate Judge believed could support the "for use" requirement of § 1782,

but the Magistrate Judge denied that request.  ECF No. 41 at 15:3-20.  Bank Audi then moved to

stay the Court's decision pending appeal; that request was also denied.  *Id*. at 15:22-16:20.

On March 14, 2022, Bank Audi filed a notice of appeal.  ECF No. 42.  That same day,

Bank Audi filed an emergency motion to stay execution of the Subpoenas pending resolution of

the appeal.  Declaration of Linda Goldstein ("Goldstein Dec.") ¶ 3.  On March 22, 2022,

Petitioner filed its opposition to Bank Audi's emergency motion arguing, among other things,

that the Second Circuit lacked jurisdiction over the appeal because Bank Audi had not filed

objections to the March 8 Order.  *Id*.  The emergency motion is currently noticed for April 1,

2022.  *Id*.

## ARGUMENT

This Court reviews objections under Fed. R. Civ. P 72(a) for clear error.  *See Larouche v.

Webster*, 175 F.R.D. 452, 454 (S.D.N.Y. 1996) (finding magistrate's decision to be clearly

erroneous).  The March 8 Order is clearly erroneous because the withdrawal of Bank Audi's

*force majeure*/illiquidity defense means that the evidence sought in this § 1782 petitioner no

longer has any relevance to the Lebanese Action.  There is no longer any statutory basis for the

Subpoenas.  The Magistrate Judge should have quashed the Subpoenas for this reason, or in the

proper exercise of this Court's discretion under *Intel*.

**I.      It Was Clearly Erroneous Not to Quash the Subpoenas After Bank Audi
         Withdrew Its Defenses Because the Evidence Sought by the Subpoenas Is
         No Longer Relevant to the Lebanese Action**

In urging that his requested discovery was "for use" in a foreign proceeding, Al-Attabi

claimed only that the discovery is needed to rebut Bank Audi's defense that it "lacks sufficient

US Liquidity to transfer the Unpaid Balance to the UAE."  ECF No. 3 at 11.  This Court held

that Bank Audi's *force majeure* defense was such a defense because it "can be readily framed as

Bank Audi's not having access to sufficient U.S. dollars that it can send overseas due to the

financial crisis." January 26 Order at 15.  As a result, this Court concluded that Petitioner "satisfied the requirement that the discovery he seeks from the Correspondent Banks is 'for use' in the Lebanese Action." *Id*. at 17.

But when Bank Audi withdrew its *force majeure* defense, as well as any defense based on U.S. dollar illiquidity, *see* ECF No. 36-1, this ground "for use" of the requested discovery evaporated, depriving the District Court of jurisdiction to issue the subpoenas.  The Magistrate Judge was obligated to dismiss Petitioner's § 1782 application in light of this procedural development.  *See Khrapunov v. Prosyankin*, 931 F.3d 922, 925 (9th Cir. 2019) (remanding an appeal of the grant of a § 1782 application so that the district court could conduct "some additional fact-finding about the nature of the English 'proceeding'" for which discovery was sought, in light of later procedural developments in that proceeding); *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 102 (2d Cir. 2020) (holding that on remand from an appeal from a grant of a § 1782 petition, the "the district court must deny the § 1782 application as moot in light of the fact that the [foreign] proceedings have either terminated or will not occur").

In denying Bank Audi's renewed motion to quash, the Magistrate Judge made two fatal errors of law.

*First*, the Magistrate Judge erred by applying the Fed. R. Civ. P. 60 standard for vacatur. *See* March 8 Order.  Rule 60 applies only when a party seeks to vacate a "final" judgment or order.  As emphasized by the Federal Rules Advisory Committee, "interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires."  Notes of Advisory Committee on Rules—1946 Amendment.  The January 26 Order, like most discovery orders, was interlocutory because the District Court had not yet completed its work on the

matter.  In addition to Bank Audi's renewed motion to quash, Petitioner's counsel stated her intent to seek entry of a protective order *after* the March 8 hearing.  ECF No. 41 at 17:5-19.  The *Ex Parte* Order also expressly contemplated that there might be additional motion practice by the correspondent banks.  *See Ex Parte* Order at 7.

