# FLEISCHMAN BONNER & ROCCO LLP
## ATTORNEYS AT LAW

81 MAIN STREET • SUITE 515 • WHITE PLAINS • NEW YORK • 10601
TEL: 917-583-8966 • FAX: 908-516-2049 • WEB: WWW.FBRLLP.COM          EMAIL: SDavies@fbrllp.com

May 18, 2022

**Via ECF**

By May 24, 2022, the parties shall email Word document versions of their proposed protective orders to BroderickNYSDChambers@nysd.uscourts.gov. The Clerk of Court is respectfully directed to close the open motion at docket number 52.

SO ORDERED: 05/23/22

*Vernon Broderick* (signature)
HON. VERNON S. BRODERICK
UNITED STATES DISTRICT JUDGE

The Honorable Vernon S. Broderick
United States District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York  10007

Re:  *In re Ex Parte Application of Majed Amir Al-Attabi for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery for use in Foreign Proceedings Pending in the Republic of Lebanon*, **1:21-mc-00207-VSB-RWL**

Dear Judge Broderick:

Pursuant to Rule 3 of the Court's Individual Practices in Civil Cases, Petitioner Majed Amir Al-Attabi and Intervenor Bank Audi S.A.L. submit this joint letter concerning their dispute with respect to the terms of a protective order to govern the treatment of the certain records Petitioner has subpoenaed from BNY Mellon, N.A./The Bank of New York Mellon, Citibank, N.A., Standard Chartered Bank, and JPMorgan Chase Bank & Co. (collectively, the "N.Y. Banks") pursuant to this Court's September 3, 2021 order (ECF 10) granting Petitioner's above-captioned application for discovery pursuant to 28 U.S.C. §1782.

Petitioner seeks production by the N.Y. Banks of:  (1) the periodic account statements they provided to their customer Bank Audi between October 17, 2019 and the present; and (2) records reflecting all U.S. dollar wire transfers, electronic funds transfers, automated clearing house transfers, or checking transactions made during the same period through or using Bank Audi's correspondent account at each of the N.Y. Banks.  *See* ECF 4-1 at p. 4, ¶¶ 1-2.  Petitioner explicitly does not seek the names or account numbers of the transferors and transferees for whose benefit the U.S. dollar transfers were made, but does seek documents sufficient to identify the geographic location of the bank accounts of those transferors and transferees.  *See id*. at p.5, ¶ 3.

**Petitioner and Intervenor Have Met and Conferred**

On March 9, 2022, the undersigned counsel for Petitioner and Bank Audi conferred by telephone concerning the terms of a protective order.  Counsel subsequently exchanged drafts of a proposed protective order via emails on March 16 and 17, 2022.  On March 29, 2022, counsel for Bank Audi provided a further revised draft to Petitioner's counsel.  On May 10, 2022, Petitioner's counsel emailed Petitioner's proposed protective order to counsel for Bank Audi, writing that Bank Audi's counsel had 72 hours under this Court's Local Rules to provide its position for this joint letter.  Petitioner's proposed protective order was the first to include procedures for designating any of the "Subpoenaed Information" as "Confidential Information."  *See, e.g.*, ECF No. 44-4 (Petitioner's Proposed Protective Order as of March 17, 2022).  Counsel have been unable to reach agreement on the terms of an appropriate protective order and have agreed to present to the Court their respective proposed orders.  Petitioner's proposed protective order is annexed hereto as **Exhibit 1**.  Bank Audi's proposed protective order is annexed hereto as **Exhibit 2**.  A comparison of Exhibits 1 and 2 is annexed hereto as **Exhibit 3**.



The Honorable Vernon S. Broderick
May 18, 2022
Page 2

For the reasons set forth below, Petitioner now seeks entry of a protective order as soon as possible.