To be sure, many orders granting discovery under section 1782 may be treated as "final" orders.  *See Chevron Corp. v. Berlinger*, 629 F.3d 297, 306 (2d Cir. 2011).  But a section 1782 order is not considered "final" when, as here, there are continued proceedings in the district court.  For example, in *Mangouras v. Squire Patton Boggs*, respondents appealed from the grant of a 1782 petition.  740 F. App'x 757, 758 (2d Cir. 2018).  The petitioner-appellee argued that the decision was not yet final because the district court had continued to deal with "unresolved U.S. privilege issues."  *Id*.  The Second Circuit found this argument had merit because the decision "did not conclude all proceedings relating to his application" and remanded the case so that the District Court could either "complete the discovery proceedings before entry of a final judgment" or enter an order certifying a portion of its ruling as final under to Rule 54(b).  *Id*.  Even more on point, the Fifth Circuit dismissed an appeal from the grant of a § 1782 petition when the respondent had filed a second motion to quash the subpoena after filing its notice of appeal.  *Banca Pueyo SA v. Lone Star Fund IX (US), L.P.*, 978 F.3d 968, 971 (5th Cir. 2020).  The court held that the order granting the petition would not be final until "the district court fully resolves the second motion to quash."  *Id*. at 974.  It was plain error for the Magistrate Judge to apply the Rule 60 standard to Bank Audi's motion, since the January 26 Order was not "final."

*Second*, this Court erred by refusing to give Bank Audi an opportunity to provide evidence clarifying the nature of Bank Audi's remaining defenses in the Lebanese Action.  In response to Bank Audi's pre-motion conference letter before the District Court, Al-Attabi

raised—*for the first time*—other defenses that he claimed the requested discovery might rebut. ECF No. 38 at 3. At the telephonic hearing, the District Court inquired about two of these new "uses" for the subpoenaed information. ECF No. 41 5:17-6:8. As Bank Audi's counsel explained at the March 8 Hearing, the first defense was a pure issue of law. *Id.* 6:17-25. On the second defense (the "objective of equality" among depositors), Bank Audi's counsel informed this Court that it wished to speak with their client about "withdraw[ing] that defense." *Id.* 15:3-10.

The Court denied Bank Audi's motion without permitting clarification of this issue. The Magistrate Judge's decision to rule on a proposed motion to quash pursuant to Fed. R. Civ. P. 45 based solely on the parties' pre-motion conference letters ran afoul of well-established Second Circuit precedent, which does not countenance the use of pre-motion conferences to curtail parties' rights to file "pleadings, motions or appeals authorized by the Federal Rules of Civil Procedure." *See Richardson Greenshields Securities, Inc. v. Lau*, 825 F.2d 647, 652 (2d Cir. 1987); *see also Loreley Financing (Jersey) No. 3 Ltd. V. Wells Fargo Securities, LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (noting the "impropriety" of using pre-motion conferences to preclude the filing of motions seeking leave to amend). Bank Audi was prejudiced by the Magistrate Judge's hasty action, because it was unable to clarify (as it has now done in paragraph 18 of the Jebeyli Decl.), its intent to withdraw the "objective of equality" defense.

The Magistrate Judge's error was compounded by the fact that District Courts have a "continuing obligation to ensure [their] own jurisdiction." *Mastafa v. Chevron Corp.*, 770 F.3d 170, 187 (2d Cir. 2014). By denying Bank Audi even the opportunity to respond to Al-Attabi's attempt to contrive a new "use" for the subpoenaed information in the Lebanese Action, the

District Court shirked its "continuing obligation to ensure its own jurisdiction." *Mastafa*, 770 F.3d at 187.