**<u>Petitioner's Proposed Protective Order</u> (Exhibit 1)**

Petitioner's proposed order provides for any discovery material designated "confidential" ("Confidential Information") to be filed in this Court under seal. *See* Ex. 1 at ¶ 5. However, as there is no mechanism for filing documents under seal in Lebanese courts (*see* ECF 44-1 (Declaration of Bank Audi's Chief Legal Officer) at ¶ 12), Petitioner's proposed order contemplates that "to the extent that Confidential Information becomes part of, or is reflected in, records of the Lebanon Courts," any person authorized under Lebanese law [will be permitted] to have access to such records." *See* Ex. 1 at ¶ 3(h). As a practical matter, it is unlikely that any of the records produced by the N.Y. Banks will constitute Confidential Information because, as explained above, Petitioner has requested that the N.Y. Banks redact the names and account numbers of all transferors and transferees. In the event that any of the N.Y. Banks fails to redact the records as requested, Petitioner will redact all account names and numbers before filing any such records in the Lebanon Courts.

Without any evidentiary basis, Bank Audi has falsely accused Petitioner of intending to publicize the discovery from the N.Y. Banks in the Lebanese press in an effort to embarrass Bank Audi and/or precipitate civil unrest in Lebanon. *See, e.g.*, ECF 44-1 at ¶¶ 12-16. Petitioner's proposed order explicitly precludes Petitioner, or anyone else, from using any of the discovery—even the anonymized, non-confidential records—"for any purpose other than proving or rebutting any claim, issue, argument, or defense raised in any of the Related Lebanon Proceedings." *See* Ex. 1 at ¶ 1.

Petitioner respectfully submits that Intervenor Bank Audi's objections to the terms of Petitioner's proposed order are a frivolous continuation of its scorched-efforts to thwart Petitioner's access to the discovery that this Court granted to Petitioner on September 3, 2021. As a preliminary matter, having twice moved to quash Petitioner's subpoenas without ever suggesting that the subpoenaed records—requested in anonymized form—will reflect Bank Audi's trade secrets or other confidential research, development, or commercial information entitled to protection under Rule 26(c), Bank Audi has waived any right to be heard with respect to the appropriate terms of a protective order. Bank Audi's assertion that Lebanese law requires it to intervene in this proceeding "to protect the confidentiality of its customers' information" is simply false. *See* Ex. 2 at p.1. As this Court has already found, Lebanon's bank secrecy law prevents **Lebanese banks** from disclosing their customer's secrets—it has no application to the N.Y. Banks, or to the Petitioner. *See* ECF 10 at 5-6. In any event, Lebanon's Law of September 3, 1956 on Banking Secrecy precludes Lebanese banks from disclosing information about their "clients' names, funds, or personal matters" without authorization. *See* ECF 28-2 at Article 2. As previously noted, Petitioner's subpoenas seek anonymized information that will not identify any of Bank Audi's clients.

Petitioner specifically objects to the following provisions of Bank Audi's proposed protective order (Exhibit 2). Paragraph 4 (which would preclude Petitioner from submitting any discovery to a Lebanon Court without first seeking an order from that court *directing itself* to retain the discovery *in a locked safe*) would constitute improper interference by this Court in the



The Honorable Vernon S. Broderick
May 18, 2022
Page 3

procedures of a foreign tribunal. Furthermore, the order that Paragraph 4 requires Petitioner to seek is not one that a Lebanon Court could issue. As Bank Audi's Chief Legal Officer has admitted, there is "no mechanism to file documents under seal in Lebanese civil procedure." *See* ECF 44-1 at ¶ 12. Thus, Paragraph 4 of Bank Audi's proposed order is simply another attempt by a vexatious adversary to thwart and/or delay Petitioner's efforts to prosecute his claims.

The following paragraphs of Bank Audi's proposed order are unnecessary and will needlessly increase the cost of the litigation: (1) paragraphs 2(b) and (c) (which would require the parties' legal counsel (including paralegals and other personnel) to individually execute Confidentiality Agreements prior to receiving the discovery); (2) paragraph 3(a) (which would require Petitioner to translate the order and Confidentiality Agreement into Arabic before any need for such translations has been determined); and (3) paragraph 3(b) (which would require U.S. Counsel's ongoing involvement in the Lebanese litigation as custodians of all executed Confidentiality Agreements).