## II.   It Was an Abuse of Discretion Not to Quash the Subpoenas After Bank Audi Withdrew the Defenses that the Requested Evidence Purportedly Sought to Rebut

Even if this Court were to find that the statutory prerequisites for the Subpoenas are still met, it was an abuse of discretion not to quash them under *Intel Corp. v. Advanced Micro Devices, Inc*. "[T]here is nothing that prevents district courts from considering relevancy under the discretionary *Intel* factors. . . ." *In re Schlich*, 893 F.3d 40, 52 (1st Cir. 2018). Courts generally consider the relevance (or irrelevance) of requested discovery under *Intel* factors. *In re Schlich for Ord. to Take Discovery Pursuant to 28 U.S.C. §1782*, No. 16-MC-319 (VSB), 2017 WL 4155405, at *6 (S.D.N.Y. Sept. 18, 2017). But the irrelevance of the evidence sought by the Subpoenas is grounds for a discretionary denial of discovery even if it did not fit squarely into any of the enumerated *Intel* factors. "The *Intel* factors are not to be applied mechanically. A district court should also take into account *any other pertinent issues arising from the facts of the particular dispute*." *Kiobel ex rel. Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018) (emphasis added), *cert. denied*, 139 S. Ct. 852 (2019). The complete withdrawal of the defense that the requested evidence sought to rebut is just such a "pertinent issue." This Court has not hesitated to use its discretion to deny discovery of "irrelevant materials" under the *Intel* factors. *In re Schlich*, No. 16-MC-319 (VSB) at *7 (S.D.N.Y. Sept. 18, 2017). *See also Baxalta Inc. v. Genentech, Inc.*, No. 16-MC-80087-EDL, 2016 WL 11529803, at *6 (N.D. Cal. Aug. 9, 2016) (quashing subpoenas because requested discovery would "be irrelevant to the issues before the [foreign] court, and the [foreign] court is highly unlikely to be receptive to irrelevant evidence").

Petitioner has repeatedly had the opportunity to raise ways in which the requested discovery might be relevant to the Lebanese Action, and the only ground he has asserted is the rebuttal of Bank Audi's defenses of *force majeure* and U.S. dollar illiquidity. *See Ex Parte* Memo of Law at 11-12; ECF No. 27 at 13; ECF No. 5 ¶¶ 37-38. Those defenses are no longer asserted in the Lebanese Action, a factor that the Magistrate Judge should have considered in an exercise of discretion. *See Mangouras*, 980 F.3d at 102 (directing district court to "reevaluat[e] the discretionary factors" after taking the new developments into account); *Khrapunov*, 931 F.3d at 926 (stating that "developments in the [foreign proceeding] are relevant to the discretionary factors courts consider when evaluating § 1782 applications ... On remand, it may be appropriate for the district court to reevaluate these discretionary factors, as well, in deciding whether discovery remains appropriate in this case.").

As discussed above in Section I, Petitioner's response to Bank Audi's pre-motion conference letter raised, for the first time in this litigation, other "defenses" that the subpoenaed information might rebut. ECF No. 38 at 3. For the same reasons discussed above, these new "defenses" either (1) are not affected by Petitioner's requested discovery or (2) if so, will be withdrawn by Bank Audi. But even if they did bear some attenuated relationship to the Lebanese Action, it still was an abuse of discretion not to quash the Subpoenas. "[W]hen a discovery request is sufficiently relevant to be deemed 'for use' in a foreign proceeding, there is nothing that prevents district courts from considering relevancy under the discretionary *Intel* factors, including the second factor." *In re Schlich*, 893 F.3d 40, 52 (1st Cir. 2018). Indeed, a "request that appears only marginally relevant to the foreign proceeding may in certain cases suggest that the application is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials, which would be grounds for a discretionary denial of

discovery." *Mees v. Buiter*, 793 F.3d 291, 299 n.10 (2d Cir. 2015) (citations and quotations omitted). Therefore, "[w]here the information sought is only marginally relevant, the district court may decide to exercise its discretion to exclude the evidence because other concerns outweigh the need for the discovery." *In re Schlich*, 893 F.3d at 52. This is why courts—including this Court—have denied § 1782 discovery requests upon finding the requested discovery was only marginally relevant to the foreign proceeding, even if it barely met the statutory 'for use' test. *See, e.g., In re Schlich*, No. 16-MC-319, at *7 (quoting *Mees* and finding any relevance of requested discovery to be "only 'marginally relevant' such that it seeks 'unreasonably cumulative or irrelevant materials' and thus find grounds for discretionary denial").