**Bank Audi's Proposed Protective Order**

Bank Audi requests entry of a protective order in the form annexed as **Exhibit 2 ("Bank Audi PPO")**. Petitioner's proposed protective order ("Petitioner's PPO") allows for the public filing of redacted and misleading banking information that will have an incendiary impact in Lebanon, a country that is in the throes of a severe financial crisis. By effectively allowing for the public dissemination of *all* of the information to be produced by the N.Y. Banks, the PPO threatens grave harm to Bank Audi and its personnel that could be avoided by an appropriate protective order tailored to permit legitimate use of that information in the Lebanese Proceedings while giving the Lebanese Court the opportunity to determine whether the information should be subject to public dissemination.

Specifically, the subpoenas call for the production of records reflecting all U.S. dollar transfers made since the beginning of Lebanon's financial crisis in October 2019 through Bank Audi's correspondent accounts at the N.Y. Banks. *See* ECF 4-1, Request Nos. 2-3. As described in the Declaration of Chahdan Jebeyli (ECF No. 44-1), submitted with Bank Audi's Objections, public dissemination of this information in Lebanon would cause irreparable injury to Bank Audi. Since late 2019, as a result of Lebanon's ongoing financial crisis, all Lebanese banks have been operating under a system of *de facto* capital controls that restrict overseas transfers of foreign currency, with certain exceptions, such as for trade financing and the payment of urgent personal expenses. *Id*. ¶ 6. The Lebanese press has been highly critical of the entire Lebanese banking sector, *id*. ¶¶ 7-9, including by publishing speculation that "billions of U.S. dollars have reportedly been transferred abroad by influential politicians and businessmen before and during the crisis, despite the restrictions."[1] Lebanon has a strict bank secrecy law that precludes disclosure of customer banking information even to government authorities; as a result, no bank in Lebanon has been subject to public disclosure of the number or amounts of overseas transfers it has made since the beginning of the financial crisis. *Id*. ¶ 13. If the Subpoenaed Information is publicly filed in Lebanon, the Lebanese press will undoubtedly seize upon it and assert (inaccurately) that Bank

---

[1] Dalal Saoud, *Depositors turn to courts to free money from Lebanese banks*, (Dec. 21, 2021), https://www.upi.com/Top_News/World-News/2021/12/21/lebanon-Lebanon-frozen-bank-accounts-lawsuits/5221640106629/



Audi has violated Lebanon's *de facto* capital controls and played favorites among its customers. *Id*. Because the subpoenas do not call for the production of customer names or other identifying information about the transfers, the inaccuracy of those inferences will not be evident from the face of the Subpoenaed Information. And Bank Audi will be unable provide those corrective details since it is a criminal violation of Lebanon's bank secrecy law for Bank Audi to disclose the banking information of its other customers. *Id*. ¶¶ 14-15. The resulting harm to Bank Audi's reputation and its personnel are incalculable, but immense. *Id*. ¶¶ 15-16.

Petitioner's PPO does nothing to mitigate these concerns, but rather makes clear that he intends to exploit Lebanon's lack of established procedures for filing documents under seal in order to embarrass Bank Audi. To the extent the Court overrules Bank Audi's pending Objections and any documents are produced at all, the documents should be produced pursuant to Bank Audi's PPO. We address below the principal differences between the two proposals:

1. Bank Audi's PPO requires the parties to jointly seek an order from the Lebanese Court that any Subpoenaed Information submitted in the Lebanon Proceedings be filed *in camera* and maintained by the Lebanese Court in a locked safe. Bank Audi PPO ¶ 4. This precaution is necessary because Lebanese courts have no procedures to file documents under seal, or to segregate sensitive documents from courthouse personnel not working on a matter. Petitioner does not and cannot claim that he would be prejudiced by this provision; instead, he claims it "would constitute improper interference by this Court in the procedures of a foreign tribunal." But Paragraph 4 requires only that the parties "seek to obtain" such an order; it does not direct the Lebanese Court to do anything at all. Other district courts have not hesitated to direct parties to jointly move for a protective order in a foreign jurisdiction when granting a § 1782 petition. *See, e.g., Siemens AG v. W. Digital Corp.*, No. 8:13-cv-01407-CAS-(AJWx), 2013 WL 5947973, at *6 (C.D. Cal. Nov. 4, 2013) (court "direct[ed] the parties to jointly seek a protective order" in German patent court).