Here, there is ample evidence that the continued pursuit of the Subpoenas notwithstanding Bank Audi's withdrawal of its *force majeure* defense, and its stated willingness to consider withdrawing another defense, is made in "bad faith" or "for the purpose of harassment." As discussed in greater detail below in Section III, publication of the anonymized transfer data sought in the Subpoenas would give rise to the misleading inference that Bank Audi is flouting Lebanon's *de facto* capital controls or discriminating among its customers, which would cause it irreparable reputational injury. Bank Audi could not counter that misleading inference by pointing to the permitted purposes of those transfers under Lebanon's *de facto* capital controls because of its statutory obligations to maintain the privacy of its customers' information under Lebanon's Bank Secrecy Act. Jebeyli Dec. ¶ 14.

Creating that false narrative appears to be Petitioner's primary goal, since his counsel has proposed protective orders that lay bare his purpose to publicize any information filed in the Lebanese Action. *See* Goldstein Dec. Ex. B ¶ 2(i) (containing an unusual provision authorizing

disclosure of papers filed with the Lebanese court to anyone "authorized under Lebanese law to have access to such records"); Goldstein Dec. Ex. D ¶ 4 (striking proposed provision requiring use of "best efforts" to file documents under seal in Lebanon, without any proposed alternative). Given the immense reputational harm that would be caused if the subpoenaed information were publicly filed in Lebanon, and its attenuated relevance to the Lebanese Action after Bank Audi's withdrawal (or stated intent to withdraw) the defenses to which it is purportedly relevant, it was an abuse of discretion not to quash the Subpoenas under *Intel*'s discretionary factors.

## III. The Court Should Stay Enforcement of the Subpoenas Pending Resolution of these Objections

"In considering whether to stay a magistrate judge's order pending Rule 72 objections, courts typically apply the same four-factor test used for a stay pending appeal." *Pablovich v. Rooms to Go Louisiana Corp.*, No. CV 20-617, 2021 WL 928030, at *2 (E.D. La. Mar. 11, 2021). Because these factors weigh toward Bank Audi, the Court should stay the enforcement of the Subpoenas.[5]

### A. Bank Audi Will be Irreparably Harmed Absent a Stay

Irreparable harm arises "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (affirming order granting preliminary injunction). The Second Circuit has recognized that "loss of reputation, good will, and business opportunities" constitute irreparable harm. *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004). *See also Really Good Stuff, LLC v. BAP Invs., L.C.*, 813 F. App'x 39, 44 (2d Cir. 2020) ("The loss of reputation and

---

[5] Bank Audi is likely to succeed on the merits of these Objections for the reasons discussed above in Sections I and II.

goodwill constitutes irreparable harm."). Of course, physical harm is also irreparable injury. *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 333 (2d Cir. 1995). Here, the incendiary impact of any public disclosure of the subpoenaed information in the context of Lebanon's ongoing financial crisis means that Bank Audi will be irreparably harmed absent a stay.

To begin, unlike in U.S. courts, under Lebanese law there is no mechanism to seal documents filed with the Lebanese court in the Lebanese Action. Ex. A ¶ 12. As a result, it is a near certainty that the subpoenaed information will become public as soon as Al-Attabi files it in the Lebanese Action (if not before). The Lebanese press has been highly critical of the entire Lebanese banking sector, including Bank Audi. *Id*. ¶ 13. It will undoubtedly sensationalize this information, giving rise to the incorrect inference that Bank Audi has been flouting Lebanon's *de facto* capital controls and discriminating among its depositors. *Id*. What is worse, the transfers' compliance with Lebanon's *de facto* capital controls will not be evident from the face of the documents (since the subpoenas do not call for the production of names or other identifying information) and Bank Audi will be unable to explain their purpose, since it is constrained by Lebanon's Bank Secrecy law to refrain from discussing the information of its customers. *Id*. ¶ 14.