2. Petitioner's PPO does not impose any procedural limitations on use or disclosure of the Subpoenaed Information, but only on a defined category of "Confidential Information." Petitioner's PPO ¶¶ 2-6. "Confidential Information" is confined to trade secrets, personal information such as social security numbers or financial account numbers, and the names of children and third-parties. *Id*. ¶¶ 2(a)-(d). But this is information *explicitly not sought by the Subpoenas*. *See* ECF No. 4-1, Request No. 3. Indeed, Petitioner admits that "[a]s a practical matter, it is unlikely that any of the [Subpoenaed Information] will constitute Confidential Information." Thus, the limited protections of Petitioner's PPO are completely illusory because they do not apply to any of the Subpoenaed Information. By contrast, Bank Audi's PPO applies to *all* of the Subpoenaed Information, since it is all sensitive banking information, even as anonymized.

3. Bank Audi's PPO appropriately limits who will have access to the Subpoenaed Information to employees of U.S. and Lebanese counsel who are "actually engaged" in working on this matter or the Lebanese Proceedings. Bank Audi PPO ¶¶ 2(b), 2(c), 2(e). Petitioner has refused to agree to this limitation, in the absence of which persons not working on this matter could access and potentially publicize highly sensitive information.



The Honorable Vernon S. Broderick
May 18, 2022
Page 5

    4. Bank Audi's PPO requires all personnel to whom Subpoenaed Information is disclosed to execute a Confidentiality Agreement submitting to the jurisdiction of this Court, to be maintained by U.S. Counsel to the disclosing party.  Bank Audi PPO ¶¶ 2(b), 2(c), 2(e), 3(b) & Ex. A.  This provision is necessary to assure that there will be a remedy for any breach of the Protective Order, since Lebanese courts are not equipped to provide such a remedy.  Similarly, Bank Audi's PPO requires that copies of all executed Confidentiality Agreements must be provided upon request where the requesting party "reasonably believes there has been unauthorized disclosure of the Subpoenaed Information."  Bank Audi PPO ¶ 3(b).  This provision is necessary so that Bank Audi can seek a judicial remedy for any breach of the Protective Order.

    5. Once any Subpoenaed Information is filed in a Lebanese Court, Petitioner's PPO permits disclosure of that information to "any person authorized under Lebanese law to have access to" records filed in a Lebanese Court.  Petitioner's PPO ¶ 3(h).  Since Lebanese law does not restrict public access to court records, this means that Subpoenaed Information could be disclosed to *anyone* once filed.  There is no litigation purpose for such a provision, which appears calculated to allow Petitioner to disclose Subpoenaed Information to the Lebanese press.

    6. Bank Audi's PPO provides that if Subpoenaed Information is filed in this Court, it "shall be filed under seal." Bank Audi's PPO ¶ 4.  Petitioner's PPO provides only that he "shall move to file it under seal."  Petitioner's PPO ¶ 5.  Because this Court is not adjudicating the merits of the parties' dispute, it is unclear why there should be any need to file Subpoenaed Information here.  Nonetheless, if such a filing is made, it should not be a backdoor to public dissemination of the Subpoenaed Information in Lebanon, requiring that it be filed under seal.