The damage to Bank Audi's reputation resulting from such disclosure is incapable of calculation and cannot be remedied. *Id*. ¶ 16. No other bank in Lebanon has been subject to public disclosure of the number of overseas transfers it has made since the beginning of the financial crisis, or their amounts. *Id*. ¶ 14. Thus, any disclosure of the subpoenaed documents will unfairly disadvantage Bank Audi. *Id*. ¶ 18.

The risks are not only to Bank Audi's goodwill and business reputation; it is no exaggeration to say that Bank Audi personnel may be threatened by disclosure of the subpoenaed

information.  *Id*. ¶ 17. The entire Lebanese banking sector had to close down for two weeks in the fall of 2019 because of violent attacks against bank branches.  *Id*. ¶ 8.  Protestors have sought to storm Bank Audi's main office.  *Id*. ¶ 9.  Lebanese Swiss Bank personnel were endangered by violent protests just last year.  *Id*.  At a minimum, employee morale, already low, could only worsen, accelerating the "brain drain" of Lebanese professionals.  *Id*. ¶ 17.  Such harm is the kind of irreparable injury that can and should be prevented by this Court's exercise of its equitable authority to stay enforcement of the subpoenas while considering these objections.

### B.  Al-Attabi Will Not Be Substantially Injured by a Stay.

"The third factor to be considered is whether issuance of the stay will substantially injure other persons interested in the proceeding."  *S.E.C. v. Citigroup Glob. Markets Inc.*, 673 F.3d 158, 168 (2d Cir. 2012).  Here, a stay pending appeal would not substantially injure Al-Attabi.

Al-Attabi thus has ample time to submit further evidence in the Lebanese Action, which does not have another hearing until June 2, 2022.  Al-Attabi makes no claim that transfer to his U.A.E. account is needed to meet urgent personal expenses; rather, he wants to gain priority over Bank Audi's other depositors for the bank's limited supply of foreign currency.  This is not an interest that merits any protection by this Court.

### C.  A Stay is in the Public Interest.

A stay is also in "the public interest."  *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007).  If misleading information about Bank Audi's actions during the financial crisis were to become public, an already volatile environment in Lebanon would become more so; the public interest would be served by avoiding that result.  *See N.A.A.C.P., Inc. v. Town of E. Haven*, 70 F.3d 219, 224 (2d Cir. 1995) (describing this prong as a "public safety" factor).  Moreover, facilitating the transfer of Lebanon's dwindling supply of foreign currency to the U.A.E. bank account of a Saudi Arabian singer could only worsen economic

conditions in Lebanon, where over half of the population now lives below the poverty line.  Ex.

A. ¶ 3.  The Second Circuit has expressly held that "the economic health of a nation" is an

appropriate consideration for courts weighing equitable relief such as the stay sought here.  *EM*

*Ltd. v. Republic of Argentina*, 131 F. App'x 745, 747 (2d Cir. 2005) (affirming vacatur of

injunction that would have interfered with Argentina's restructuring of its sovereign debt).

## CONCLUSION

The sole basis for Petitioner's requested discovery was to parry Bank Audi's defenses of

*force majeure* and U.S. dollar illiquidity in the Lebanese Action.  Bank Audi has now withdrawn

those defenses, and will not reassert them in the Lebanese Action.  Likewise, it will withdraw the

"objective of equality" defense in order to preclude discovery and disclosure of the subpoenaed

information.  Under these circumstances, the Magistrate Judge should have re-evaluated the

statutory and discretionary factors relevant to § 1782.  He did not.  Therefore, because

Petitioner's application lacks one of the required statutory elements of 28 U.S.C. § 1782 ("for

use"), and because the *Intel* factors weigh against granting Petitioner his requested discovery,

this Court should sustain these objections, and the Subpoenas should be quashed in their entirety.

Likewise, enforcement of the Subpoenas should be stayed pending resolution of these objections.


Dated: New York, New York            Respectfully submitted,
      March 22, 2022

                                       DECHERT LLP

                        By: /s/  *Linda C. Goldstein*
                                       Linda C. Goldstein
                                       Pat Andriola
                                       Three Bryant Park
                                       1095 Avenue of the Americas
                                       New York, New York  10036
                                       (212) 698-3500

                                       *Attorneys for Bank Audi SAL*