    Bank Audi's PPO appropriately protects Bank Audi from "embarrassment" as defined in Fed. R. Civ. P. 26(c), especially in light of Bank Audi's submission showing that the "embarrassment resulting from the dissemination of the information would cause a significant harm to its competitive and financial position." *Application of Akron Beacon J.*, No. 94 CIV. 1402 (CSH), 1995 WL 234710, at *11 (S.D.N.Y. Apr. 20, 1995) (adopting and quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)).  Because the Subpoenaed Information will be produced in a misleading redacted form, and because it would violate Lebanese law for Bank Audi to disclose the confidential banking information needed to correct those misleading inferences, and because this misleading information can only fuel anti-bank protests, there can be no countervailing public interest in its disclosure.  *See In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 JMF, 2015 WL 4522778, at *4 (S.D.N.Y. July 24, 2015) (balancing the showing of good cause for a protective order with countervailing interests).  Bank Audi's PPO will prevent the threatened harm to Bank Audi's reputation, it is the least restrictive means of preventing such harm if the Subpoenaed Information is indeed turned over to Petitioners, and it does no harm to Petitioner or to any public interest.

**Petitioner's Request for Expedited Consideration of this Letter Motion**

    Petitioner's application for § 1782 discovery was filed more than 14 months ago.  Since it was granted on September 3, 2021, Petitioner has been forced to fight off no fewer than ***eight***



The Honorable Vernon S. Broderick
May 18, 2022
Page 6

*unsuccessful* attempts by Intervenor Bank Audi to thwart or delay the discovery.[2]  The current dispute over the terms of a protective order is merely the latest salvo.  Petitioner's next—and possibly last—opportunity to present evidence to the Court of First Instance in Beirut will be on June 2, 2022.  *See* ECF 46-4 (March 22, 2022 Declaration Petitioner's Lebanese counsel) at ¶¶ 2-3.  It is imperative that Petitioner obtains the records subpoenaed from the N.Y. Banks more than seven months ago in sufficient time to prepare for the June 2, 2022 hearing.

**Bank Audi's Position on Expedited Consideration of this Letter Motion**

Bank Audi does not oppose Petitioner's request for expedited consideration of this letter-motion, although it notes that his invocation of the June 2 hearing in Lebanon creates a false sense of urgency.  Petitioner's own counsel has conceded that it is within the discretion of the Lebanese Court to adjourn that hearing.  *See* ECF 48-02 ¶ 4.

                                              Respectfully submitted,

                                              /s/ Susan M. Davies
                                              *Attorney for Petitioner Majed Amir Al-Attabi*

                                              /s/ Linda C. Goldstein
                                              *Attorney for Intervenor Bank Audi S.A.L.*

Attachments – Exhibits 1-3

CC:  <u>Via email with attachments</u>
Hendrick van Hemmen, Esq., Standard Chartered Bank (Hendrik.vanHemmen@sc.com)
Sharon Schneier, Esq., Citibank, N.A. (SharonSchneier@dwt.com)
Sarah Wariner, Esq., JPMorgan Chase Bank & Co. (Sarah.Wariner@jpmchase.com)
Stephanie Wilson, Esq., BNY Mellon, N.A. and The Bank of New York Mellon
   (SWilson@reedsmith.com)

---

[2]  (1) On October 21, 2021, Bank Audi moved unsuccessfully to vacate this Court's September 3, 2021 order.  ECF 18-23.  (2) On February 25, 2022, Bank Audi renewed that motion, again without success, and (3) unsuccessfully sought to stay compliance with Petitioner's subpoenas pending determination of that unsuccessful renewed motion.  ECF 35.  (4) On March 8, 2022, Bank Audi unsuccessfully sought a stay from Judge Lehrburger pending an appeal to the Second Circuit.  *See* Transcript of Telephone Conference on March 8, 2022 at 15-16; ECF 39.  (5) On March 14, 2022, Bank Audi noticed a appeal from this Court's decisions in Petitioner's favor that was dismissed on jurisdictional grounds on May 9, 2022, and (6) filed a motion in the Second Circuit for an emergency stay pending determination of that appeal that was denied as moot.  (7) On March 22, 2022, Bank Audi filed objections to Judge Lehrburger's March 8, 2022 order and sought a stay pending determination of those objections, and (8) on May 9, 2022 filed a letter motion seeking a stay.  On May 17, 2022, this Court overruled Bank Audi's objections and denied its stay motions.